UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| CHRISTOPHER GODSON, | ) | |
| on behalf of himself | ) | |
| and all others similarly situated, | ) | No. 1:11-cv-0764-WMS-HKS |
| | ) | |
| Plaintiff, | ) | CLASS ACTION |
| | ) | |
| v. | ) | |
| | ) | |
| ELTMAN, ELTMAN & COOPER, P.C., | ) | |
| and LVNV FUNDING, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**Memorandum of Law in Support of Motion for Class Certification
and Appointment of Class Counsel**

### I.  Introduction

On September 9, 2011 Plaintiff, Christopher Godson, brought this lawsuit against Eltman, Eltman & Cooper, P.C. ("Eltman") and LVNV Funding, LLC ("LVNV") for their attempts to collect money from New York consumers in violation of the Fair Debt Collection Practices Act ("FDCPA").[1]

Due to a recent Seventh Circuit decision holding that a putative class action may be mooted by a defendant's offer of a plaintiff's full request for relief before any motion for class certification,[2] Plaintiff is compelled to file this Motion for Class Certification before any preliminary discovery concerning class certification issues has occurred. This filing is necessary to preserve the rights of Plaintiff and of the proposed class. While four circuit courts have ruled that even after a defendant offers complete relief to a class representative in a putative class action, the case

---

[1] 15 U.S.C. § 1692, *et seq.*

will not be considered moot and the class representative may still move for class certification as long as the class plaintiff does so without undue delay,[3] the Second Circuit has not yet ruled on the issue. And, crucially, the Seventh Circuit just ruled in the opposite fashion in *Damasco v. Clearwire Corp.*[4] But the Seventh Circuit also held that if a plaintiff moves for class certification before a defendant makes an offer of complete relief, the case is not moot.[5] Moreover, "if the parties have yet to fully develop the facts needed for certification, then they can also ask the district court to delay its ruling to provide time for additional discovery or investigation."[6] That is exactly what Plaintiff is doing here.

Accordingly, Plaintiff now moves for class certification and a stay of further briefing because he is concerned that once notified of his mootness concerns, Defendants will attempt to offer Plaintiff complete relief and argue under *Damasco* that this case was moot before Plaintiff were to have an opportunity to file this motion. This is not a matter of idle speculation. Attorney Concepcion A. Montoya, Esq. has recently filed an appearance on the case. And Plaintiff's counsel knows

---

[2] *Damasco v. Clearwire Corp.*, 662 F.3d 891, 894-897 (7th Cir. 2011).
[3] See *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1091-92 (9th Cir. 2011); *Lucero v. Bureau of Collection Recovery, Inc.*, 639 F.3d 1239, 1249-50 (10th Cir. 2011); *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 920-21 (5th Cir. 2008); *Weiss v. Regal Collections*, 385 F.3d 337, 348 (3d Cir. 2004).
[4] *See Damasco v. Clearwire Corp.*, 662 F.3d 891, 894-97 (7th Cir. 2011) ("We believe that the exception created by [the four circuits discussed above] is unnecessary. To allow a case, not certified as a class action and with no motion for class certification even pending, to continue in federal court when the sole plaintiff no longer maintains a personal stake defies the limits on federal jurisdiction expressed in Article III.")
[5] *Id.* at 896-97.
[6] *Id.*; *see also Chateau de Ville Productions, Inc. v. Tams-Witmark Music Library,*

from past experience in another case that Ms. Montoya will attempt to moot the

class by serving an individual offer of judgment before Plaintiff has an opportunity

to conduct discovery or move for class certification.[7]

## II.  Relief Requested

Plaintiff moves for class certification, but prays the court stay further

briefing on the motion until Plaintiff is able to engage in at least basic discovery as

to class issues.

Plaintiffs move for an order certifying one class, consisting of a large, but as

yet unlearned, number of consumers. The class is defined as follows:

> All consumers who, according to Defendants' records, had a New
> York address and: (a) within one year prior to the filing of this
> action; (b) were sent collection letters bearing Eltman's
> letterhead in a form materially identical or substantially similar
> to the letter sent to the Plaintiff and attached as Exhibit A to
> Plaintiff's Complaint; and (c) which were not returned by the
> postal service as undelivered.

## III.  Summary of Claim

As explained in the Complaint, Defendants violated the FDCPA by sending

collection letters that (1) failed to fully disclose the amount of the alleged debt and

(2) contained language that overshadows a consumers' right to dispute the alleged

debt. The letters failed to fully disclose the amount of the debt by failing to disclose

all interest owed as of the date of the letters. The letters further advised that as of

the date of the letter, the amount due does not include all the interest, and the

---

*Inc.*, 586 F.2d 962, 966 (2d Cir. 1978).

[7] *See* Declaration of Brian L. Bromberg (the "Bromberg Decl."), dated March 27, 2012.

letter makes an offer to the consumer of being willing to deduct 20% from the current balance if the account is settled in full. Specifically, the letter states, "As of the date of this letter, you owe $2628.72 (Does not include all the interest). At this time our office is willing to deduct twenty percent (20%) from the current balance if the account is settled in full. This will be a savings of: $525.74."    The failure to fully disclose the amount of the debt coupled with the offer of settlement to the consumer overshadowed and confounded the right to dispute, under the FDCPA, all or a portion of the debt within 30 days by implying that the failure to settle "at this time" could potentially result in payment of large amounts of additional, undisclosed interest. And enclosing these false and deceptive statements within a box that sets them off from the statutory validation notice and using bold type further overshadowed the validation notice, which appears in a less conspicuous, un-bolded manner. The letters also constitute false and deceptive representations and represent unfair and unconscionable means of attempting to collect a debt.

## IV.  Discovery Conducted to Date and the Nature of the Class

Plaintiff is filing this motion before any discovery has occurred, but because the letter at the heart of this case is a form letter, on information and belief, Defendants sent form letters containing virtually identical text to hundreds, if not thousands, of consumers in New York State.

## V.  Argument

### A.  Standard of review for class certification

In ruling on class certification, well-pleaded facts are to be accepted as true.[8]

Although the plaintiff bears the initial burden of demonstrating that all

requirements for class certification have been met,[9] the burden is not a heavy one.[10]

Once a plaintiff makes a preliminary legal showing that the requirements are met,

the burden of proof shifts to the defendant to demonstrate otherwise.[11] Provided

that a plaintiff's contentions regarding the class issues are based upon a reasonable

foundation, the Court should not deny certification because of a defendant's

challenge.[12]

The United States Supreme Court has noted that "[c]lass actions serve an

important function in our system of civil justice."[13] The Supreme Court has also

recognized that the class action procedure is necessary for private rights of action to

---

[8] *Duprey v. CT Dept. of Motor Vehicles*, 191 F.R.D. 329, 331 (D. Conn. 2000), *citing Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177-78 (1974) ("[w]hether a suit should proceed as a class action is a decision made independently of whether a plaintiff has stated a cause of action or whether he can prevail on the merits"). *See also Shelter Realty Corp. v. Allied Maintenance Corp.*, 574 F.2d 656, 661 n.15 (2d Cir. 1978).

[9] *Duprey*, 191 F.R.D. at 331, *citing Guckenberger v. Boston Univ.* 957 F. Supp. 306, 325 (D. Mass. 1997).

[10] *See Piel v. National Semiconductor Corp.*, 86 F.R.D. 357, 368 (E.D. Pa. 1980); *Anderson v. City of Albuquerque*, 690 F.2d 796, 799 (10th Cir. 1982); *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 562 (8th Cir. 1982).

[11] *See* 2 H. Newberg, *Newberg on Class Actions* (3d Ed. 1992) ("Newberg") § 7.22 at 7-74 to 7-75.

[12] *See Sollenbarger v. Mountain States Tel. & Tel. Co.,* 121 F.R.D. 417 (D.N.M. 1988); *In re Industrial Gas Antitrust Litig.*, 100 F.R.D. 280 (N.D. Ill. 1983);  *Kuck v. Berkey Photo, Inc.,* 81 F.R.D. 736 (S.D.N.Y. 1979).

[13] *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981).

be initiated.[14] As stated by the United States Supreme Court in *Deposit Guaranty Nat'l Bank v. Roper*, class actions serve an important purpose, because they permit plaintiffs to "vindicat[e] the rights of individuals who otherwise might not consider it worth the candle to embark on litigation in which the optimum result might be more than consumed by the cost."[15] "Without the class action device, many actionable wrongs would go uncorrected and persons affected thereby unrecompensed."[16] Accordingly, more than 40 years ago in an oft-cited case, the Tenth Circuit held that "the interests of justice require that in a doubtful case, . . . any error, if there is to be one, should be committed in favor of allowing the class action."[17]

So, too, "the Second Circuit has directed district courts to apply Rule 23 according to a liberal rather than a restrictive interpretation."[18] Thus, this Court should likewise resolve any doubt regarding the propriety of certification "in favor of allowing the class action," so that it will remain an effective vehicle for deterring corporate wrongdoing.[19] "It is often proper to view the class action liberally at the

---

[14] *Deposit Guaranty Nat'l Bank v. Roper*, 445 U.S. 326, *reh'g. denied*, 446 U.S. 947 (1980).

[15] *Id.* at 338.

[16] *Piel v. National Semiconductor Corp.*, 86 F.R.D. 357, 364 (E.D. Pa. 1980).

[17] *Esplin v. Hirschi*, 402 F.2d 94, 101 (10th Cir. 1968), *cert. denied,* 394 U.S. 928 (1969).

[18] *See Duprey,* 191 F.R.D. at 331, *citing Korn v. Franchard Corp.,* 456 F.2d 1206, 1208-09 (2d Cir. 1972).  *See also In re Sumitomo Copper Litigation*, 194 F.R.D. 480, 481 (S.D.N.Y. 2000), and *Adames v. Mitsubishi Bank, Ltd.*, 133 F.R.D. 82, 88 (E.D.N.Y. 1989).

[19] *Esplin v. Hirschi*, 402 F.2d at 101; *Welch v. Board of Directors of Wildwood Golf Club*, 146 F.R.D. 131 (W.D. Pa. 1993); *Lessard v. Metropolitan Life Insurance Co.,* 103 F.R.D. 608, 610 (D. Me. 1984); *In re Folding Cartons Antitrust Litigation*, 75

early stages of the litigation since the class can always be modified or divided as the issues are later refined for trial."[20]

Congress recognized the importance of class actions in protecting consumers from debt collectors by expressly authorizing class action remedies under the FDCPA.[21] Consequently, district courts in the Second Circuit have certified numerous FDCPA cases for class action treatment.[22]

### B.  The proposed class satisfies the requirements for certification

Under Federal Rule of Civil Procedure 23, a class should be certified when the plaintiff meets all four requirements of Rule 23(a) and one of the requirements of Rule 23(b).[23] Because Plaintiff meets the requirements of numerosity, commonality, typicality, and adequacy, and because the common questions predominate over any individual questions and a class action is superior to other methods to adjudicate the controversy, the proposed classes should be certified.[24] Moreover, Plaintiff's attorneys meet the requirements to be appointed class counsel under Rule 23(g).[25]

---

F.R.D. 727 (N.D. Ill. 1977).

[20] *Adames*, 133 F.R.D. at 88, *citing Woe v. Cuomo*, 729 F.2d 96, 107 (2d Cir. 1984).

[21] 15 U.S.C. §§ 1692k(a) and (b).

[22] *See, e.g., Petrolito*, 221 F.R.D. 303; *Macarz v. Transworld Systems, Inc.*, 193 F.R.D. 46 (D. Conn. 2000) (statewide FDCPA class certified regarding form collection letters); *Mailloux v. Arrow Financial Services, LLC*, 204 F.R.D. 38 (E.D.N.Y. 2001); *D'Alauro v. GC Services Ltd. Partnership*, 168 F.R.D. 451 (E.D.N.Y. 1996) (class certified regarding harassing and abusive debt collection letters).

[23] Fed. R. Civ. P. 23; *In re Visa Check/Mastermoney Antitrust Litigation*, 280 F.3d 124, 132 (2d Cir. 2001).

[24] Fed. R. Civ. P. 23(a) and (b)(3).

[25] Fed. R. Civ. P. 23(g).

### i. Numerosity is satisfied – each of the classes consist of more than 40 individuals

The first requirement of Rule 23(a) is that the class members be so numerous that joinder is not practicable.[26] "Impracticability" in this context means "'difficulty or inconvenience of joinder'" rather than "'impossibility of joinder.'"[27] Courts in this circuit generally "find a class sufficiently numerous when it comprises forty or more members."[28]

It is not necessary that the precise number of class members be known. A class action may proceed upon estimates as to the size of the proposed class.[29] In determining whether the numerosity requirement is met, the Court may consider reasonable inferences drawn from the facts.[30]

Here, the letter at the heart of the case is a form letter. Debt collectors rely on form letters to attempt to collect debts with only the names and amount allegedly due changed from letter to letter. In this case, on information and belief, Defendants sent form letters containing virtually identical text to hundreds, if not thousands, of consumers in New York State. The form letters used by Defendants to collect debts are at the core of this litigation.[31] It can therefore be presumed that

---

[26] Fed. R. Civ. P. 23(a)(1).
[27] *In re Indep. Energy Holdings*, 210 F.R.D. 476, 479 (S.D.N.Y. 2002) (citation omitted).
[28] *Id.* (*citing Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993)). *See also*, *Petrolito*, 221 F.R.D. at 309.
[29] *In re Alcoholic Beverages Litigation,* 95 F.R.D. 321, 324 (E.D.N.Y. 1982); *Lewis v. Gross*, 663 F.Supp. 1164, 1169 (E.D.N.Y. 1986).
[30] *Lewis*, 663 F.Supp. at 1169.
[31] *See, e.g.*, *Harrison v. Great Springwaters of America, Inc.*, 1997 WL 469996 (E.D.N.Y. 1997) (Where FDCPA plaintiffs received similar debt collection letters

Defendants used at least 40 such collection letters.[32]

Should the court require additional information concerning numerosity,

Plaintiff requests that further briefing on this motion be stayed with permission to

supplement the motion after Plaintiff has been afforded an opportunity to conduct

some initial discovery. Authority for this practice can be found in the Seventh

Circuit case of *Damasco v. Clearwire Corp.*,[33] which encouraged litigants to file

skeletal motions for class certification with the complaint, so as to avoid mootness

through the artful use of Rule 68 offers of judgment, while simultaneously

requesting a stay of briefing so as to allow for conducting basic discovery.

### ii. Because Defendants sent virtually identical form letters to all of the class members, common questions of fact and law exist

Federal Rule of Civil Procedure 23(a)(2) requires that there be either a

common question of law or fact.[34] In other words, the common questions need to be

at the "core of the cause of action alleged."[35] Rule 23(a)(2) requires only that the

prospective class share questions of law or fact. It does not require that all

---

from defendants, courts found common questions of law or fact sufficient to certify
the class.).

[32] *Id.* at *3 ("Plaintiffs argue that a large number of customers will have received a
form collection letter that is disseminated by a high volume business like Great
Spring. This court agrees it is reasonable to assume that the proposed classes will
be large enough to meet numerosity requirements and to make joinder
impractical.")

[33] 662 F.3d 891, 894-897 (7th Cir. 2011)

[34] *Robinson v. Metro-North Commuter R.R.*, 267 F.3d 147, 155 (2d Cir. 2001); *In re
Drexel Burnham Lambert Group, Inc.,* 960 F.2d 285, 290-291 (2d Cir. 1992).

[35] *Harrison v. Great Springwaters of America, Inc.*, No. 96 Civ. 5110, 1997 WL
469996, at *3 (E.D.N.Y. June 18, 1997) (*citing D'Alauro*, 168 F.R.D. at 456.)

questions of law or fact raised be common.[36] So long as at least one issue is common to all class members, a class should be certified.[37] Where a question of law involves "standardized conduct of the Defendant…[to the persons affected], a common nucleus of operative fact is typically presented and the commonality requirement…is usually met."[38]

Thus, courts have found common questions of law or fact sufficient to certify a class in cases where FDCPA plaintiffs have been sent similar debt collection notices or "form" letters.[39] Here, the class claims stem from the same alleged conduct. The class is composed of those individuals to whom Defendants sent letters in which the full amount of the debt, including interest, was not fully disclosed, and in which Defendants made an offer of settlement. Whether such letters were sent, and whether that conduct is actionable under the FDCPA, are common questions applicable to all class members. "Courts have previously found common questions of law and fact where FDCPA plaintiffs alleged the receipt of the same or similar collection letter as the basis of the lawsuit."[40]

The only issue is the identification of the consumers who were sent letters in which there was no full disclosure of the amount of the debt and in which a settlement offer was made, matters capable of ministerial determination from

---

[36] *Halford v. Goodyear Tire & Rubber Co.*, 161 F.R.D. 13, 18 (W.D.N.Y. 1995)

[37] *Port Authority Police Benev. Ass'n, Inc. v. Port Authority of New York and New Jersey*, 698 F. 2d 150, 153-54 (2d Cir. 1983) (common question of free speech override individual questions concerning each class member).

[38] *D'Alauro*, 168 F.R.D. at 456 (*quoting* Franklin v. City of Chicago, 102, F.R.D. 944, 949 (N.D. Ill. 1984)

[39] *Harrison*, 1997 WL 469996, at *3 (*citing D'Alauro*, 168 F.R.D. at 456).

Defendants' records. This question is readily answerable from Defendants' own files and does not present an obstacle to class certification.

Finally, there are no issues of reliance or causation. The FDCPA is violated if the "least sophisticated consumer" would be misled by the Defendants' conduct.[41] Under these circumstances, where there are no individual determinations that overwhelm the common question, the commonality element is met.[42]

### iii. The claims of the representative party are typical of the claims of the class

A sufficient showing of Rule 23(a)(3) "typicality" "requires that the claims of the class representatives be typical of those of the class; therefore, Rule 23(a)(3) is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendants' liability."[43] Put another way, "when the same unlawful conduct was directed at both the named plaintiff and the class to be represented, the typicality requirement is usually met irrespective of varying fact patterns which underlie individual claims."[44] The purpose of this requirement is to "ensure[ ] that maintenance of a class action is economical and [that] the named plaintiff's claims and the class claims are so interrelated that the interest of the class members will be fairly and

---

[40] *Macarz,* 193 F.R.D. at 49.
[41] *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993).
[42] *Mailloux*, 204 F.R.D. at 41.
[43] *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 32 (E.D.N.Y. 2006) (*quoting Robinson*, 267 F.3d at 155).
[44] *D'Alauro*, 168 F.R.D. at 156-57 (internal quotations and citations omitted).

adequately protected in their absence."[45]

Here, the claims of the class representative are based on a pattern of allegedly unlawful conduct substantially similar to the acts underlying the claims of the proposed class members. Stripped to its essentials, the claims of both the class representative and the proposed class members rest upon allegations that debt collection form letters were sent to them that failed to fully disclose the amount of the alleged debt due and that made an offer of settlement, thereby violating the FDCPA. The successful prosecution of this case would therefore require the named Plaintiff to make legal arguments similar to those of the proposed class members, i.e., that Defendants sent letters that failed to fully disclose the amount of the alleged debt due and that made an offer of settlement. This satisfies the requirement "that the interest of the class members will be adequately protected in their absence."[46] Accordingly, Rule 23(a)(3)'s typicality requirement is satisfied.

### iv. The representative parties will fairly and adequately protect the interests of the class

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."[47] Adequacy of representation is measured in two ways. First, the court considers whether class counsel is qualified, experienced, and generally able to conduct the litigation. Second, the court

---

[45] *In re Risk Mgmt. Alternatives, Inc., Fair Debt Collection Practices Act Litig. (In re Risk Mgmt. Alternatives Litig.)*, 208 F.R.D. 493, 505 (S.D.N.Y. 2002) (*citing Marisol A.*, 126 F.3d at 376) (internal quotation and citation omitted).
[46] *In re Risk Mgmt. Alternatives Litig.*, 208 F.R.D. at 505 (citation omitted).
[47] *Cent. States Southeast & Southwest Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.,* 504 F.3d 229, 245 (2d Cir. 2007).

considers whether the class members have interests that are "antagonistic" to one another.[48]

Plaintiff has retained counsel with substantial experience litigating claims of this type both in class actions and in individual suits. Attorneys Brian L. Bromberg and Kenneth R. Hiller have considerable experience representing plaintiffs in class actions and in handling matters under the FDCPA.[49] Mr. Bromberg has served as class counsel in numerous certified class actions, including adjudicated cases brought in federal court under the FDCPA.[50] And Mr. Hiller has considerable experience representing individual FDPCA litigants.[51] Accordingly, Attorneys Bromberg and Hiller should be appointed as class counsel under Rule 23(g).

As to the named plaintiff, "[a] number of courts that have considered ... FDCPA class actions challenging form collection letters have found named plaintiffs who received versions of the challenged collection letters to be adequate class representatives for purposes of Rule 23(a)(4)."[52] Beyond that, courts usually look simply to whether the representative's interests are in any way antagonistic to or in

---

[48] *See Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.,* 222 F.3d 52, 60 (2d Cir. 2000); *In re Drexel Burnham Lambert Group, Inc.,* 960 F.2d at 291; *Macarz*, 193 F.R.D. at 51.

[49] *See* accompanying Declarations of Kenneth R. Hiller (the "Hiller Decl.") dated March 27, 2012 and the Bromberg Decl.

[50] *See* Bromberg Decl.

[51] *See* Hiller Decl.

[52] *Harrison,* 1997 WL 469996 at *3, 1997 U.S. Dist. LEXIS 23267, at *17 (citing *Colbert v. Trans Union Corp.*, 1995 U.S. Dist. LEXIS 578 (E.D. Pa. Jan. 12, 1995)); *see also Macarz,* 193 F.R.D. at 51-54 (plaintiff who received collection letter found adequate).

conflict with those of the class members.[53] Plaintiff has no known conflicts with any

of the class members and is actively involved in the prosecution of this action. Given

the identical claims of Plaintiff and the class members, Plaintiff is an adequate

representative of the classes.

### C.    Rule 23(b)(3) – Class Action Maintainable

Once the Court has concluded that the four prerequisites for class action

certification have been met, it must decide whether the class action is maintainable

under Rule 23(b)(3), which provides "that the questions of law or fact common to the

members of the class predominate over any questions affecting only individual

members, and that a class action is superior to other available methods for fair and

efficient adjudication of the controversy."[54]

### i.    Predominance

Substantial authority supports certification of FDCPA class actions under

subsection (b)(3).[55] Under Rule 23(b)(3), "[p]redominance is a test readily met in

---

[53] *In re Playmobil Antitrust Litigation*, 35 F.Supp.2d 231, 243 (E.D.N.Y. 1998) ("One court has summarized the adequacy requirement thusly: 'Absent any conflict between the interests of the representatives and other purchasers, and absent any indication that the representative will not aggressively conduct the litigation, fair and adequate protection of the class may be assumed.'") (*quoting Guarantee Ins. Agency Co. v. Mid Continental Realty Corp.*, 57 F.R.D. 555, 565 (N.D. Ill. 1972)). Furthermore, such conflict must be real and not speculative. *Robertson v. National Basketball Association*, 389 F.Supp. 867, 899 (S.D.N.Y. 1975).

[54] Fed. R. Civ. P. 23(b)(3).

[55] *See, e.g., Lemire v. Wolpoff & Abramson, LLP*, 256 F.R.D. 321 (D. Conn. 2009) (finding Rule 23(b)(3) applicable for class certification in FDCPA case involving collection letters); *McCall v. Drive Fin. Servs., L.P.*, 236 F.R.D. 246, 253-54 (E.D. Pa. 2006) (same); *Reade-Alvarez*, 237 F.R.D. at 31 (same); *Gross v. Washington Mut. Bank*, No. 02-CV-4135, 2006 WL 318814, at *3 (E.D.N.Y. Feb. 9, 2006) (Levy, Mag. J.) (same); *Bonett v. Educ. Debt Servs., Inc.*, No. 01-6528, 2003 WL 21658267,

certain cases alleging consumer or securities fraud ...."[56] Furthermore, "it has been recognized...that 'common questions of law and fact surrounding the contents and mailing of [standardized form collection] letters predominate over individual issues.'"[57] Further guidance in applying the predominance test comes from the Second Circuit's opinion in *Moore v. PaineWebber, Inc.*:

> "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." [*Amchem*, 521 U.S. at 623, 117 S. Ct. at 2249-50.] It is a more demanding criterion than the commonality inquiry under Rule 23(a). [*Id.* at 623-24, 117 S.Ct. at 2249-50.] Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof. [*In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 132 (2d Cir. 2001)].[58]

The predominance requirement is satisfied if "resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof."[59] "If there are genuinely common issues ... identical across all the claimants, issues moreover the accuracy of which is unlikely to be advanced by repeated proceedings, then it makes

---

at *4 (E.D. Pa. May 9, 2003) (same); *Mailloux*, 204 F.R.D. at 42-43 (same); *D'Alauro*, 168 F.R.D. at 458-59 (same).
[56] *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625 (1997) (citations omitted).
[57] *See Mailloux*, 204 F.R.D. at 43 (*quoting Harrison*, 1997 WL 469996, at *9 (additional citation omitted)).
[58] 306 F.3d 1247, 1252 (2d Cir. 2002).
[59] *Id.* (citations omitted).

good sense, especially when the class is large, to resolve these issues in one fell-swoop while leaving the remaining, claimant-specific issues to individual follow-on proceedings."[60] Courts generally focus on the liability issue, and "if the liability issue is common to the class, common questions are held to predominate over individual questions."[61]

The common question here involves the legality of the content of Defendants' debt collection letters. Whether Defendants' letters violate the FDCPA is the common question that predominates over any others.

Damages under the FDCPA are formulaic: any actual damages sustained, and such additional damages, not to exceed $1,000, as the court may allow. While there is no minimum individual recovery, the total amount of statutory damages awarded cannot exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector.[62] The only "non-common" questions are how many class members were sent collection letters that failed to fully disclose the amount of the alleged debt due and that made an offer of settlement, and what the class members' individual actual damages are. But this "non-common" question can be readily answered by a ministerial examination of Defendants' files, and the common questions regarding liability predominate over the readily answered questions that

---

[60] *In re Methyl Tertiary Butyl Ether (MBTE) Products Liability Litig.,* 241 F.R.D. 435, 448 (S.D.N.Y. 2007) (quoting *Mejdrech v. Met-Coil Systems Corp.,* 319 F.3d 910, 911 (7th Cir. 2003)).

[61] *Macarz*, 193 F.R.D. at 54, *quoting Genden v. Merril Lynch, Pierce, Fenner & Smith,* 114 F.R.D. 48, 52 (S.D.N.Y. 1987).

[62] 15 U.S.C. § 1692k(a).

apply to individual class members.[63]

      ii.      **A class action is superior to other methods for the fair and efficient adjudication of the controversy**

Rule 23(b)(3) lists factors "pertinent" to the finding that a class action is superior to other available methods for the fair and efficient adjudication of the controversy, which include:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability or concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of the class action.[64]

As the district court in the Eastern District of New York case of *D'Alauro v. GC Services Limited Partnership* observed, class actions are found to be the superior method of litigation "when the main objectives of Rule 23 are served," including "the efficient resolution of the claims or liabilities of many individuals in a single action, as well as the elimination of repetitious litigation and possibly inconsistent adjudications."[65] Allowing this case to proceed as a class action would be an efficient

---

[63] *Petrolito*, 221 F.R.D. at 310 ("Both the FDCPA and CUTPA allow certification without regard to actual damages.  Court[s] have 'routinely … conclude[ed] … that the need for individualized proof of damages alone will not defeat class certification.' The Second Circuit has recognized that there are a variety of ways for a district court to deal with individualized damages issues that may arise in the course of litigation.  Moreover, since the violation alleged here – the 'core' of the damages suffered – is the illegal debt collection attempt, whether or not the plaintiff paid and suffered actual damages does not affect his typicality as a class representative.") (internal citations omitted).

[64] *See also Petrolito*, 221 F.R.D. 303.

[65] *D'Alauro*, 168 F.R.D. at 458 (*citing Califano v. Yamasaki*, 442 U.S. 682, 700-01,

means of resolving the claims at issue, where there exist numerous proposed class members and each member possesses a claim based on form collection letters sent by Defendants in violation of the FDCPA. Moreover, aggregating these claims based on the form collection letters and complaints eliminates the potential for "repetitious litigation" and "inconsistent adjudications" if the claims were brought separately,[66] and which otherwise "might stand in the way of a beneficial comprehensive settlement."[67]

Here, the amounts of the claims are small, it is unlikely that the class members have much interest in individually controlling the prosecution of the action, and it would be very desirable to concentrate the litigation in this forum. Indeed, as Judge Hall noted in *Petrolito v. Arrow Financial Services, LLC*, "[s]uits brought under the FDCPA such as this case regularly satisfy the superiority requirement of Rule 23 … The prospect of relatively small recovery on individual adjudications on identical issues with differing results makes class form superior to individual litigation by class members."[68]

The final factor in considering superiority is whether there would be difficulty managing the class.[69] Though the class will undoubtedly number in the hundreds or thousands, Plaintiff's attorneys' experience in suits of this kind speaks to their ability to manage the classes. To the extent that this is considered a

---

99 S.Ct. 2545, 61 L.Ed.2d 176 (1979)).
[66] *Id.* (citation omitted).
[67] *Reade-Alvarez*, 237 F.R.D. at 32-33.
[68] *Id.*
[69] Rule 23(b)(3)(D).

management difficulty, "[i]t should be kept in mind that management difficulties, as with other superiority factors, must be judged in comparison to the fairness and efficiency of other available methods for adjudicating the controversy. Because [ascertainment of class members is] unique to class actions, any management difficulties in connection with class notice must be viewed not in isolation, but rather from the perspective of whether such [superiority problems] negate the advantages of unitary adjudication from a class action."[70]

The only real alternative to a class action here is for there to be no adjudication of these claims whatsoever. It is not only the superior means of adjudication, but practically, it is the only means.

### D. Plaintiff's attorneys meet all the criteria for appointment as class counsel under the 2003 Amendments concerning appointment of class counsel contained in Rule 23(g)

Under Rule 23(g), the Court must consider the following in appointing class counsel:

(i)    the work counsel has done in identifying or investigating potential claims in the action,

(ii)   counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action,

(iii)  counsel's knowledge of the applicable law, and

(iv)   the resources counsel will commit to representing the class.[71]

These requirements are similar to those employed in determining whether counsel

---

[70] 2  H. Newberg, *Newberg on Class Actions* ( 4th Ed. 2002), § 4:35 (discussing difficulties in notifying the class members as a potential management difficulty).
[71] Fed. R. Civ. P. 23(g)(1)(C)(i).

is adequate under Rule 23(a)(4).[72] Therefore, the standards developed by that case law have been incorporated almost in their entirety into new Rule 23(g), and the discussion of Plaintiff's counsel's qualifications set forth above satisfies many of the "new" Rule 23(g) requirements.

In addition, here, Plaintiff's counsel carefully investigated potential claims in this action. This investigation included reviewing the collection letter for potential claims and researching the questions of liability that the letter raised. And in drafting the complaint, counsel conducted research on Westlaw and in the leading FDCPA treatise published by the National Consumer Law Center.

## VI. Conclusion

For the reasons set forth herein, Plaintiff moves for class certification, but prays the court stay further briefing on the motion until Plaintiff is able to engage in at least basic discovery as to class issues. In the alternative, Plaintiff respectfully request that this action be certified as a class action under Fed. R. Civ. P. 23.

Dated: March 27, 2012
         New York, New York


                              PLAINTIFF CHRISTOPHER GODSON,
                              Individually And On Behalf Of The Class,

                         By:  /s/ Brian L. Bromberg
                              Brian L. Bromberg
                              One of Plaintiff's Attorneys

---

[72]   *Amchem*, 521 U.S. at 626 n. 20, 117 S. Ct. at 2251 n.20, 138 L. Ed. 2d 689 (1997) ("The adequacy heading also factors in competency and conflicts of class counsel."). *See, e.g.*, *Greisz v. Household Bank, N.A.*, 176 F.3d 1012, 1013 (7th Cir. 1999) (Rule 23(a)(4) requires assessment of competence of counsel for class).

**Attorneys for Plaintiff**
Brian L. Bromberg
Michael N. Litrownik
Bromberg Law Office, P.C.
40 Exchange Place, Suite 2010
New York, NY 10005
Tel: (212) 248-7906
Fax: (212) 248-7908
Email: brian@bromberglawoffice.com

Kenneth R. Hiller
Seth J. Andrews
Law Offices of Kenneth Hiller, PLLC
6000 N. Bailey Avenue – Suite 1A
Amherst, New York 14226
Tel: (716) 564-3288
Fax: (716)
Email: khiller@kennethhiller.com