UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CHRISTOPHER GODSON, on behalf of
himself and all others similarly situated,

                                    Plaintiff,

       v.

ELTMAN, ELTMAN, & COOPER, P.C.
and LVNV FUNDING, LLC,

                                    Defendants.
_____

No. 11-cv-0764(EAW)(HKS)

CLASS ACTION


**Plaintiff's Memorandum of Law in Opposition to
Defendant LVNV Funding, LLC's Motion for a Protective Order**

Respectfully submitted,

**Bromberg Law Office, P.C.**
Brian L. Bromberg
Jonathan R. Miller
26 Broadway, 21st Floor
New York, NY 10004
Tel: 212-248-7906
Fax: 212-248-7908

**Law Offices of Kenneth Hiller, PLLC**
Kenneth R. Hiller
Seth J. Andrews
6000 North Bailey Ave., Suite 1A
Amherst, NY 14226
Tel: 716-564-3288
Fax: 716-332-1884

# Table of Contents

Table of Authorities ........................................................................................ ii

Introduction and Procedural History ............................................................ 1

Argument ........................................................................................................ 7

    I.    LVNV's moving papers make a muddle of revised Fed. R. Civ. P. 26(b). ......... 7

    II.    The *Cox* depositions are relevant to the issue of whether LVNV sent debts out for collection knowing that the amounts were inaccurate and/or unreliable.. 10

    III.    Production of the *Cox* depositions is proportional to the needs of the case. 17

Conclusion ...................................................................................................... 20

i

Table of Authorities

Page(s)

## Cases

*American Fed. of Musicians of the U.S. and Canada v. Sony Music
   Entertainment, Inc.,*
   15-CV-05249(GBD)(BCM), 2016 WL 2609307 (S.D.N.Y. Apr. 29,
   2016) .................................................................................................................. 9

*American Rock Salt Co. v. Norfolk Southern Corp.,*
   228 F.R.D. 426 (W.D.N.Y. 2004) ........................................................................ 13

*City of New York v. FedEx Ground Package Sys.,*
   13 Civ. 9173(ER), 2016 WL 1718261 (S.D.N.Y. Apr. 27, 2016) ............................ 9

*Godson v. Eltman, Eltman & Cooper, P.C.,*
   ___ F. Supp. 3d ___, 2016 WL 1545179 (W.D.N.Y. Apr. 15, 2016) .................. 6, 15

*Godson v. Eltman, Eltman & Cooper, P.C.,*
   2013 WL 4832715 (W.D.N.Y. Sept. 11, 2013) ........................................................ 6

*Godson v. Eltman, Eltman & Cooper, P.C.,*
   2014 WL 4627216 (W.D.N.Y. Sept. 15, 2014) ............................................ 6, 13, 15

*Godson v. Eltman, Eltman & Cooper, P.C.,*
   2015 WL 5784908 (W.D.N.Y. Sept. 30, 2015) ...................................... 6, 13, 14, 15

*Henry v. Morgan's Hotel Group, Inc.,*
   14-CV-1789(ER)(JLC), 2016 WL 303114 (S.D.N.Y. Jan. 25, 2016) ...................... 9

*In re Methyl Tertiary Butyl Ether Prod. Liability Litig.,*
   MDL 1358(SA), 2016 WL 1367226 ................................................................. 8, 17

*State Farm Mut. Auto. Ins. Co. v. Fayda,*
   No. 14-CV-9792(WHP)(JCF), 2015 WL 7871037 (S.D.N.Y. Dec. 3,
   2015) ................................................................................................................. 9, 11

## Statutes

Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.* .......... *passim*

**Other Authorities**

Fed. R. Civ. P. 26(a)(1)(A)(iv) ........................................................................ 15

Fed. R. Civ. P. 26(b) ........................................................................................ 7

Fed. R. Civ. P. 26(b)(1)................................................................... 7, 8, 9, 17

Fed. R. Civ. P. 26(b)(3)(A)(ii) ...................................................................... 7

Fed. R. Civ. P. 26(c)(1) ................................................................................. 20

Fed. R. Civ. P. 30(b)(6).............................................................................. 3, 10

## Introduction and Procedural History

It is unnecessary to recreate the entire procedural history of this case yet again; the Court itself cogently laid out the relevant history a little more than a month ago, in its Decision and Order dated April 15, 2016.[1] There have been only two pertinent developments since that Decision and Order: the failure of Defendant LVNV Funding, LLC ("LVNV") to comply with that Order, and Plaintiff's motion to sanction LVNV for that failure. On April 15, 2016, the Court ordered LVNV to do one of two things: produce all additional documents and communications concerning all links in the chain of title to Plaintiff's alleged account, or certify to the Court that no such additional documents and communications exist.[2] LVNV did neither, instead certifying only that LVNV does not have the additional documents and communications.[3] LVNV's certification intentionally sidestepped the all-important question of whether other companies under common ownership and control might possess the additional documents and communications. For this reason, Plaintiff's filed his Fifth Motion to Sanction LVNV,[4] the grounds for which are more fully explained in the memorandum accompanying that motion.[5]

Plaintiff's Fifth Motion to Sanction LVNV, and LVNV's instant Motion for a Protective Order, are related. Plaintiff's motion asks this Court to determine, for purposes of this action, that LVNV violated various sections of the Fair Debt

---

[1] ECF#180 at 1-8.
[2] *See Id.* at 12-13.
[3] ECF#183.
[4] ECF#186.
[5] ECF#187.

Collection Practices Act ("FDCPA")[6] by retaining Defendant Eltman, Eltman & Cooper, P.C. ("Eltman") to collect defaulted consumer accounts knowing that its information concerning the amounts and interest rates of those accounts was inaccurate or unreliable. But, as explained below, Plaintiff demanded production of the depositions from the Southern District of Indiana Case of *Cox v. Sherman Capital, LLC*,[7] in order to investigate this very issue.

While a full procedural history of this action is unnecessary, it is necessary to correct two mistakes in the Procedural History in LVNV's moving papers.[8] The first is a very specific mistake. In its Memorandum, LVNV states, "Whether it is a typographic error or not, the Discovery Demands contain three identical demands which seek the following: Any transcripts (including exhibits) and/or video or audio recordings of any deposition taken of LVNV . . . in the case of *Cox* . . . ."[9] Oddly, LVNV has misread the very Discovery Demands from which it wants to be protected. The demand quoted by LVNV is the first of three, and the next two are not identical. As one can see from LVNV's own exhibit,[10] the second demand seeks "[a]ny transcripts (including exhibits) and/or video or audio recordings of any deposition taken of the LVNV-Related Entities [as defined three pages earlier] . . . in the case of *Cox* . . . ." And the third demand seeks "[a]ny transcripts (including

---

[6] Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*
[7] 1:12-cv-01654(TWP)(MJD).
[8] ECF#181-1 at 6-13 (ECF pagination).
[9] *Id.* at 11 (ECF pagination).
[10] ECF#181-8.

2

exhibits) and/or video or audio recordings of any deposition taken in *Cox*," without limitation.

Because it misread Plaintiff's Discovery Demands, it attached only one Fed. R. Civ. P. 30(b)(6) notice to its moving papers – namely the notice directed to LVNV.[11] But, in fact, there are at least four other depositions at issue: a 30(b)(6) deposition of Resurgent Capital Services, LP ("Resurgent"); a 30(b)(6) deposition of Sherman Financial Group, LLC ("SFG"); a 30(b)(6) deposition of Sherman Originator, LLC ("SO"); and a 30(b)(6) deposition of Sherman Capital, LLC ("SC"). In addition, Meghan Emmerich – who has signed several declaration on behalf of LVNV in this case[12] – was deposed as an individual, as well as a 30(b)(6) representative.[13] There may also be additional depositions of which Plaintiff is unaware. (Plaintiff is not interested in obtaining depositions taken of the *Cox* plaintiffs, and waives any right to those depositions.)

The notices for the four additional depositions responsive to the Discovery Demands are attached to the accompanying Declaration of Attorney Jonathan R. Miller ("Miller Decl.").[14] In addition, the Court should be aware that some pieces of the *Cox* depositions sought by Plaintiff have found their way into the public record, which should assist the Court in determining whether the depositions are relevant to this case. Plaintiff already attached some of these excerpts from the *Cox*

---

[11] ECF#181-7.

[12] *See, e.g.*, ECF#183; ECF#104; ECF#61-1.

[13] *See* excerpt from Meghan Emmerich Deposition at ECF#188-30 at 21 (original pagination).

[14] *See* **Exhibits A-D** to Miller Decl.

3

depositions to his Fifth Motion to Sanction LVNV; specifically, Plaintiff has already attached a significant portion of the deposition taken of Scott Silver,[15] as well as portions of the depositions taken of Jon Mazzoli,[16] and Meghan Emmerich.[17] In addition to the excerpts previously attached, here Plaintiff is attaching two more excerpts from the Silver deposition,[18] as well as an excerpt from the deposition of Scott Kester,[19] to assist the Court in determining whether the *Cox* depositions are relevant.

The second problem with LVNV's presentation of this case's procedural history is that it is skewed almost to the point of being a complete fantasy. For example, LVNV's Memorandum calls Plaintiff's demands for the *Cox* depositions "another thinly cloaked attempt to use this case as a fishing expedition about corporate entities that are not parties to the action and outside the scope of the issues in this action"[20] – implying a long history of discovery misconduct on the part of Plaintiff. But there is no such history; over the years, this Court has granted the majority of Plaintiff's discovery requests and, whereas the Court has sanctioned LVNV for discovery misconduct three times, it has sanctioned Plaintiff zero times. In any case the parties that LVNV claims "are outside the scope of the issues in this

---

[15] ECF#188-17.
[16] ECF#188-18.
[17] ECF#188-30.
[18] *See* **Exhibits E & F** to Miller Decl.
[19] *See* **Exhibit G** to Miller Decl.
[20] *See* ECF#181-1 at 5.

action" are anything but, as explained yet again in the Memorandum accompanying Plaintiff's Fifth Motion to Sanction LVNV.[21]

Once upon a time, in November 2014, one of LVNV's attorneys stated in a memorandum, "Plaintiff reiterates his erroneous factual predicate that LVNV Related Entities were somehow involved in the collection of Plaintiff's debt."[22] Think about that statement for a moment: In that statement, LVNV's was stating, baldly, that no other entity besides LVNV (and, of course, Eltman) was involved in collecting Mr. Godson's debt. Plaintiff presented evidence to the contrary and, based on that evidence, the Court has compelled evidence pertaining to Resurgent, SO, Sherman Acquisition LP ("SA"), SFG, and SC.[23] In the Memorandum accompanying Plaintiff's Fifth Motion to Sanction LVNV, Plaintiff presented even more evidence that those entities – plus SCM – essentially function as one company, and all had a hand in collecting Mr. Godson's debt.[24] That LVNV still thinks that it can get away with asserting that these entities had nothing to do with the collection of Mr. Godson's debt – even after multiple Court orders rejecting that assertion – is unbelievable.

LVNV's Procedural History also contains other fantastic language, some off which is downright Orwellian. For instance, LVNV claims to have made a "business decision to withdraw certain portions of its defense, for this case to alleviate the

---

[21] *See* ECF#187 at 8-25 (ECF pagination).
[22] ECF#130 13, n.5 (ECF pagination).
[23] *See* Argument, Part II below.
[24] *See* ECF#187 at 8-25 (ECF pagination).

need for certain discovery in this case."[25] Then, LVNV states, "On April 15, 2016, this Court issued a decision which clearly and succinctly removed for purposes of this case, the issue of LVNV's status as a debt collector and net worth evaluation . . . ."[26] Those characterizations are laughable. To be clear: LVNV was **_sanctioned_** for failing to produce the evidence necessary to investigate the class's statutory damages and LVNV's baseless arguments that it is not a debt collector.[27]

Elsewhere, LVNV states that, "[f]rom the outset of this case, LVNV's approach was to focus the Court's attention on the issue of liability . . . ."[28] Making that assertion required serious chutzpah on the part of LVNV after it refused to produce the additional documents and communications regarding the transfer of Mr. Godson's debt, which are highly relevant to LVNV's liability, and which are the subject of Plaintiff's recently filed Fifth Motion to Sanction LVNV.[29] In light of these and other serious distortions in the Procedural History presented by LVNV, Plaintiff respectfully suggests that the best introduction to the procedural history of this case is the Court's own decisions.[30]

---

[25] ECF#181-1 at 7.
[26] _Id._
[27] ECF#180 at 12.
[28] ECF#181-1 at 6.
[29] ECF#186.
[30] _Godson v. Eltman, Eltman & Cooper, P.C._, ___ F. Supp. 3d ___, 2016 WL 1545179 (W.D.N.Y. Apr. 15, 2016); _Godson v. Eltman, Eltman & Cooper, P.C._, 2015 WL 5784908 (W.D.N.Y. Sept. 30, 2015); _Godson v. Eltman, Eltman & Cooper, P.C._, 2014 WL 4627216 (W.D.N.Y. Sept. 15, 2014); _Godson v. Eltman, Eltman & Cooper, P.C._, 2013 WL 4832715 (W.D.N.Y. Sept. 11, 2013).

**Argument**

**I.      LVNV's moving papers make a muddle of revised Fed. R. Civ. P. 26(b).**

After a page discussing the meaning of the revised version of Fed. R. Civ. P.

26(b)(1) that took effect on December 1, 2015, LVNV concludes:

> Likewise, it is axiomatic that based on the amendments to
> FRCP 26, discovery that is clearly not relevant or
> necessary to adjudicate the matters before the Court
> certainly fails to satisfy the prong of the proportionality
> test requiring discovery to be "important to resolving the
> issues in this case."

But LVNV's interpretation of the revised Fed. R. Civ. P. 26(b)(1) is neither

axiomatic nor even correct. It suffers from several problems, including, first, its

attempt to sneak "necessary" – a word found nowhere in Fed. R. Civ. P. 26(b)(1) –

into the standard for the scope of discovery. Contrary to LVNV's definition of the

scope of discovery, a party has never been required to show that a requested

document is "necessary," whether before or after the revisions to Fed. R. Civ. P.

26(b)(1). LVNV's proposed "necessity" burden sounds more like the "substantial

need" burden that a party must meet to obtain attorney work product;[31] in fact, it is

probably a heavier burden even than that. The truth is it is probably impossible for

any party to ever show that any one particular documents is "necessary" to decide

the case – with the possible exception of a demand for a written contract in a breach

of contract case – because, no matter what is demanded, there is always another

way for the party to obtain the information.

---

[31] Fed. R. Civ. P. 26(b)(3)(A)(ii).

7

Second, LVNV's analysis mixes and confounds two inquires – "relevance" and "proportional to the needs of the case" – that need to stay conceptually distinct. Under the rule, courts are to permit any discovery that is both (1) relevant to any party's claim or defense, and (2) proportional to the needs of the case. The rule provides that courts are to undertake both inquiries, but the two inquiries are separate; attempting to apply Fed. R. Civ. P. 26(b)(1) as one giant test would only serve to confuse things, as it does in LVNV's Memorandum.

The six factors listed in Fed. R. Civ. P. 26(b)(1) – importance of the issues at stake in the action; the amount in controversy; the parties' relative access to relevant information; the parties' resources; the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit – apply only to the proportionality test, and *not* to the relevancy test. Contrary to LVNV's summary of its interpretation of Fed. R. Civ. P. 26(b)(1) quoted above, those six items are not six separate "prongs" that a requesting party is required to show; rather, they are six factors to be balanced when determining whether the benefit of any given discovery is commensurate with the cost of producing it.[32] Moreover, contrary to LVNV's suggestion,[33] it is not the requesting party's burden of proving that each and every of the six factors points his

---

[32] *See In re Methyl Tertiary Butyl Ether Prod. Liability Litig.*, MDL 1358(SA), 2016 WL 1367226, at *4, n.43 ("Proportionality focuses on the marginal utility of the discovery sought.") (internal quotation marks and citations omitted).
[33] ECF#181-1 at 20 (ECF pagination) ("Accordingly, Godson fails to show that it is proportional to the needs of his case.")

way.[34] And it remains the burden of any party seeking a protective order to demonstrate "good cause."[35]

Finally, it is important to point out that the December 1, 2015 revisions left the previous relevancy standard unchanged.[36] "Under the amended Rule, relevance is still to be construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any party's claim or defense." "Moreover, information still need not be admissible in evidence to be discoverable."[37]

---

[34] *See American Fed. of Musicians of the U.S. and Canada v. Sony Music Entertainment, Inc.*, 15-CV-05249(GBD)(BCM), 2016 WL 2609307 at *3 (S.D.N.Y. Apr. 29, 2016) ("While the requesting party bears the initial burden of demonstrating any possibility of relevance sufficient to warrant discovery . . . once that showing is made, the party resisting discovery bears the burden of demonstrating that, despite the broad and liberal construction afforded the federal discovery rules, the requests are irrelevant, or are overly broad, burdensome, or oppressive.") (internal quotation marks and citations omitted); *Henry v. Morgan's Hotel Group, Inc.*, 14-CV-1789(ER)(JLC), 2016 WL 303114, at *3 (S.D.N.Y. Jan. 25, 2016) ("The burden of demonstrating relevance remains on the party seeking discovery, but the newly-revised rule does not place on that party the burden of addressing all proportionality considerations.") (internal quotation marks omitted) (quoting *State Farm Mut. Auto. Ins. Co. v. Fayda*, No. 14-CV-9792(WHP)(JCF), 2015 WL 7871037, at *2 (S.D.N.Y. Dec. 3, 2015)).

[35] *See City of New York v. FedEx Ground Package Sys.*, 13 Civ. 9173(ER), 2016 WL 1718261 (S.D.N.Y. Apr. 27, 2016) ("The party seeking a protective order bears the burden of establishing that good cause for the [protective] order exists.") (internal quotation marks and citations omitted).

[36] *Henry*, 2016 WL 303114, at *3 (quoting *State Farm Mut. Auto. Ins. Co.* 2015 WL 7871037, at *2.) (internal quotation marks omitted). *See also American Fed. Of Musicians of the U.S. and Canada*, 2016 WL 2609307, at *3 ("The 2015 amendments, which restored the proportionality calculation to Rule 26(b)(1), did not alter the underlying concept of relevance, which is a matter of degree, and the standard is applied more liberally in discovery than it is at trial.") (internal quotations and citations omitted);

[37] *State Farm Mut. Auto. Ins. Co.*, 2015 WL 7871037 at *2).

## II. The *Cox* depositions are relevant to the issue of whether LVNV sent debts out for collection knowing that the amounts were inaccurate and/or unreliable.

In his Complaint, Plaintiff alleges that

> LVNV knew or should have known at the time it assigned the alleged debts of Plaintiff and the class members to EEC for collection that LVNV did not know the amount of interest allegedly due on the portfolios of accounts purchased by LVNV and assigned for collection to EEC . . . .

> In other words, LVNV knew or should have known that without providing EEC with information concerning the amount of interest due through the date of mailing of the initial collection letters to Plaintiff and the class members, that by assigning the portfolios of accounts to EEC for collection, LVNV was hiring and directing EEC to violate the FDCPA by failing to state the amount allegedly due as required . . . .

> Thus, LVNV is liable not only for the acts of its agent, EEC, but for its own acts in hiring and directing EEC to collect on debts for which LVNV did not know the amounts due.[38]

The *Cox* depositions are relevant to those allegations. As explained above, most of the depositions that Plaintiff is seeking are Fed. R. Civ. P. 30(b)(6) depositions of five different related entities: Defendant LVNV; Resurgent; SO; SFG; and SC. And each of the 30(b)(6) deposition notices include the following topics:

- [The deponent's] policies and procedures for maintaining records and information for accounts and/or receivables it acquires.

- The process by which "accounts" or receivables are assigned and/or transferred to and from [the deponent.]

---

[38] ECF#001 at ¶¶ 71-73.

- [The deponent's] safeguards and/or procedures designed and/or intended to prevent and/or fix FDCPA violations.

- Due diligence undertaken by [the deponent] to verify ownership, legitimacy, and pertinent information of acquired "accounts."

Incidentally, in its Memorandum, LVNV left all of these topics out of its description of the *Cox* depositions[39] – before blithely declaring that "it is clear, that the Deposition Testimony has nothing to do with the acquisition of Godson's debt, the calculation of interest in the Collection Letter and are totally irrelevant to this matter."[40]

To the contrary, it is clear that the portions of the *Cox* depositions discussing the topics listed above have *everything* to with Plaintiff's claims. In a nutshell, Plaintiff claims that LVNV knew that its records concerning the amounts and interest rates of charged-off consumer accounts were inaccurate and/or unreliable – yet it decided to hire third parties to collect on those accounts anyway.

- Deposition testimony related to "policies and procedures for maintaining records and information for accounts and/or receivables" acquired is relevant to those allegations, because that testimony would go to whether the amount and interest rate information Defendant obtained from Providian National Bank was corrupted or adulterated in any way after Defendant obtained the accounts.

- Deposition testimony related to "the process by which "accounts" or receivables are assigned and/or transferred to and from" Defendant is relevant to those

---

[39] *See* ECF#181-1 at 10-11 (ECF pagination).
[40] *Id.* at 11 (ECF pagination).

allegations, because that testimony would go to the quality of information received by those entities when they took assignment, and whether they investigated or verified that information in any way.

- Deposition testimony related to "safeguards and/or procedures designed and/or intended to prevent and/or fix FDCPA violations" is relevant to those allegations, because – as explained in Plaintiff's Memorandum in support of his Fifth Motion to Sanction LVNV[41] – the alleged behavior was an FDCPA violation; thus, that testimony would go to whether Defendant had procedures in place to mitigate alleged activities.

- Deposition testimony related to "due diligence undertaken by [the deponent] to verify ownership, legitimacy, and pertinent information of acquired accounts" is relevant to those allegations, because that testimony would go to whether Defendant investigated or verified the information accompanying the accounts it received, including information concerning amounts and interest rates.

In short, much of the information that can be expected to be contained in the *Cox* depositions will directly relate to Plaintiff's allegations in this case.

In its Memorandum, LVNV argues that the *Cox* depositions are irrelevant because they concern "corporate entities that are not parties to the action and outside the scope of the issues in this action."[42] But that is not so. As Plaintiff painstakingly argued in the Memorandum he filed yesterday in support of his Fifth Motion to Sanction LVNV, the companies that appeared for 30(b)(6) depositions in *Cox* constitute a coherent whole, and each of them played a role in purchasing and

---

[41] *See* ECF#187 at 26-28 (ECF pagination).
[42] *See* ECF#181-1 at 5.

collecting Mr. Godson's debt.[43] Moreover, this Court has previously ordered

Defendant LVNV to produce information held by *each* of the 30(b)(6) deponents:

> Resurgent:
> - "As to LVNV, it shall produce any documents in its possession, custody or control which are related to the drafting of the form letter at issue in this case . . . . Given that LVNV's Limited Power of Attorney to Resurgent Capital Services LP ("Resurgent"), authorizes Resurgent to act as LVNV's agent with respect to the collection of debts owed to LVNV (Dkt.# 82-14, p. 2), this includes documents generated by Resurgent."[44]
>
> - "[P]laintiff's motion to compel is granted in so far as plaintiff seeks production from LVNV of the following documents in the possession, custody or control of LVNV and/or Resurgent: [listing six categories of documents]."[45]
>
> - "LVNV shall produce a plain-English explanation of all codes and abbreviations appearing in Resurgent's account notes pertaining to plaintiff."[46]
>
> Sherman Originator ("SO")
>
> - "The Court further clarifies that . . . Sherman Originator, LLC . . . shall disclose their articles of incorporation and bylaws or limited liability agreements or limited partnership agreements or any management services agreements with each other. In addition the Court orders disclosure of any employment agreements between any corporate officers, members, employees, agents or authorized representatives of . . . Sherman Originator, LLC . . . who are also corporate officers, members, employees, agents, or authorized representatives working in any

---

[43] *See* ECF#187 at 8-25 (ECF pagination).
[44] *Godson*, 2014 WL 4627216, at *5 (citing to *American Rock Salt Co. v. Norfolk Southern Corp.*, 228 F.R.D. 426, 457 (W.D.N.Y. 2004).
[45] *Godson*, 2014 WL 4627216, at *6.
[46] *Godson*, 2015 WL 5784908, at *4.

capacity on behalf of LVNV; Resurgent and/or Eltman."[47]

- "LVNV shall produce the Purchase and Sale Agreement by and between Providian National Bank and Sherman Originator LLC, as well as any additional documentation or communications regarding the transfer of plaintiff's debt from Providian National Bank to Sherman Originator LLC to Sherman Acquisition LP to LVNV as well as any servicing agreements or other agreements relating to the collection of plaintiff's debt between any of these entities."[48]

Sherman Financial Group ("SFG")

- "The Court further clarifies that . . . Sherman Originator, LLC . . . shall disclose their articles of incorporation and bylaws or limited liability agreements or limited partnership agreements or any management services agreements with each other. In addition the Court orders disclosure of any employment agreements between any corporate officers, members, employees, agents or authorized representatives of . . . Sherman Financial Group, LLC . . . who are also corporate officers, members, employees, agents, or authorized representatives working in any capacity on behalf of LVNV; Resurgent and/or Eltman."[49]

- "LVNV shall also disclose the audited financial statements, from 2009 through the present, of any corporate parent or grandparent that includes LVNV's income on its tax returns."[50]

- "By affidavit filed September 25, 2014, LVNV certified that it had produced the complete umbrella liability issued by The Hartford Casualty Insurance Company

---

[47] *Id.* at *3.

[48] *Id.* at *4.

[49] *Id.* at *3.

[50] *Id.* at *4. *See also* ECF#188-20 at 7 (original pagination) (making clear that LVNV's income appears on SFG's audited financial statements).

insuring Sherman Financial Group, LLC and listing LVNV as an additional insured."[51]

Sherman Capital ("SC")

- "In light of LVNV's affirmation that it does not file tax returns or produce audited financial statements . . . LVNV is ordered to disclose the tax returns, including schedules, from 2009 through the present, of any corporate parent or grandparent that includes LVNV's income on its tax returns."[52]

LVNV also argues that the *Cox* depositions are irrelevant because some of the topics deal with charged-off accounts acquired from JP Morgan Chase Bank NA; Chase Bank USA, NA; Sears Roebuck and Co.; and Citigroup, Inc. Admittedly, Mr. Godson's debt was acquired, not from any of those companies, but from Providian National Bank. Still, LVNV's argument is misguided for two reasons. First, there is no rule of federal civil procedure that says that a document containing highly and unquestionably relevant information is undiscoverable merely because it also contains some irrelevant information; in other words, there is no requirement that a document contain *only* relevant information in order to be discoverable. Second, as the Court can see from examining the publicly available portions of the

---

[51] *Godson*, 2016 WL 1545179 at *2. *See also Godson*, 2014 WL 4627216 at *5 ("Setting aside LVNV's apparent lack of understanding of the definition of forthwith, the February 7, 2014 production of the provisions of an umbrella policy, absent a declarations page indicating insured parties and coverage, or production of an underlying policy . . . is wholly insufficient. LVNV shall certify to the Court, within ten days of this Decision and Order, that it has complied with the requirements of Rule 26(a)(1)(A)(iv), or it shall be held in civil contempt."). [52] *Godson*, 2015 WL 5784908 at *4. *See also* ECF#188-20 at 12 (original pagination) (indicating that LVNV's income appears on SC's tax returns).

depositions,[53] most of the time, the deponents speak in generalities; in other words, much of the testimony concerns overall operations and standard practices that would concern Mr. Godson's debt, no matter which third party originated that debt.

Finally, LVNV argues that the *Cox* depositions are irrelevant because they also contain information relevant to LVNV's status as "debt collector" and LVNV's net worth. Specifically, LVNV argues that it should be allowed to withhold the *Cox* depositions since the Court has already – as a sanction for discovery misconduct – determined that LVNV is a "debt collector" and that LVNV's net worth is at least $50 million.[54] LVNV's line of reasoning beggars the imagination. It boils down to this: LVNV refused to produce Court-ordered discovery on a threshold issue (whether LVNV is a "debt collector") and a damages issue (LVNV's net worth); the Court punished LVNV for that refusal; now LVNV is attempting to use that punishment as a shield to deter discovery into a liability issue. Obviously, at the start of this case, Plaintiff needed evidence on the threshold issue *and* the damages issue *and* the liability issue in order to prove his case. Thus, this argument by LVNV is an attempt to erect an elaborate Catch-22, in which Plaintiff is prevented from obtaining evidence on liability, *because* Plaintiff already won the threshold issue and the damages issue by default, *because* LVNV refused to produce evidence related to the threshold issue and damages. In short, LVNV is trying to reap an incredibly unfair advantage from its refusal to produce evidence in accordance with this Court's previous discovery orders.

---

[53] *See* **Exhibits E-G** to Miller Decl. and ECF#188-17, ECF#188-18, and ECF#188-30.
[54] ECF#180 at 12.

### III.    Production of the *Cox* depositions is proportional to the needs of the case.

Interestingly, even though LVNV's Memorandum makes much to-do about proportionality, LVNV makes no attempt to actually apply the six-factor balancing test contained in Fed. R. Civ. P. 26(b)(1). In fact, the only factor it even discusses is "the importance of the discovery in resolving the issues." But that factor is meaningless in isolation; as discussed above in Part I, the point of the proportionality test is to balance the six factors to determine whether the benefit of any given discovery is commensurate with the cost of producing it.[55]

Specifically, LVNV has neither argued nor submitted an affidavit showing that producing the *Cox* depositions would result in any kind of burden or expense. And the fact is, there *is* no burden: Photocopying and mailing approximately five depositions is not an expensive proposition and, if for some reason it is, Plaintiff is happy to accept electronic versions of the depositions. Moreover, LVNV has made no attempt to demonstrate that the *Cox* depositions contain trade secrets of any kind. And even if the depositions do contain confidential information, LVNV is free to mark those sections as confidential under the stipulated confidentiality order filed earlier in this case.[56]

The point is that LVNV is trying to argue that the "importance of the discovery" factor does not weigh very heavily in favor of producing the *Cox* depositions – but what is on the other side of the scale? Since LVNV does not even

---

[55] *See In re Methyl Tertiary Butyl Ether Prod. Liability Litig.*, MDL 1358(SA), 2016 WL 1367226, at *4, n.43 ("Proportionality focuses on the marginal utility of the discovery sought.") (internal quotation marks and citations omitted).
[56] *See* ECF#72 and ECF#73.

attempt to argue that there is any burden or expense associated with production, there is *nothing* on LVNV's side of the scale. It appears that LVNV is not concerned with avoiding undue burden or expense; this is just another case of LVNV trying to keep a padlock on any and all information concerning its business, so as to frustrate consumers' attempts to vindicate their rights under the FDCPA.[57]

But while there is nothing on LVNV's side of the scale, there is much on Plaintiff's side of the scale:

- Importance of the Issues at Stake in the Action: The issues are important because, if Plaintiff's allegations are true, then LVNV – possessing only inaccurate and unreliable information concerning the amounts and interest rates on thousands of New York consumers' accounts – systematically ripped off those consumers. Moreover, the importance of the issues at stake is heightened by the fact that the Sherman Companies, including, LVNV, comprise one of the largest and most successful buyers and collectors of charged-off consumer debt in world.[58] In other words, LVNV's bad practices have a major impact on the national economy – especially lower-income populations – and thus it is important to deter future bad practices on the part of LVNV.

- Amount in Controversy: The discovery is proportional to the amount in controversy because, as a result of this Court's April 15, 2016 Decision and Order, LVNV will be liable to the class for up to the maximum amount of statutory damages under the FDCPA: $500,000. In contrast, as explained above, the cost of emailing approximately five depositions to opposing counsel is virtually zero.

- Parties' Relative Access to Information: This weighs heavily in favor of producing the *Cox* depositions.

---

[57] *See generally* ECF#154 and ECF#169.
[58] *See* ECF#187 at 10-12 (ECF pagination).

Plaintiff needs the *Cox* depositions because they contain information about LVNV's business practices. Obviously, this is something that Plaintiff would not normally have access to absent discovery.

- The Parties' Resources: Again, this weighs heavily in favor of producing the *Cox* depositions. Plaintiff is an individual consumer; LVNV is part of one of the largest and most successful debt-buying companies in the world. Recent information is not publicly available, but, as recently as 2008, LVNV's parent company SFG brought in revenues of over $273 million from receivable portfolios.[59] Again, in contrast, the cost of producing the approximately five depositions is almost nothing.

- The Importance of the Discovery in Resolving the Issues: This is the factor that LVNV focuses on – but, contrary to LVNV's arguments, the *Cox* depositions are incredibly important to resolving the issues, for one simple reason: *LVNV won't give Plaintiff anything else*. As described in Plaintiff's Fifth Motion to Sanction LVNV, LVNV is still hiding the additional documents and communications related to the transfer of Mr. Godson's debt, which would enable Mr. Godson to investigate his claims. While Mr. Godson would much prefer documents specifically related to his own debt, in the absence of any of those documents, the marginal importance of the *Cox* depositions, which describe LVNV's general business practices, is high. The fact is, without *something*, Plaintiff will be walking into a 30(b)(6) deposition completely blind, and utterly defenseless against the evasiveness and cagey language that has characterized LVNV's principals in previous depositions.[60]

In short, all of the proportionality factors weigh in favor of producing the *Cox* depositions. And LVNV's Memorandum makes no real attempt to balance, anyway

---

[59] *See* ECF#188-7 at 16 (ECF pagination).
[60] *See generally* ECF#188-25, ECF#188-26, ECF#188-27, ECF#188-28, ECF#188-32, and ECF#188-33.

– all it does is focus on "the importance of the discovery," in an attempt to sneak it into the relevancy analysis. But as already described in part I, the relevancy analysis and the proportionality analysis are distinct – and, as described in part II, the depositions are relevant.

## Conclusion

From all of this, it follows that LVNV has not met its burden of demonstrating "good cause" for a protective order under Fed. R. Civ. P. 26(c)(1). For these reasons, Plaintiff respectfully asks this Court to deny LVNV's Motion for a Protective Order.

Dated: May 27, 2016

<u>/s/ Jonathan R. Miller</u>
Jonathan R. Miller
One of Plaintiff's Attorneys