UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

CHRISTOPHER GODSON, on behalf of
himself and all others similarly situated,

                       Plaintiff,

       vs.

ELTMAN, ELTMAN & COOPER, P.C. and
LVNV FUNDING, LLC,

                    Defendants.

_____

No. 11-CV-764(EAW)(HKS)

**CLASS ACTION**

**Plaintiff's Memorandum in Support of the
Plaintiff's Motion for Final Approval of
Class Action Settlement, Attorney Fees, and Representative Fees**

Respectfully Submitted,

PLAINTIFF CHRISTOPHER GODSON,
individually and on behalf of the Class.

Jonathan R. Miller
Law Office of Jonathan R. Miller,
PLLC
d/b/a Salem Community Law Office
301 N. Main St., 24th Floor
Winston-Salem, NC 27101
Tel: (336) 837-4437
Fax: (336) 837-4436
jmiller@salemcommunitylaw.com

Kenneth R. Hiller
Seth Andrews
Law Offices of Kenneth Hiller, PLLC
6000 N. Bailey Ave., Suite 1A
Buffalo, NY 14226
Tel: (716) 564-3288
Fax: (716) 332-1884
khiller@kennethhiller.com
sandrews@kennethhiller.com

Brian L. Bromberg
Bromberg Law Office, P.C.
26 Broadway, 21st Floor
New York, NY 10004
Tel: (212) 248-7906
Fax: (212) 248-7908
brian@bromberglawoffice.com

# Table of Contents

Table of Authorities.................................................................................................................ii

Introduction and Class Member Response to the Notice of Settlement........................................1

  I.    Background and Summary of Settlement..............................................................................2

  I.    Court Approval of Class Action Settlements.......................................................................6

  II.    The Notice was Reasonable and the Best Practicable.......................................................8

    A.    The complexity, expense and likely duration of the litigation ...................................10

    B.    Reaction of the Class to the settlement .......................................................................10

    C.    The stage of the proceedings and the amount of discovery completed ......................10

    D.    The risk of establishing liability and damages ...........................................................11

    E.    The risks of maintaining the class action through the trial ........................................12

    F.    The ability of Defendants to withstand a greater judgment........................................12

    G.    The range of reasonableness of the settlement in light of the best possible recovery in light of all the attendant risks; opinions of class counsel...............................................................13

  IV.    Award to representative Plaintiffs ....................................................................................13

  V.    *Cy Pres* Award ...............................................................................................................14

  VI.    The attorney fees and costs sought by Plaintiff on behalf of the class are fair and reasonable ...............................................................................................................................14

    A.    The proposed fee is reasonable ..................................................................................16

    B.    Plaintiff's attorneys' hourly rates are reasonable ......................................................21

    C.    An upward adjustment should be made.......................................................................26

      1. The time and labor required...................................................................................28

      2. The novelty and difficulty of the questions. ..........................................................29

      3. The skill requisite to perform the legal services properly......................................30

      4. The preclusion of other employment. ....................................................................30

      5. The customary fee for like work in the community..................................................31

      6. Whether the fee is fixed or contingent. ..................................................................32

      7. Time limitations imposed by the client or the circumstances..................................33

      8. The amount involved and the results obtained........................................................33

      9. The experience, reputation and ability of the attorney. .........................................33

      10. The undesirability of the case. .............................................................................34

      11. The nature and length of the professional relationship with the client. ...............35

      12. Awards in similar cases.......................................................................................35

    D.    Award to representative Plaintiffs ..............................................................................36

Conclusion...............................................................................................................................36

## Table of Authorities

Page(s)

**Cases**

*Acevedo v. Workfit Medical LLC,*
187 F. Supp. 3d 370 (W.D.N.Y. 2016) ................................................................27

*Algie v. RCA Global Commc'ns, Inc.,*
891 F. Supp. 875 (S.D.N.Y. 1994) ......................................................................19

*Amchem Products, Inc. v. Windsor, Amchem Products, Inc. v. Windsor,*
521 U.S. 591 (1997) .............................................................................................15

*Aramburu v. Healthcare Financial Services, Inc.,*
No. 02-CV-6535, 2009 WL 1086938 (E.D.N.Y. April 12, 2009) ........................10

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany,*
522 F.3d 182 (2d Cir. 2008) ...................................................................... *passim*

*Bailey v. District of Columbia,*
839 F. Supp. 888 (D.D.C. 1993) ...................................................................19, 29

*Bankston v. State of Illinois,*
60 F.3d 1249 (7th Cir. 1995) ...............................................................................19

*In re Beverly Hills Fire Litig.,*
639 F.Supp. 915 (E.D.Ky, 1986) .........................................................................27

*Biber v. Pioneer Credit Recovery, Inc.,*
2018 WL 1633603 (E.D.Vir. Jan. 31, 2018) ........................................................23

*Blanchard v. Bergeron,*
489 U.S. 87 (1989) ...............................................................................................18

*Blum v. Stenson,*
465 U.S. 886 (1984) .................................................................................18, 20, 32

*Brinker v. Giuffrida,*
798 F.2d 661 (3d Cir. 1986) .................................................................................26

*In re Cenco Inc. Sec. Litig.,*
519 F.Supp. 322 (N.D.Ill. 1981) ..........................................................................27

ii

*In re Cendent Corp. PRIDES Litig.*,
    243 F.3d 722 (3d Cir. 2001) ................................................................27

*Chambless v. Masters Mate & Masters Pension Plan*,
    885 F.2d 1053 (2d Cir. 1989) ........................................................19, 20

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974) ............................................................9, 10

*Cohen v. West Haven Bd. Of Police Com'rs*,
    638 F.2d 496 (2d Cir. 1980) ................................................................18

*Cunningham v. Suds Pizza, Inc.*,
    290 F. Supp. 3d 214 (W.D.N.Y. 2017) ...............................................27

*Daly v. Hill*,
    790 F.2d 1071 (4th Cir. 1986) ............................................................18

*Davis v. J.P. Morgan Chase & Co.*,
    827 F. Supp. 2d 172 (W.D.N.Y. Oct. 11, 2011) .................................28

*De Jesus v. Banco Popular de Puerto Rico*,
    918 F.2d 232 (1st Cir. 1990) ...............................................................15

*De La Paz v. Rubin & Rothman, LLC, De La Paz v. Rubin & Rothman, LLC*,
    No. 11-CV- 9625, 2013 WL 6184425 (S.D.N.Y. Nov. 25, 2013) ...................................23, 24

*DiFilippo v. Morizio*,
    759 F.2d 231 (2d Cir. 1985) ........................................................18, 21

*In re Eastman Kodak ERISA Litig.*,
    213 F. Supp. 3d 503 (W.D.N.Y. 2016) ...............................................27

*Emanuel v. American Credit Exchange*,
    870 F.2d 805 (2d Cir. 1989) ................................................................16

*Farbotko v. Clinton County of New York*,
    433 F.3d 204 (2d Cir. 2005) ................................................................21

*Gary v. Kason Credit Corp.*,
    No. 95-CV-54 (D. Conn. Oct. 21, 1998) .............................................19

*Gates v. Deukmejian*,
    987 F.2d 1392 (9th Cir. 1992) ............................................................26

iii

*Godson v. Eltman, Eltman & Cooper, P.C.*,
   177 F. Supp. 3d 803 (W.D.N.Y. 2016) ...................................................................3

*Godson v. Eltman, Eltman & Cooper, P.C.*,
   2013 U.S. Dist. LEXIS 129988 (W.D.N.Y. Sept. 11, 2013) ...................................3

*Godson v. Eltman, Eltman & Cooper, P.C.*,
   2014 U.S. Dist. LEXIS 130907 (W.D.N.Y. Sept. 15, 2014) ...................................3

*Godson v. Eltman, Eltman & Cooper, P.C.*,
   2015 U.S. Dist. LEXIS 138339 (W.D.N.Y. Sept. 30, 2015) ...................................3

*Godson v. Eltman, Eltman & Cooper, P.C.*,
   2017 U.S. Dist. LEXIS 2856 (W.D.N.Y. Jan. 9, 2017) .........................................3

*Graziano v. Harrison*,
   950 F.2d 107 (3d Cir. 1991)................................................................................16

*Heironimus v. Cavalry Portfolio Services, LLC*,
   S.D. Texas, Case No. 17-CV-121 .......................................................................23

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983)............................................................................................18

*Johnson v. Georgia Highway Exp., Inc.*,
   488 F.2d 714 (5th Cir. 1974), *overruled on other grounds by Blanchard v.*
   *Bergeron*, 489 U.S. 87 (1989).......................................................................... *passim*

*Lemire v. Wolpoff & Abramson, P.C.*,
   D. Conn., Docket No. 08-cv-249(CSH).........................................................12, 32

*In re: Marine Midland Motor Vehicle Leasing Litigation*,
   155 F.R.D. 416 (W.D.N.Y. 1994)......................................................................36

*McDonald v. Pension Plan of the NYSA-ILA Pension Trust Fund*,
   450 F.3d 91 (2d Cir. 2006)..................................................................................20

*Miele v. New York State Teamsters Conference Pension & Retirement Fund*,
   831 F.2d 407 (2d Cir. 1987)................................................................................19

*Missouri v. Jenkins*,
   491 U.S. 274 (1989)............................................................................................18

*Morgan v. Credit Adjustment Board*,
   1998 U.S. Dist. Lexis 8135 ................................................................................29

iv

*New England Carpenters Health Benefits Fund v. First Databank, Inc.*,
  No. 05-11148, 2009 WL 2408560 (D. Mass. Aug. 3, 2009) ...................................27

*Odom v. Hazen Transport, Inc.*,
  275 F.R.D. 400 (W.D.N.Y: 2011)..........................................................................28

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985)................................................................................................9

*Pipiles v. Credit Bureau of Lockport*,
  886 F.2d 22 (2d Cir. 1989). Civil..........................................................................16

*In re: Rite Aid Securities Litigation*,
  269 F.Supp. 2d 602 (E.D. Pa. 2003) ......................................................................10

*San Francisco NAACP v. San Francisco Unified Sch. Dist.*,
  59 F. Supp. 2d 1021 (N.D. Cal. 1999) .....................................................................7

*Simmons v. New York City Transit Auth.*,
  575 F.3d 170 (2d Cir.2009).............................................................................24, 25

*Strubel v. Talbots Classics National Bank*,
  SDNY Case No. 13-CV-1106-PAE ........................................................................23

*Tolentino v. Friedman*,
  46 F.3d 645 (7th Cir. 1995) ............................................................................16, 35

*Trimpter v. City of Norfolk*,
  846 F. Supp. 1295 (E.D. Va. 1994) .......................................................................18

*Underdog Trucking, L.L.C. v. Verizon Serv. Corp.*,
  276 F.R.D. 105 (S.D.N.Y.2011) ............................................................................21

*United States Football League v. National Football League*,
  887 F.2d 408 (2d Cir. 1989)............................................................................21, 26

*Vancouver Women's Health Collective Soc'y v. A.H. Robins Co., Inc.*,
  820 F.2d 1359 (4th Cir. 1987) ................................................................................9

*Venes v. Professional Service Bureau, Inc.*,
  353 N.W.2d 671 (Minn. App. 1984).......................................................................16

*Vizcaino v. Microsoft*,
  290 F.3d 1043 (9th Cir. 2002) ..............................................................................27

*White v. First American Registry*, *White v. First American Registry*,
No. 04-CV-1611, 2007 WL 703926 (S.D.N.Y. Mar. 7, 2007) ................................24

*Withers v. Eveland*,
997 F. Supp. 738 (E.D.Va. 1998) ....................................................................28, 29

*Zagorski v. Midwest Billing Services, Inc.*,
128 F.3d 1164 (7th Cir. 1997) ........................................................................16, 35

**Statutes**

Consumer Credit Protection Act ...........................................................................28, 34

Equal Credit Opportunity Act, 15 U.S.C. § 1691, *et seq.* ...........................................28

Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ...........................................24, 28

Fair Debt Collection Practices Act ................................................................................1

Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ............................ *passim*

Fair Labor Standards Act, 29 U.S.C. § 203 .................................................................34

N.Y. General Business Law § 349.................................................................................24

N.Y. General Business Law § 380, *et seq.* (N.Y. Fair Credit Reporting
Act) ........................................................................................................................24

Truth in Lending Act, 15 U.S.C. § 1601, *et seq.* ........................................................23

**Other Authorities**

Alba Conte & Herbert Newberg, *Newberg on Class Actions* (4th ed. 2002) ..................7

Fed. R. Civ. P. 23.............................................................................................. *passim*

Laura B. Bartell, *Taxation of Costs and Awards of Expenses in Federal Court*,
101 F.R.D. 553 (1984) ..........................................................................................21

**Introduction and Class Member Response to the Notice of Settlement**

Plaintiff Christopher Godson and Class Counsel did an extraordinary job here. After seven years of written discovery practice, depositions of parties and non-parties all around the country, motion practice resulting in multiple decisions published in the Federal Supplement and on Westlaw and Lexis, expert review of Defendants' financial records, and two lengthy settlement conferences before Hugh Russ, Esq., the parties settled. Due to Mr. Godson's diligence, 247 class members are going to receive $688 each, if this settlement is approved. This represents 69% of the maximum recovery for statutory damages that each class member would be entitled to if he or she found and retained counsel and sued successfully. Given that one of the defendants, Eltman, Eltman & Cooper, P.C., later known as EltmanLaw, P.C., has recently closed its doors, the chances of a pro se class member or a non-specialist lawyer being able to navigate the Fair Debt Collection Practices Act and the courts to recover in an individual lawsuit are practically nil.

In an environment in which the tabloids castigate class-action litigants for recovering pennies, assuming approval, no one can claim that a payment of $688 to each class member is anything less than rare and exceptional.

In reviewing the settlement and fee-request, Class Counsel asks that Court bear in mind that it was not until the parties appeared for a deposition in Raleigh, North Carolina, on September 15, 2017, that Defendants' attorney, Concepcion Montoya, Esq., revealed that Defendants had miscalculated the number of class

members. Ms. Montoya revealed that the number of class members was in fact 270, not 977 as Defendants had represented until then. In other words, it was not until then, after six years of litigation, that Class Counsel learned that the number of class members was only one quarter the number Defendants had provided earlier. Plaintiff's attorneys made a settlement demand during the same conversation — subject to Mr. Godson's approval, of course. Ms. Montoya advised she would discuss the matter with her client and that, in the meantime, the parties should continue with litigation.

Accordingly, under Fed. R. Civ. P. 23, Plaintiff moves this Court for final approval of the proposed class-action settlement. As explained below, notice has been provided to the Class Members in accordance with the Court's Preliminary Approval Order. Not surprisingly, none of the class members have opted out or objected. This substantial recovery for the Class Members merits final approval of the settlement.

## I.    Background and Summary of Settlement

The history of this case and the settlement are as follows.  Mr. Godson filed this case on September 9, 2011, on behalf of himself and a class of similarly situated New York consumers. In his complaint, Godson alleged that Defendant Eltman, Eltman & Cooper, P.C. ("Eltman") sent him a letter (the "Letter") that violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, in that it incorrectly stated the amount of a debt Godson owed to Defendant LVNV Funding,

LLC ("LVNV"). Specifically, Plaintiff alleged, the amount listed in the Letter was incorrect because it did not include all the interest. (A true and accurate copy of the Letter Eltman sent to Godson can be found at Docket No. 224-2. Godson moved to certify the class on March 27, 2012, and LVNV moved for summary judgment on October 18, 2013 – but the Court never had the opportunity to decide either motion, as both required further discovery. Extensive discovery, as well as discovery-related motion practice, followed. *See Godson v. Eltman, Eltman & Cooper, P.C.*, 2017 U.S. Dist. LEXIS 2856 (W.D.N.Y. Jan. 9, 2017); *Godson v. Eltman, Eltman & Cooper, P.C.*, 177 F. Supp. 3d 803 (W.D.N.Y. 2016); *Godson v. Eltman, Eltman & Cooper, P.C.*, 2015 U.S. Dist. LEXIS 138339 (W.D.N.Y. Sept. 30, 2015); *Godson v. Eltman, Eltman & Cooper, P.C.*, 2014 U.S. Dist. LEXIS 130907 (W.D.N.Y. Sept. 15, 2014); *Godson v. Eltman, Eltman & Cooper, P.C.*, 2013 U.S. Dist. LEXIS 129988 (W.D.N.Y. Sept. 11, 2013).

On November 7, 2017, the parties engaged in an all-day mediation before Hugh Russ, Esq. as part of the Western District of New York's Settlement Week. (This was the parties' third mediation before Mr. Russ.) The parties agreed to the broad outlines of a class settlement on that date and have been hammering out the details since then. The result of these discussions has been memorialized in a Class Action Settlement Agreement and Release (the "Agreement"), which can be found at Docket No. 224-3.

In summary, the parties have agreed to a fund of $180,000 for a statewide class settlement to compensate the settlement class of approximately 270 individuals, of whom, unfortunately, only 247 could be located (the "Class"). From this settlement fund, the parties will deduct only the amount going to the class representative Christopher Godson; neither the costs of notice, distribution, and payment of the Settlement Administrator nor attorney fees for Class Counsel will be deducted from the fund. In addition, the judgment against Mr. Godson in Florida is being vacated and dismissed. The Settlement Administrator will distribute the remainder of the fund to the 247 Class members — none of whom excluded themselves from the Class.

Under the Agreement, Class Counsel are petitioning this Court for an award of attorney fees and costs not to exceed $350,000; Defendants have agreed not to object to Class Counsel's fee petition. Considering the extensive amount of time and effort devoted to this case, counsel believes the full $350,000 attorney fees and costs authorized under the settlement are justifiable.

The proposed individual award of $10,000 to Mr. Godson, the Class Representative, is based on his involvement in appearing for a deposition, actively litigating the case, and negotiating the settlement in two separate settlement conferences.

4

Under Fed. R. Civ. P. 23(e), Plaintiff – with Defendants' consent – moved for class certification and preliminary approval of the proposed class action settlement. Specifically, Plaintiffs requested that the Court certify the following proposed class:

> All consumers who, according to Defendant's records, had a New York address and: (a) within one year prior to the filing of this action; (b) were sent collection letters bearing Eltman's letterhead in a form materially identical or substantially similar to the letter sent to the Plaintiff and attached as <u>Exhibit A</u>; and (c) which were not returned by the postal service as undelivered.

On May 21, 2018, the Court granted preliminary approval of the Settlement, Dkt. 232, and scheduled a Fairness Hearing for September 25, 2018.

The Parties agreed to a direct-mail notice program designed to reach all the Class Members. Defendants, through First Class, Inc. – a class action administration company – distributed direct-mail notice to the Class Members using the last known physical addresses of those Class Members as reflected in Defendants' business records. *See* the accompanying Declaration of Bailey Hughes, dated September 11, 2018. The class list provided to First Class identified 270 consumers to whom Defendants sent the same or similar collection letters at issue in this matter; First Class searched the list for duplicate records, but found none. As detailed in the Declaration of Bailey Hughes, before mailing notice to the Class Members, First Class utilized the National Change of Address update process of the U.S. Postal Service to update the addresses in the class list.  Following these efforts, notice of the class action settlement was mailed to 270 Class Members in

accordance with the Court's Preliminary Approval Order. Hughes Declaration at ¶ 7. Of the 270 notices mailed to Class Members, 1 notice was returned by the U.S. Postal Service with a new address and re-mailed, and 39 were returned as undeliverable with no forwarding address. Hughes Declaration at ¶ 9. Of those 39, First Class was able to find new addresses and resend notice to 20, and, of those 20, four were returned as undeliverable. Therefore, the direct mailing may be estimated to have reached approximately 247 of the 270 Class Members.

In sum, the Parties have complied fully with the Court's Preliminary Approval Order and have taken reasonable steps to ensure that the Class Members were notified – in the best and most direct manner possible – of the Settlement's terms and benefits.

## I.     Court Approval of Class Action Settlements

The Parties seek, under the terms of the Court's Preliminary Approval Order and federal law, final approval of the Settlement. The Settlement is the result of litigation, followed by lengthy settlement negotiations conducted at arm's length. Most significantly, the Settlement provides significant monetary benefit to the Class Members.

A class settlement, and subsequent dismissal of the case, requires Court approval. Fed. R. Civ. P. 23(e)(1)(A). The process for that approval is discussed generally in Rule 23(e), which provides, in relevant part:

(e) Settlement, Voluntary Dismissal, or Compromise.

> The claims, issues, or defenses of a certified class may be
> settled, voluntarily dismissed, or compromised only with
> the court's approval. The following procedures apply to a
> proposed settlement, voluntary dismissal, or compromise:
>
> (1) The court must direct notice in a reasonable manner to
> all class members who would be bound by the proposal.
>
> (2) If the proposal would bind class members, the court
> may approve it only after a hearing and on finding that it
> is fair, reasonable, and adequate. . . .

Fed. R. Civ. P. 23(e).

Rule 23(e) thus imposes two basic requirements on the parties and on the

Court before the approval of a class settlement and dismissal. First, the Court must

determine that notice was directed "in a reasonable manner to all class members."

Fed. R. Civ. P. 23(1). Second, the Court must determine that the settlement "is fair,

reasonable, and adequate." Fed. R. Civ. P. 23(2). Plaintiff addresses these

requirements *seriatim*.

Federal jurisprudence strongly favors resolution of class actions through

settlement. *San Francisco NAACP v. San Francisco Unified Sch. Dist.*, 59 F. Supp.

2d 1021, 1029 (N.D. Cal. 1999); *see also* Alba Conte & Herbert Newberg, *Newberg

on Class Actions* § 11.41 (4th ed. 2002) ("The compromise of complex litigation is

encouraged by the courts and favored by public policy.") Federal Rule of Civil

Procedure 23 requires Court review of the resolution of a class action such as this

one. Specifically, the Rule provides that "[t]he claims, issues, or defenses of a

certified class may be settled, voluntarily dismissed, or compromised only with the

court's approval." Fed. R. Civ. P. 23(e). The court-approval requirement, as the Advisory Committee explained, is intended "to strengthen the process of reviewing proposed class-action settlements." Fed. R. Civ. P. 23(e), Advisory Committee Notes, 2003 amendments. The Committee noted in particular that "court review and approval are essential to assure adequate representation of class members who have not participated in shaping the settlement." *Id.* The Court may approve a settlement only after a hearing and on finding that it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

## II.   The Notice was Reasonable and the Best Practicable

In a settlement class maintained under Rule 23(b)(3), class notice must meet the requirements of both Federal Rules of Civil Procedure 23(c)(2) and 23(e). Rule 23(e) specifies that "[n]o class action may be 'dismissed or compromised without [court] approval,' preceded by notice to class members." Fed. R. Civ. P. 23(e).  Rule 23(c)(2) requires that notice to the class must be "the best practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c). The Rule also requires that the notice inform potential class members that (1) they have an opportunity to opt out; (2) the judgment will bind all class members who do not opt out or appear through counsel. *Id.* The Court must consider the mode of dissemination and the content of the notice to assess whether such notice was sufficient. *See Manual for Complex Litigation* (Fourth) § 21.312 (2004).

Due process, in the class action context, requires that the form of notice be "reasonably certain to inform those affected." *Vancouver Women's Health Collective Soc'y v. A.H. Robins Co., Inc.*, 820 F.2d 1359, 1364 (4th Cir. 1987). The Supreme Court has concluded that direct notice satisfies due process. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812-13 (1985). Here, the Parties' efforts to provide Class Members with Notice of the Class Action demonstrate clearly that they were the best notice practicable under the circumstances given: (a) the available information; (b) the possible identification methods; (c) the number of class members; (d) the amount of the settlement; (e) the value to the class as a whole by holding up the settlement process for the other class members; (f) the significant additional costs to class members; and (g) the anticipated results of further identification efforts. Thus, the Court should find that the Notice of the Class Action (and process followed as described above) satisfies Rule 23.

## III.  Factors Bearing on Final Approval

The Second Circuit has enumerated nine factors, known as the *Grinnell* factors, to guide courts in evaluating the fairness of a proposed settlement:

> (1) The complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation[.]

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) (internal citations omitted). The central question here is whether the compromise is fair, reasonable, and adequate. *Id.*, citing *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982).

### A.  The complexity, expense and likely duration of the litigation

This case is complex factually, raising significant legal questions regarding whether the Defendants' conduct violated the FDCPA. Continued litigation would be costly and if the case is not settled, it is likely that a final adjudication would not take place for at least two more years. Accordingly, this factor favors approval of the settlement.

### B.  Reaction of the Class to the settlement

The reaction of the Class to the settlement has been positive. There have been no objections and no class members have requested exclusion. *See* Hughes Declaration. No objections and only nine exclusion requests tip "heavily in favor of a strong presumption of fairness." *See In re: Rite Aid Securities Litigation*, 269 F.Supp. 2d 602, 608 (E.D. Pa. 2003); *also see Aramburu v. Healthcare Financial Services, Inc.*, No. 02-CV-6535, 2009 WL 1086938, *4 (E.D.N.Y. April 12, 2009) (The fact that no class members opted out or objected weighs in favor of approval).

### C.  The stage of the proceedings and the amount of discovery completed

The parties engaged in years of discovery and motion practice to prove up the case, eliminate affirmative defenses, determine the degree of control of LVNV over

Eltman, determine class size and Defendants' net worth, and learn other key information needed to move for class certification and judgment or settlement. This included years of discovery and motion-practice, lengthy, multiple telephone conferences, email communications and two lengthy settlement conferences before Hugh Russ, Esq. with Mr. Godson present.

### D.  The risk of establishing liability and damages

Although Plaintiff believes liability to be strong, Defendants deny liability. If tried, Plaintiffs would bear the burden of establishing that the notices violated the FDCPA. Defendants vigorously deny any wrongdoing, have asserted numerous defenses and maintain that the notices that are the subject of this case comply in all respects with the FDCPA. But the biggest risk here is not proving liability, but making certain that LVNV is held liable now that Eltman has folded and obtaining a judgment near one percent of LVNV's net worth. That is, there is no minimum to class recoveries under the FDCPA – a jury could just as easily choose to award nothing as award $500,000. (After lengthy motion practice, for purposes of this litigation, LVNV has waived any claim that its net worth is less than $50 million.) And with $1,000 as the maximum individual recovery for the class members, Plaintiff would be in the position of arguing entitlement to more than $1,000 for each class member for a violation that cost few, if any, of the class members any money out-of-pocket. In other words, discovery revealed that LVNV eventually backed out the incorrect calculations of interest for the class members. Thus, given

11

the lack of provable actual damages for most class members, this is not an idle concern.

### E.  The risks of maintaining the class action through the trial

During litigation, the unexpected does happen and must be considered. Here, after years as one of the largest debt-collection law firms in New York, Eltman folded. This has happened before to one of the Plaintiffs' attorneys, Brian L. Bromberg. A number of years ago in a case pending in the District of Connecticut, *Lemire v. Wolpoff & Abramson, LLP*, 3:08-cv-249(CSH), an FDCPA class had to be decertified after a settlement had been reached because the successor law firm to the defendant – the largest debt-collection law firm in the country – had gone into receivership. Although Class Counsel believe that LVNV can withstand a judgment for the full $500,000, plus fees and costs, LVNV's liability would have to be proven. In short, the vagaries of litigation must be taken into account in evaluating a settlement's reasonableness and with one defendant out of business, the case should settle now.

### F.  The ability of Defendants to withstand a greater judgment

This is a significant factor in determining the fairness of the settlement. Eltman has already gone out of business and while LVNV is one of the largest debt-buyers in the country, there is no guarantee that it could survive a recession. Throughout this litigation, Plaintiffs' attorneys have been well-aware that LVNV, whose fortunes rise and fall on the basis of what hard-pressed consumers can pay,

could suffer a quick downturn and close for business. Although LVNV will not be bankrupted by this case, there is always some urgency nowadays when litigating against a debt-buyer.

### G. The range of reasonableness of the settlement in light of the best possible recovery in light of all the attendant risks; opinions of class counsel

This factor also weighs toward settlement. The 247 class members will be receiving checks for $688 each. Any remaining funds will be distributed as *cy pres* to the Western New York Law Center.

Class members will be receiving checks for $688 – 69%% of the maximum individual statutory damages of $1,000 each. Even if Plaintiff were to win on a motion for contested class certification (and any interlocutory appeal from class certification), win on liability, win at trial (and any appeal from final judgment), Plaintiff and the Class might still not recover as much as $688.

Defendants agreed to this settlement for economic reasons and to avoid the burdens of litigation without an admission of wrongdoing. Still, it resulted in an excellent recovery. In addition to the recovery for the class members, and the award to the class representative, counsel also negotiated for Defendants to pay class counsel fees and costs. For these reasons, the settlement is fair and reasonable and Class Counsel have endorsed it.

## IV.  Award to representative Plaintiffs

13

Plaintiffs request, and Defendants have agreed not to object to, a personal award of $10,000 to Plaintiff Godson for the settlement of his individual claim and in recognition of his services as the Class Representative.  This award is warranted because of the Class Representative's involvement in this case and commitment to following up with counsel to assure that they were actively prosecuting this case.  In addition, Mr. Godson was actively involved not only in filing and litigating this case, but in appearing for a deposition and in spending time with counsel and with Mr. Russ negotiating the settlement on two separate days. Most importantly, however, the award is, in part, to compensate Plaintiff for his individual claims against Defendants. In sum, Plaintiff has been a model class representative, and the proposed award is both reasonable and of the type commonly approved. *See* Bromberg Decl.

## V.     *Cy Pres* Award

Any funds from settlement checks un-cashed (*i.e.*, checks not cashed within 90 days of the date on which they were mailed to Class Members) or other undistributed funds shall be awarded to the Western New York Law Center as the *cy pres* recipient, subject to the Court's approval.

## VI.    The attorney fees and costs sought by Plaintiff on behalf of the class are fair and reasonable

Plaintiff, on behalf of the class, seeks a recovery of $350,000 for attorney fees and costs. This amount was agreed upon *after* the parties had agreed on the settlement fund to the class (subject to reaching a final agreement). This sum for

14

fees and costs does not impact the amount of money going to the class members in any way. Still, under *Amchem Products, Inc. v. Windsor*, *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997), the Court must ensure that the payment is fair and reasonable.

Congress enacted the FDCPA more than three decades ago because of "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices" that harm the marketplace economy by "contribut[ing] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasion of individual privacy." 15 U.S.C. § 1692(a). Congress found that existing laws and procedures were "inadequate to protect consumers" and "means other than misrepresentation or other abusive debt collection techniques are available for the effective collection of debts." 15 U.S.C. § 1692(b) and (c).  Congress encouraged consumers to bring FDCPA actions before Federal Article III judges by eliminating any "amount in controversy" requirement. 15 U.S.C. § 1692k(d). Congress also fostered enforcement of the FDCPA by enacting statutory damages and mandating that debt collectors pay "reasonable attorney's fees as determined by the court." 15 U.S.C. § 1692k(a)(3).

Where a statutory attorney fees provision is phrased in mandatory terms, "fees may be denied a successful plaintiff only in the most unusual of circumstances." *De Jesus v. Banco Popular de Puerto Rico*, 918 F.2d 232, 234 (1st Cir. 1990) (truth in lending). An award of fees is mandatory in FDCPA cases,

*Zagorski v. Midwest Billing Services, Inc.*, 128 F.3d 1164 (7th Cir. 1997); *Tolentino v. Friedman*, 46 F.3d 645, 651 (7th Cir. 1995); *Graziano v. Harrison*, 950 F.2d 107, 113-14 (3d Cir. 1991) (FDCPA "mandates an award of attorney's fees as a means of fulfilling Congress's intent that the Act should be enforced by debtors acting as private attorneys general"), even if there has been no award of actual or statutory damages. *Emanuel v. American Credit Exchange*, 870 F.2d 805, 808 (2d Cir. 1989); *Pipiles v. Credit Bureau of Lockport*, 886 F.2d 22, 28 (2d Cir. 1989). Civil suits will deter abusive practices only if it is economically feasible for consumers to bring them. "Unless consumers can recover attorney's fees, it may not be possible for them to pursue small claims. . . . Unscrupulous collection agencies have little to fear from such suits if consumers must pay thousands of dollars in attorney fees to protect hundreds. Congress recognized this problem and specifically provided for the award of attorney fees to successful plaintiffs." *Venes v. Professional Service Bureau, Inc.*, 353 N.W.2d 671 (Minn. App. 1984).

### A. The proposed fee is reasonable

In *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182 (2d Cir. 2008), the Second Circuit clarified the proper analysis for a district court to undertake in exercising its considerable discretion in awarding attorney's fees. A court is to

> bear in mind *all* of the case-specific variables that we and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate. The reasonable hourly rate is the rate a

16

> paying client would be willing to pay. In determining what rate a paying client would be willing to pay, the district court should consider, among others, the *Johnson* factors; it should also bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively. The district court should also consider that such an individual might be able to negotiate with his or her attorneys, using their desire to obtain the reputational benefits that might accrue from being associated with the case. The district court should then use that reasonable hourly rate to calculate what can properly be termed the "presumptively reasonable fee."

*Id.* at 190.

As shown below, the *Johnson* factors, drawn from *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714 (5th Cir. 1974), *overruled on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989), support the reasonableness of the negotiated fee. The *Johnson* factors are:

(1)     the time and labor required;
(2)     the novelty and difficulty of the questions;
(3)     the skill requisite to perform the legal services properly;
(4)     the preclusion of other employment by the attorney due to acceptance of the case;
(5)     the customary fee in the community;
(6)     whether the fee is fixed or contingent;
(7)     time limitations imposed by the client or the circumstances;
(8)     the amount of time involved and the results obtained;
(9)     the experience, reputation, and ability of the attorneys;
(10)    the "undesirability" of the case;
(11)    the nature and length of the professional relationship with the client; and

17

(12)    awards in similar cases.

*Id.* at 717-19.

There is no strict formula as to how these factors are to be applied. *Trimpter v. City of Norfolk*, 846 F. Supp. 1295, 1303 (E.D. Va. 1994). Once a figure for attorney's fees is calculated using the *Johnson* factors, that amount becomes the "lodestar" which can then be adjusted upwards or downwards, again using the *Johnson* factors. *Hensley v. Eckerhart*, 461 U.S. 424, 433-34 (1983). "[M]any of those factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." *Id.* at 434 n.9. If the lodestar figure is properly calculated, adjustment will be unnecessary in most cases. *Daly v. Hill*, 790 F.2d 1071, 1078 (4th Cir. 1986). There is a strong presumption that the lodestar figure (reasonable hours multiplied by a reasonable rate) represents a reasonable fee. *Blanchard v. Bergeron*, 489 U.S. 87, 95 (1989), quoting *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 656 (1986). Currently prevailing marketplace rates establish the lodestar amount. *Missouri v. Jenkins*, 491 U.S. 274, 283 (1989); *Blum v. Stenson*, 465 U.S. 886, 895 (1984); *DiFilippo v. Morizio*, 759 F.2d 231, 235 (2d Cir. 1985) (rejecting 46 hours on pretrial memo and 42 hours on fee application); *Cohen v. West Haven Bd. Of Police Com'rs*, 638 F.2d 496, 506 (2d Cir. 1980). "The district court may not reduce the established market rate by some factor that it believes accounts for differences between large firms and small firms. Lawyers of common expertise and experience in the same

18

market are entitled to the same rate. *Bankston v. State of Illinois*, 60 F.3d 1249, 1255-56 (7th Cir. 1995); *Bailey v. District of Columbia*, 839 F. Supp. 888, 891 (D.D.C. 1993) (no distinction between solo and large firm rate); *Gary v. Kason Credit Corp.*, No. 95-CV-54 (D. Conn. Oct. 21, 1998) (rejecting "overhead" argument).

District courts should not treat an attorney's status as a solo practitioner as grounds for an automatic reduction in the reasonable hourly rate. Cases suggest that in determining the relevant "market," a court may look to rates charged by those similarly situated, including looking to the rates charged by large- or medium-sized law firms, based on the widely-held premise that a client represented by a medium-sized firm pays less than a client represented by a large firm with higher overhead costs. *See e.g., Chambless v. Masters Mate & Masters Pension Plan*, 885 F.2d 1053, 1058-59 (2d Cir. 1989); *Algie v. RCA Global Commc'ns, Inc.*, 891 F. Supp. 875, 895 (S.D.N.Y. 1994). But whether or not the aforementioned premise – that the bigger the firm the higher the attorneys' hourly rates charged – is correct, and even assuming it may be that solo practitioners of equal skill, expertise and reputation, charge less than those at large- or medium-sized firms, courts should not automatically reduce the reasonable hourly rate based solely on an attorney's status as a solo practitioner. Overhead is not a valid reason for why certain attorneys should be awarded a higher or lower hourly rate. *Miele v. New York State Teamsters Conference Pension & Retirement Fund*, 831 F.2d 407, 409 (2d Cir.

19

1987); *Blum*, 465 U.S. at 895-96 (rejecting the Solicitor General's suggestion that fees awarded to non-profit legal aid societies be based on a "cost-related standard"). Rather, overhead merely helps account for why some attorneys charge more for their services. Indeed, it may be that in certain niche practice areas, attorneys of the highest "skill, expertise and reputation" have decided to maintain a solo practice instead of affiliating themselves with a firm. The reasons for doing so may be numerous, including the inherent problems of higher overhead, fee-sharing, and imputed conflicts of interest. The focus of the inquiry into the reasonable hourly rate must instead be determined by reference to "prevailing [rates] in the community for similar services by lawyers of reasonably comparable skill, expertise, and reputation." *Blum*, 465 U.S. at 295 n.11; *Chambless*, 885 F.2d at 1058-59. Working as a solo practitioner may be relevant to defining the market, *See Chambless*, 885 F.2d at 1059 ("smaller firms may be subject to their own prevailing market rate."), but it would be error to use an attorney's status as a solo practitioner as an automatic deduction or shortcut for determining the reasonable hourly rate. *McDonald v. Pension Plan of the NYSA-ILA Pension Trust Fund*, 450 F.3d 91, 98 n.6 (2d Cir. 2006) (emphasis added).

While the Court has discretion to determine the proper fee, "the latitude of its discretion is narrowed by a presumption that successful [litigants] should recover reasonable attorney's fees unless special circumstances render such an award unjust. . . . Furthermore, where, as here, the party achieves success on the merits,

an award of all reasonable hours at a reasonable hourly rate, *i.e.*, the lodestar

figure, is presumptively appropriate." *DiFilippo*, 759 F.2d at 234 (discussing civil

rights litigants). "[A] party advocating the reduction of the lodestar amount bears

the burden of establishing that a reduction is justified." *United States Football*

*League v. National Football League*, 887 F.2d 408, 413 (2d Cir. 1989) (awarding

$5,500,000 in fees on $3 recovery), cited in *Grant v. Martinez*, 973 F.2d 96, 101 (2d

Cir. 1992); *see* Laura B. Bartell, *Taxation of Costs and Awards of Expenses in*

*Federal Court*, 101 F.R.D. 553, 560-62 (1984).

### B.  Plaintiff's attorneys' hourly rates are reasonable

In *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*,

the Second Circuit held that a reasonable hourly rate is the rate a "paying client

would be willing to pay," bearing in mind that a "reasonable, paying client wishes to

spend the minimum necessary to litigate the case effectively." *Arbor Hill*, 522 F.3d

at 190.  Determination of the reasonable hourly rate "contemplates a case-specific

inquiry into the prevailing market rates for counsel of similar experience and skill

to the fee applicants counsel [, which] may ... include judicial notice of the rates

awarded in prior cases and the court's own familiarity with the rates prevailing in

the district." *See Farbotko v. Clinton County of New York*, 433 F.3d 204, 209 (2d

Cir. 2005) (citations omitted). The hourly rates, however, "should be 'current rather

than historic.'" *Underdog Trucking, L.L.C. v. Verizon Serv. Corp.*, 276 F.R.D. 105,

108 (S.D.N.Y.2011) (quoting *Reiter v. MTA N.Y.C. Transit Auth.*, 457 F.3d 224, 232

(2d Cir. 2006), cert. denied, 549 U.S. 1211 (2007)) (inner citation and quotation marks omitted). The Second Circuit has stated that, in determining what rate a paying client would be willing to pay, the district court should assess case-specific considerations, including the factors enumerated in *Johnson. See Johnson*, 488 F.2d at 717–19. *See also Arbor Hill*, 522 F.3d at 186–90.

The requested rates of Class Counsel here – $550 an hour for Mr. Bromberg (a solo practitioner in New York City), $450 an hour for Mr. Hiller (the principal of a law firm headquartered in Buffalo), $400 an hour for Mr. Miller (a solo practitioner in Winston-Salem, NC), $400 an hour for Michael N. Litrownik (for the work performed while employed as an associate at Mr. Bromberg's office), and $300 an hour for Seth Andrews (an associate at a law firm headquartered in Buffalo) – represent the prevailing rates for attorneys prosecuting complex consumer fraud class actions in their respective markets. As set forth in the accompanying declarations, Mr. Bromberg has been awarded $550-$600 an hour – with multipliers up to 3.2 – for results similar to those achieved here. In a decision delivered from the bench in 2014, the Honorable Paul A. Engelmayer, of the Southern District of New York, noted how risky consumer-protection litigation can be and explained his decision to award Mr. Bromberg $550 with a 3.2 multiplier in part, as follows:

> Second, from my colloquy with Mr. Bromberg, it became clear that this case can be seen in a broader perspective. Mr. Bromberg and Mr. Schnall are in the practice of doing consumer rights litigations. Some of those cases bear fruit. Some of them do not. It is appropriate, given the public service that is inherent in such litigation, to take

22

> into account the swings and misses as well as the base
> hits here. And, therefore, if one extrapolates the prism
> and broadens it to include lawsuits brought that did not
> bear fruit, the hourly rate that is imputed in the
> successful cases in some sense overstates the real hourly
> rate here. Putting all of that together, I regard the time
> and labor extended by counsel here as a factor that to
> some degree favors the settlement here.

*See Strubel v. Talbots Classics National Bank*, SDNY Case No. 13-CV-1106-PAE,

Transcript of Final Approval Hearing, Document No. 42 at 32-33. Judge

Engelmayer well understood the risks, because he had recently dismissed a Truth

in Lending Act case filed by Mr. Bromberg.

More recently, in the Eastern District of Virginia, the Court awarded Mr.

Bromberg $550 an hour with a 1.5 multiplier for his work on an FDCPA class action

that, like this one, required extensive discovery and motion practice. *See Biber v.*

*Pioneer Credit Recovery, Inc.*, 2018 WL 1633603 (E.D.Vir. Jan. 31, 2018). And most

recently, in the Eastern District of Texas, the Court awarded Mr. Bromberg $550 an

hour for his work on an FDCPA class action. *See Heironimus v. Cavalry Portfolio*

*Services, LLC*, S.D. Texas, Case No. 17-CV-121.

Comparable awards also support Mr. Bromberg's rates. In 2013, in a

contested fee petition in the Southern District of New York, Magistrate Judge

Yanthis awarded a rate of $550 an hour for an attorney with credentials similar to

those of Mr. Bromberg, and a rate of $300 an hour for a former associate of Mr.

Bromberg's. Specifically, in a 2013 Report and Recommendation in *De La Paz v.*

*Rubin & Rothman, LLC, De La Paz v. Rubin & Rothman, LLC*, No. 11-CV- 9625,

2013 WL 6184425 (S.D.N.Y. Nov. 25, 2013), Magistrate Judge Yanthis awarded $550 an hour to James Fishman (a seasoned attorney with whom Mr. Bromberg has worked and has frequently lectured at the City Bar and at national consumer-law conferences), and $300 an hour for Peter Lane (an attorney who began his legal career as an associate working for Mr. Bromberg). The Report and Recommendation of Judge Yanthis was adopted by Judge Ramos in an Opinion and Order. *See Id.* at *1. Similarly, in *White v. First American Registry*, *White v. First American Registry*, No. 04-CV-1611, 2007 WL 703926 (S.D.N.Y. Mar. 7, 2007), in 2007 Judge Kaplan awarded Mr. Fishman a rate of $550 an hour as part of a class-action settlement in a case brought under the Fair Credit Reporting Act, the New York Fair Credit Reporting Act, and General Business Law § 349. Thus, the contested settlement award in *De La Paz* and the uncontested settlement award in *White* represent excellent measures of the appropriate billing rates for class action cases like this one, involving complicated consumer-credit issues.

It is true that the Second Circuit has held that when determining the prevailing market rate, district courts "should generally use the hourly rates employed in the district in which the reviewing court sits." *Arbor Hill*, 522 F.3d at 192 (quoting *In re "Agent Orange" Prods. Liab. Litig.*, 818 F.2d 226, 232 (2d Cir.1987*)); see also Simmons v. New York City Transit Auth.*, 575 F.3d 170, 174 (2d Cir.2009). It is also true that the Circuit held there is a strong presumption that "a reasonable, paying client would in most cases hire counsel from within his district"

and that this presumption can be rebutted "only in the unusual case—if the party wishing the district court to use a higher rate demonstrates that his or her retention of an out-of-district attorney was reasonable under the circumstances as they would be reckoned by a client paying the attorney's bill." *Arbor Hill*, 522 F.3d at 191.

The Second Circuit has held that in order to overcome this "forum rule," the fee applicant "must persuasively establish that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result." *Simmons*, 575 F.3d at 175. "Among the ways an applicant may make such a showing is by establishing that local counsel possessing requisite experience were unwilling or unable to take the case ... or by establishing, in a case requiring special expertise, that no in-district counsel possessed such expertise." *Id.* at 176 (internal citation omitted).

Here, Plaintiff has made this showing. That is, with this memorandum, Plaintiff is filing two declarations from two highly respected consumer-protection attorneys, all of whom practice FDCPA law in the Southern and Eastern Districts. As all three attorneys attest, neither they nor any other attorney regularly prosecutes, much less certifies, consumer class actions in the Western District of New York. The sole exception is the Bromberg Law Office, P.C. Further demonstrating that there is no in-district consumer class-action bar is the fact that Defendants found it necessary to hire attorneys from Chicago and Manhattan once

it became apparent that the case was not going to settle on an individual basis. Mr. Bromberg regularly flew to Buffalo for court appearances, discovery, and mediation on the same plane as Defendants' Manhattan counsel; moreover, Defendants' Chicago counsel flew to Buffalo for mediation and to South Carolina to defend a deposition. These facts further illustrate the shortage of attorneys willing and able to take on these sorts of cases in Western New York. In short, this case presents the kind of exceptional circumstances that warrant applying out-of-district rates.

### C. An upward adjustment should be made

The burden of proof is on the opponent to present specific evidence that a lower amount is appropriate. *See, e.g., United States Football League*, 887 F.2d at 413; *Gates v. Deukmejian*, 987 F.2d 1392, 1397-98 (9th Cir. 1992) (fee opponent must submit evidence); *Brinker v. Giuffrida*, 798 F.2d 661, 668 (3d Cir. 1986) ("[T]here is ordinarily no reason for a court to disregard uncontested affidavits of a fee applicant"). Here, Plaintiffs' lodestar totals $301,760 and Plaintiff's costs total $14,955.17. This case settled due to Plaintiffs' counsel's knowledge and expertise in the field of consumer-protection law. With the exception of the Bromberg Law Office, P.C., no law firms are regularly prosecuting FDCPA cases to class certification in the federal or state courts in New York. In other words, it is rare indeed for FDCPA cases to proceed to class certification – whether on merits certification or as part of certification on settlement – in New York. Large firms will not take class cases under the FDCPA because of the cap on statutory damages, and

26

small firms rarely prosecute such cases effectively. Accordingly, Plaintiff requests

an extremely modest multiplier of approximately 1.11 for achieving extraordinary

results. *Vizcaino v. Microsoft*, 290 F.3d 1043 (9th Cir. 2002) (surveying many

decisions awarding multipliers and concluding that multipliers between 1 and 4 are

the norm in common fund cases); *In re Cendent Corp. PRIDES Litig.*, 243 F.3d 722,

742 (3d Cir. 2001) ("multiples ranging from one to four are frequently awarded in

common fund cases when the lodestar method is applied."); *New England*

*Carpenters Health Benefits Fund v. First Databank, Inc.*, No. 05-11148, 2009 WL

2408560, at *2 (D. Mass. Aug. 3, 2009) (approving multiplier of about 8.3 times

lodestar, where attorney fees represented 20% of the common fund); *In re Beverly*

*Hills Fire Litig.*, 639 F.Supp. 915 (E.D.Ky. 1986) (five); *In re Cenco Inc. Sec. Litig.*,

519 F.Supp. 322 (N.D.Ill. 1981) (multiplier of four to lead firm). Moreover, under the

adjustment factors identified in *Johnson*, the fees and costs agreed upon by the

parties are fair and reasonable. *Johnson*, 488 F.2d at 717-719.

It is common for judges within the Western District of New York to apply

such multipliers. *See, e.g., Cunningham v. Suds Pizza, Inc.*, 290 F. Supp. 3d 214,

232-33 (W.D.N.Y. 2017) (Feldman, M.J.) (applying 2.84 multiplier); *In re Eastman*

*Kodak ERISA Litig.*, 213 F. Supp. 3d 503, 509 (W.D.N.Y. 2016) (Larimer,

J.) (approving lodestar multiplier of 3.25); *Acevedo v. Workfit Medical LLC*, 187 F.

Supp. 3d 370 (W.D.N.Y. 2016) (Wolford, J.) (endorsing lodestar multiplier of

1.3); *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 185 (W.D.N.Y. Oct. 11,

2011) (Larimer, J.) (lodestar multiplier of 5.3 in FSLA class action); *Odom v. Hazen Transport, Inc.*, 275 F.R.D. 400, 413 (W.D.N.Y: 2011) (Payson, J.) (lodestar multiplier of 1.04).

### 1. The time and labor required.

Even with experienced class counsel on both sides, this case took years to settle. Plaintiffs submit that the time expended prosecuting this action would have been considerably greater had different counsel represented the Class. That is, Class Counsel's experience in consumer-protection litigation undoubtedly resulted in obtaining the discovery necessary to show that Defendants had miscalculated interest rates and obtaining an admission from LVNV that its net worth is greater than $50 million — both of which were key pressure points that induced Defendants to settle. *See Withers v. Eveland*, 997 F. Supp. 738, 740 (E.D.Va. 1998) (finding that "there are very few attorneys who specialize in litigating Consumer Credit Protection Act cases"). Even a cursory review of the hundreds of cases filed under the Consumer Credit Protection Act – *i.e.*, under TILA, the FDCPA, the FCRA, ECOA, etc. – every year in the U.S. District Courts in New York will show that in many of the instances where class certification was sought and achieved, Plaintiff's counsel was retained as lead counsel. This is the very definition of a rare and extraordinary circumstance for which the Courts contemplate modest multipliers.

Plaintiff's attorneys have small firms – for the Bromberg Law Office, one attorney (plus a second attorney during much of the litigation);for the Law Office of

Kenneth Hiller, PLLC, two attorneys who handle FDCPA cases; and for the Salem

Community Law Office, one attorney – and, as such, they do the bulk of the work on

their own. As one district court has noted:

> . . . attorneys, like plaintiff's counsel, operating either as
> solo practitioners or in small firms, often lack the
> resources to retain a large staff of junior lawyers who
> could handle (certain more clerically related) tasks more
> economically. Denying plaintiffs compensation for these
> tasks would unfairly punish plaintiffs and their counsel
> for not staffing this case as if they had the manpower of a
> major law firm.

*Bailey*, 839 F. Supp. at 891; *see also*, *Withers v. Eveland*, 997 F. Supp. at

740, and *Morgan v. Credit Adjustment Board*, 1998 U.S. Dist. Lexis 8135 at

5. Therefore, the time spent by Plaintiff's counsel to complete this litigation,

as set forth in the attachments hereto, warrants upward adjustment of the

lodestar. Furthermore, when the settlement checks are sent out, Class

Counsel anticipates, based on experience, that Mr. Bromberg will receive

numerous inquiries from class members.

### 2. The novelty and difficulty of the questions.

Because the questions presented by this case were novel, only seasoned

FDCPA litigators would have noticed them. Plaintiffs' attorneys know of no one who

has litigated many of the various FDCPA issues here. In fact, it was only years of

motion practice, paper discovery, and depositions that the parties were able to work

out a settlement on a class-wide basis. Furthermore, it was only when Class

Counsel learned that Defendants had substantially overstated the number of class

members that Mr. Bromberg was able to put forward a proposal that ultimately led to class settlement. And negotiating settlement of the various class issues requires a degree of specialized legal acumen regarding the FDCPA. Both Mr. Bromberg and Mr. Miller have had the unfortunate duty of occasionally having to step forward to try to stop FDCPA and other class settlements that would have sold consumers short, so they are keenly aware of the issues that had to be given close review in the settlement agreement. Thus, the novelty and difficulty of litigating any class action and especially one in such a specialized field warrants upward adjustment of the lodestar.

### 3. The skill requisite to perform the legal services properly.

Successful litigation of FDCPA class actions requires skill and familiarity with the issues involved. Plaintiff's counsel knows of very few attorneys who purport to be able to litigate plaintiffs' credit-consumer-protection cases. Most attorneys do not recognize the legal issues involved in such cases, and requests for representation are generally turned away by members of the Bar. In the Western District of New York, in particular, few if any class actions are filed under the FDPCA and even fewer are settled on a class-wide basis. Because of the skill of Plaintiffs' counsel and the rarity of successfully prosecuting FDPCA class actions in this district, Plaintiffs request an upward adjustment of the lodestar.

### 4. The preclusion of other employment.

The time spent on this case was not, and could not be, spent at the same time

30

on other cases. There are substantial opportunity costs in preparing the necessary documentation and briefing to represent plaintiffs in a contingency or fee-shifting case in federal court. The substantial amount of time expended on Plaintiff's behalf was time which would have been spent on other matters, had this case not been filed or litigated to this extent.

Therefore, it is appropriate to consider that whenever an attorney takes a case, he does so to the exclusion of accepting other work. Plaintiff's counsel spent seven years reviewing this case and litigating it to its conclusion, to the exclusion of helping other consumers. Thus, some consumers did not receive counsel's help so that Mr. Godson and the Class could. Because the time spent on this case would have been expended on other matters, this factor provides a basis for an upward adjustment of the lodestar.

### 5. The customary fee for like work in the community.

Plaintiffs' fee request is well within the range of similar work and is an amount recognized by other courts. The fee is thus reasonable and represents the going rate for like work in this area. But the involvement of Plaintiff's counsel in this case undoubtedly is the primary factor that led to settlement on a class basis. Moreover, because there is simply no relevant community of consumer class-action litigators in this district, the relevant question becomes one of the rates that Mr. Bromberg and Mr. Miller could command in their home districts. As set forth in the accompanying declarations, Mr. Bromberg is being awarded $550-$600 an hour for

his work, and a rate of $400 an hour for Mr. Miller's work is eminently reasonable. Given that Mr. Hiller has been admitted for more years than Mr. Bromberg and that Mr. Andrews has been admitted for longer than Mr. Miller, their rates should be the same for having worked on this complicated case with Mr. Bromberg and Mr. Miller. Therefore, Plaintiff requests an upward adjustment of the lodestar. This *Johnson* factor is addressed in greater detail below.

### 6. Whether the fee is fixed or contingent.

An award of attorney fees in a contingency fee matter should compensate counsel for the risk of receiving no compensation. In consumer-protection cases, the fee is very often contingent – not on the amount of damages, but on an award by the court or agreement by the opponent. In a private attorney general case, Congress encourages counsel to sue, recognizing that counsel cannot charge the client an hourly fee, because the fee may be out of proportion to the recovery. If contingent, the fee award should compensate counsel for the risk of receiving no compensation. "Lawyers operating in the marketplace can be expected to charge a higher hourly rate when their compensation is contingent on success than when they will be promptly paid, win or lose." *Blum*, 465 U.S. at 903. For example, Plaintiffs' attorney was also involved in the FDCPA case entitled *Lemire v. Wolpoff & Abramson, P.C.*, D. Conn., Docket No. 08-cv-249(CSH). There the plaintiffs settled the case after prevailing on a disputed motion to certify the class. The settlement provided for a negotiated attorney fee. Notwithstanding the successful work performed in that

case, the defendant dissolved, making collection of the settlement amount impracticable, and necessitating decertification.

Plaintiff's counsel was willing to provide services to Mr. Godson whether he won or lost his case and whether or not counsel would receive compensation for that work. This factor justifies an upward adjustment of the lodestar.

### 7. Time limitations imposed by the client or the circumstances.

The time limits in this case were only those imposed by the applicable statutes of limitations, the Rules, and those set by the Court. Therefore, this factor is of no consequence.

### 8. The amount involved and the results obtained.

The results obtained for the Plaintiff were significant, and they reflect counsel's substantial efforts in preparing and litigating this matter. Plaintiff has obtained a monetary recovery that represents a substantial portion of the maximum recovery. By any calculation, this is an extraordinary result, warranting an upward adjustment of the lodestar.

### 9. The experience, reputation and ability of the attorney.

Plaintiff's attorney, Brian L. Bromberg, has been practicing since 1992, is admitted in New York, New Jersey, and California, and has established a reputation as a consumer-protection attorney. *See* accompanying declaration of Brian L. Bromberg. Although his former associate, Michael N. Litrownik, and his current associate, Jonathan R. Miller, have been admitted for fewer years, they are

admitted to state bars and have extensive experience in the state and federal courts. In fact, before he left Mr. Bromberg's firm, Mr. Litrownik tried two cases with Mr. Bromberg – one an FLSA collective arbitration and the other a § 1983 trial before a jury in the Eastern District of New York. As for Mr. Miller, he attended Harvard Law School, clerked for a judge of the Supreme Court of Missouri, and is admitted in New York, Missouri, and North Carolina. Plaintiff's Buffalo attorneys, Kenneth Hiller and Seth Andrews, have been practicing since 1984 and 2005, respectively. They are the leading consumer-protection lawyers in this District. *See* accompanying declarations of Kenneth Hiller and Seth Andrews. These factors warrant an upward adjustment of the lodestar.

### 10. The undesirability of the case.

There are few attorneys who have the knowledge, ability and willingness to represent consumers in this area of law. Most attorneys are unwilling to take the risk of large investments of time for what appear at first blush to be minor, small dollar cases. No other attorneys in this Circuit regularly prosecute Consumer Credit Protection Act cases to conclusion as class actions. Searches on Westlaw and PACER will reveal that many of the successful certifications of a class under the FDCPA in the Southern and Eastern Districts of New York over the past 15 years have involved at least one of Mr. Bromberg as class counsel.) Practically no FDCPA class actions are certified in the Western District of New York and the only one Class Counsel knows of, *Easterling v. Collecto*, was filed and prosecuted – at both

the district-court and circuit levels – by Mr. Bromberg, Mr. Hiller, and Mr. Andrews. Many other attorneys will file such cases as class actions, but few push them to certification. (Plaintiff's attorneys are also willing to push cases beyond the district-court level, frequently taking cases up on appeal.) Accordingly, this factor, too, warrants an upward modification of the lodestar.

### 11. The nature and length of the professional relationship with the client.

Mr. Godson retained his attorneys specifically to pursue the specialized consumer-protection laws at issue. Their employment was sought because of their legal abilities and reputations in this area of the law. Such representation is limited to consumer-protection claims, which are episodic rather than ongoing. Unlike their big-firm brethren, consumer attorneys cannot rely on hefty retainers from paying institutional clients or insurance companies over many years. Therefore, this *Johnson* factor warrants an upward modification.

### 12. Awards in similar cases.

There are no reported cases in New York discussing attorney fee awards in successful FDCPA class actions that took seven years to litigate. Courts recognize that fee awards are to mimic the marketplace. Thus, "[p]aying counsel in FDCPA cases at rates lower than those they can obtain in the marketplace is inconsistent with the congressional desire to enforce the FDCPA through private actions, and therefore misapplies the law." *Tolentino*, 46 F.3d at 653; *Zagorski*, 128 F.3d 1164.

Because this case is unusual, having taken seven years to litigate – and *prevail* – an upward modification of the lodestar is warranted.

### D. Award to representative Plaintiffs

Plaintiff requested, and Defendants have agreed to, a modest $10,000 award to Mr. Godson and the vacatur of the ancient judgment against him in Florida. Plaintiff took time to meet with class counsel, assisted with the case, and kept apprised of case status and developments. More importantly, he appeared for deposition and for lengthy in-person settlement conferences before Mr. Russ and he was instrumental in pushing making sure that his attorneys worked for the good of the Class. Such awards are both reasonable and of the type commonly approved. *See, e.g, In re: Marine Midland Motor Vehicle Leasing Litigation*, 155 F.R.D. 416 (W.D.N.Y. 1994).

### Conclusion

The Parties have reached a Settlement in this case that provides a genuine benefit to the Class Members. After seven years of litigation that required the active and regular involvement of Mr. Bromberg, Mr. Miller (and his predecessor at the Bromberg Law Office, P.C.), Mr. Hiller, and Mr. Andrews, the Parties achieved an excellent settlement. The Settlement is an excellent result considering the size of the class, the cap on total possible recovery, and the fact that one of the defendants is now out of business. Each Class Member will receive a substantial recovery of $688. In addition, the terms of the Settlement as well as the circumstances

surrounding negotiations and its elimination of further costs caused by litigating this case through trial and appeal satisfy the Second Circuit's strictures for final approval. Accordingly, Plaintiff asks the Court for an Order approving the Settlement and Class Counsel's request for attorney fees and costs.

Dated: September 21, 2018

> PLAINTIFF, CHRISTOPHER GODSON,
> Individually, And On Behalf Of the Class,
>
> By:  /s/ Brian L. Bromberg
>      Brian L. Bromberg