UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



CHRISTOPHER GODSON,
on behalf of himself and others similarly situated,

                Plaintiff,

        v.

ELTMAN, ELTMAN, & COOPER, P.C.,
and LVNV FUNDING, LLC,

                Defendants.

**DECISION AND ORDER**

1:11-CV-764 EAW

## **BACKGROUND**

Plaintiff Christopher Godson ("Plaintiff") commenced this action, on behalf of himself and others similarly situated, on September 9, 2011, alleging that Eltman, Eltman, & Cooper, P.C. ("Eltman") and LVNV Funding, LLC ("LVNV") (collectively, "Defendants") sought to collect a debt from Plaintiff and others in violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"). (Dkt. 1). On March 27, 2012, Plaintiff moved to certify the putative class and to appoint class counsel (Dkt. 23), and on October 18, 2013, LVNV moved for summary judgment (Dkt. 61). However, because further discovery was deemed necessary, the Court never reached the merits of either motion. (*See* Dkt. 44; Dkt. 71). This action then proceeded through several years of discovery and related motion practice.

On August 14, 2017, while discovery was still pending, this Court referred this action to an additional mediation session during the Court's concentrated "Settlement Week." (Dkt. 212). The mediation session was held on November 7, 2017, at which time

Plaintiff's counsel and Defendants' counsel negotiated a possible resolution of the matter with the assistance of an experienced federal mediator. (Dkt. 219). As a result, the parties were able to reach a settlement in principal. (Dkt. 220).

On April 2, 2018, the parties filed a consent motion, requesting the Court certify the class, appoint class counsel, and preliminarily approve the class settlement. (Dkt. 224). The Court held a Preliminary Fairness Hearing on May 4, 2018, where the Court considered whether the proposed settlement would be fair, adequate, and reasonable. (Dkt. 231). The Court scheduled a Final Fairness Hearing for September 25, 2018 (*id.*), and entered an order preliminarily approving the class action settlement, provisionally granting the motion to certify the class for settlement purposes, and appointing class counsel. (Dkt. 232). The provisionally certified class (the "Settlement Class") is defined as follows:

> All consumers who, according to Defendant's records, had a New York address and: (a) within one year prior to the filing of this action; (b) were sent collection letters bearing Eltman's letterhead in a form materially identical or substantially similar to the letter sent to the Plaintiff and attached to the Complaint as Exhibit A; and (c) which were not returned by the postal service as undelivered.

(*Id.* at 2).

On September 25, 2018, the Court held a Final Fairness Hearing. (Dkt. 237). After considering additional argument from both sides, and inquiring further into the fairness, adequacy, and reasonableness of the proposed class action settlement, the Court informed the parties that the proposed settlement would be approved. The Court also indicated that a decision would be issued in due course. This Decision and Order is intended to memorialize the Court's approval of the class action settlement in written form.

## DISCUSSION

### I.  Final Certification of the Settlement Class

"Before granting final approval of a class action settlement, courts must consider whether the proposed settlement class and subclasses satisfy the requirements enumerated in Fed.R.Civ.P. 23." *Hall v. ProSource Techs., LLC*, No. 14-CV-2502 (SIL), 2016 WL 1555128, at *4 (E.D.N.Y. Apr. 11, 2016); *see Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 CIV. 3452 (RLE), 2008 WL 782596, at *1 (S.D.N.Y. Mar. 24, 2008) ("Before reaching the merits of the proposed settlement, the Court must ensure that the settlement class is certifiable."); *see also Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006) (stating that "[b]efore certification is proper for any purpose—settlement, litigation, or otherwise—a court must ensure that the requirements of Rule 23(a) and (b) have been met," and that "if the requirements of Rule 23(a) and (b) are met, certification may be granted, conditionally or unconditionally").

### A.  Federal Rule of Civil Procedure 23(a)

Pursuant to Rule 23(a) of the Federal Rules of Civil Procedure, it is appropriate to certify a class where the following four conditions are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  In its Preliminary Approval Order, the Court set forth the applicable standards for class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure, and provisionally certified the Settlement Class for settlement purposes only.  (Dkt. 232 at

2-3). For the following reasons, the Court concludes that the Settlement Class continues to satisfy these four prerequisites to class certification.

### 1.    Implied Requirement of Ascertainability

As an initial matter, the Court finds that the Settlement Class is sufficiently ascertainable for certification. "Ascertainability is not expressly required under the terms of Rule 23, but is an implied element of class certification." *Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 176 (S.D.N.Y. 2014); *see In re Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Litig.*, 209 F.R.D. 323, 336 (S.D.N.Y. 2002) ("[W]hile Rule 23(a) does not expressly require that a class be definite in order to be certified [,] a requirement that there be an identifiable class has been implied by the courts. This implied requirement is often referred to as 'ascertainability.'" (quotation marks and citations omitted)). "[T]he requirement that there be a class will not be deemed satisfied unless the description of it is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *Mike v. Safeco Ins. Co. of Am.*, 223 F.R.D. 50, 52-53 (D. Conn. 2004) (internal quotation marks omitted) (alteration in original). "An identifiable class exists if its members can be ascertained by reference to objective criteria." *MTBE Prod. Liab. Litig.*, 209 F.R.D. at 337 (quotation marks and citation omitted). "Membership should not be based on subjective determinations, such as the subjective state of mind of a prospective class member, but rather on objective criteria that are administratively feasible for the Court to rely on to determine whether a particular individual is a member of the class." *Fears v. Wilhelmina Model Agency, Inc.*, No. 02 Civ.4911 HB, 2003 WL 21659373, at *2 (S.D.N.Y. July 15, 2003). "The court must be

able to make this determination without having to answer numerous fact-intensive questions." *Daniels v. City of New York*, 198 F.R.D. 409, 414 (S.D.N.Y. 2001) (quotation marks and citation omitted).

Here, Defendants likely maintain records identifying those individuals from whom they sought to collect on any purported debt and, likewise, to whom they sent the allegedly unlawful form collection letter. Since Plaintiff may easily identify the members of the Settlement Class by reviewing Defendants' own records pertaining to the timeframe circumscribed by the class definition, the implied requirement of ascertainability is satisfied. *See Lizondro-Garcia*, 300 F.R.D. at 176 ("In this case, defendants' payroll records will likely contain the names, titles, pay rates and dates of employment of the [New York Labor Law] class members. Because plaintiffs can easily identify the . . . class by reviewing defendants' payroll records, I conclude that the implied ascertainability requirement of Rule 23 is met.").

### 2. Numerosity

"For a court to certify a class, Rule 23(a) requires a finding that the numerosity of injured persons makes joinder of all class members 'impracticable.'" *Pecere v. Empire Blue Cross & Blue Shield*, 194 F.R.D. 66, 70 (E.D.N.Y. 2000) (citing *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993)). "Impracticability does not mean impossibility, but rather difficulty or inconvenience." *Primavera Familienstiftung v. Askin*, 178 F.R.D. 405, 409 (S.D.N.Y. 1998). "There is no magic minimum number that will breathe life into a class, but generally, courts will find a class sufficiently numerous when it comprises forty

or more members." *Assif v. Titleserv, Inc.*, 288 F.R.D. 18, 23 (E.D.N.Y. 2012) (quoting *Russo v. CVS Pharmacy, Inc.*, 201 F.R.D. 291, 294 (D. Conn. 2001)).

In the instant matter, the numerosity requirement is satisfied because the Settlement Class contains about 270 individuals. *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (stating that "numerosity is presumed at a level of 40 members"); *see Gilliam*, 2008 WL 782596, at *1 ("The putative class is sufficiently large because it consists of approximately 245 members, and the value of the individual claims is sufficiently small." (citation omitted)). Accordingly, the Settlement class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).

### 3. Commonality

Rule 23(a) "does not require all questions of law or fact to be common. Indeed, even a single common question will suffice." *Sykes v. Mel Harris & Assocs., LLC*, 285 F.R.D. 279, 286 (S.D.N.Y. 2012) (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011)), *aff'd sub nom. Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70 (2d Cir. 2015). Furthermore, "factual differences in the claims of the class do not preclude a finding of commonality." *Newman v. RCN Telecom Servs., Inc.*, 238 F.R.D. 57, 73 (S.D.N.Y. 2006) (quotation marks omitted).

The commonality requirement is satisfied because the claims of each member of the Settlement Class arise out of their receipt of a form debt collection letter that allegedly violated the FDCPA. *See Sykes*, 285 F.R.D. at 287 ("Commonality may be found were [sic] the plaintiffs' alleged injuries 'derive from a unitary course of conduct by a single system.'" (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997))). Whether

the content and receipt of these debt collection letters violated the FDCPA are common questions critical to each class member's claims, and their examination through the class action mechanism will "generate common answers apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 350 (citation omitted).

### 4. Typicality

"The commonality and typicality requirements of Rule 23(a) tend to merge such that similar considerations inform the analysis for both prerequisites." *Sykes*, 285 F.R.D. at 287. "Typicality under Rule 23 requires that a class representative have the incentive to prove all the elements of the cause of action which would be presented by the individual members of the class were they initiating individualized actions." *In re Oxford Health Plans, Inc.*, 191 F.R.D. 369, 375 (S.D.N.Y. 2000) (quotation marks omitted). "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Robidoux*, 987 F.2d at 936-37. In other words, the typicality requirement "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Robinson v. Metro-N. Commuter R.R. Co.*, 267 F.3d 147, 155 (2d Cir. 2001) (quoting *Marisol A.*, 126 F.3d at 376), *abrogated on other grounds by Dukes*, 564 U.S. 338.

Plaintiff alleges that the debt collection letters failed to identify the full amount of interest owed on the purported debt, falsely and deceptively represented the character, amount, and legal status of that debt, and contained unfair and unconscionable threats to

impose an undisclosed additional amount of interest if the recipient should fail to pay the debt demanded. (Dkt. 1 at 7-10). While the debt payments demanded in each collection letter may differ amongst the class members, any such distinction represents a "minor variation[] in the fact patterns underlying individual claims" and does not undermine a positive finding of typicality in this case. *See Robidoux*, 987 F.2d at 937. The typicality requirement is satisfied because Plaintiff's claims and the claims of each member of the Settlement Class "arise from the same alleged course of conduct and are based on the same legal theories" under the FDCPA, *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 452 (S.D.N.Y. 2004), to wit, the receipt of the allegedly unlawful form debt collection letter.

### 5. Adequacy of Representation

"The Court must evaluate adequacy of representation by considering (i) whether the class representatives' claims conflict with those of the class and (ii) whether class counsel is qualified, experienced, and generally able to conduct the litigation." *Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. at 453. Here, there is no evidence of any conflict between Plaintiff and the other class members because they "[a]ll share the common goal of maximizing recovery." *Id.*; *see In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992) ("[T]he record unequivocally indicates that all members of subclass B (including appellants) share a common interest in showing that Drexel violated federal and state securities laws."). Furthermore, Class Counsel has significant experience litigating cases in the field of consumer protection law, and, collectively, they have participated in a number of consumer protection class actions. (*See* Dkt. 236-1; Dkt. 236-3; Dkt. 236-7).

Accordingly, because the second element of the adequacy analysis has also been met, the final Rule 23(a) prerequisite to class certification is satisfied.

## B.    Class Certification Pursuant to Federal Rule 23(b)(3)[1]

Rule 23(b)(3) of the Federal Rules of Civil Procedure provides that a class may be certified if the Rule 23(a) criteria are satisfied and if "the Court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods." This provision is intended to "'secure judgments binding all class members save those who affirmatively elect[ ] to be excluded,' where a class action will 'achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. at 454 (quoting *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 614-15 (1997)). "In carrying out its Rule 23(b)(3) analysis, the court recognizes that substantial authority supports certification of FDCPA class actions under subsection (b)(3)." *Bourlas v. Davis Law Assocs.*, 237 F.R.D. 345, 353 (E.D.N.Y. 2006) (collecting cases).

---

[1]    Although the preliminary approval order indicated that the Settlement Class could also be maintained pursuant to Rule 23(b)(2), the settlement agreement does not seek final injunctive relief or corresponding declaratory relief; rather, the Settlement Class members are entitled only to the recovery of statutory damages. Therefore, Rule 23(b)(3) is the more appropriate provision for determining whether the Settlement Class may be maintained for purposes of this final approval order, and thus, the Court need not determine whether the requirements of Rule 23(b)(2) are also satisfied.

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prod., Inc.*, 521 U.S. at 623. "Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002). "[I]t has been recognized . . . that 'common questions of law and fact surrounding the contents and mailing of [standardized form collection] letters predominate over individual issues.'" *Mailloux v. Arrow Fin. Servs., LLC*, 204 F.R.D. 38, 42 (E.D.N.Y. 2001) (quoting *Harrison v. Great Springwaters of Am., Inc.*, No. 96-CV-5110, 1997 WL 469996, at *1 (E.D.N.Y. June 18, 1997)); *see Bourlas*, 237 F.R.D. at 353 ("There is little doubt that resolution of the key factual and legal issue here—specifically, whether the defendants violated the FDCPA by sending collection letters 'en masse' without complying with FDCPA requirements—can be readily resolved through 'generalized proof.'").

The crux of the instant action directly relates to the issuance of form collection letters that allegedly violated the FDCPA. As such, this issue is "more substantial than the issues subject only to individualized proof." *Moore*, 306 F.3d at 1252; *see, e.g., Mailloux*, 204 F.R.D. at 42. Whether or not these form collection letters—allegedly sent to each member of the Settlement Class—violated the FDCPA is the "key factual and legal issue" in this matter and "can be readily resolved through 'generalized proof.'" *Bourlas*, 237 F.R.D. at 353. Therefore, the predominance requirement of Rule 23(b)(3) is satisfied.

In addressing Rule 23(b)(3)'s superiority requirement, "the court must balance 'the advantages of a class action against those of alternative available methods of adjudication.'" *Lizondro-Garcia*, 300 F.R.D. at 177 (quoting *Anwar v. Fairfield Greenwich Ltd.*, 289 F.R.D. 105, 114 (S.D.N.Y. 2013)). "[C]lass actions are found to be the superior method of litigation 'when the main objectives of Rule 23 are served,' including 'the efficient resolution of the claims or liabilities of many individuals in a single action, as well as the elimination of repetitious litigation and possibly inconsistent adjudications.'" *Bourlas*, 237 F.R.D. at 354 (quoting *D'Alauro v. GC Servs. Ltd. P'ship*, 168 F.R.D. 451, 458 (E.D.N.Y. 1996)). Specifically, Rule 23(b)(3) sets forth four considerations "pertinent to" a court's superiority determination, which include:

(A)  The class members' interest in individually controlling the prosecution or defense of separate actions;

(B)  The extent and nature of any litigation concerning the controversy already begun by or against class members;

(C)  The desirability or undesireability of concentrating the litigation of the claims in a particular forum; and

(D)  The likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

"It is appropriate for the court to consider the 'inability of the poor or uninformed to enforce their rights and the improbability that large numbers of class members would possess the initiative to litigate individually.'" *D'Alauro*, 168 F.R.D. at 458 (quoting *Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161, 1165 (7th Cir. 1974)). "Class actions are often the most suitable method for resolving suits to enforce compliance with

consumer protection laws because the awards in an individual case are usually too small to encourage the lone consumer to file suit." *Colbert v. Trans Union Corp.*, No. CIV. A. 93-6106, 1995 WL 20821, at *3 (E.D. Pa. Jan. 12, 1995).

Here, "aggregating all possible FDCPA claims based on the form collection letters will eliminate the potential for 'repetitious litigation' and 'inconsistent adjudications' if the claims were brought separately. . . ." *Bourlas*, 237 F.R.D. at 354 (quoting *D'Alauro*, 168 F.R.D. at 458); *see Winslow v. Forster & Garbus, LLP*, No. CV 15-2996 (AYS), 2017 WL 6375744, at *18 (E.D.N.Y. Dec. 13, 2017) ("[I]t is more efficient to decide a single set of facts and single theory for liability in one case, rather than having multiple litigants bring individual actions on the same—or substantially similar—causes of action."). In addition, "[c]lass litigation is a superior vehicle for the instant case given economies of scale. FDCPA cases are unlikely to be brought on an individual basis due to the statute's low cap on individual damages, especially when compared to potential litigation costs." *Vu v. Diversified Collection Servs., Inc.*, 293 F.R.D. 343, 356 (E.D.N.Y. 2013). Furthermore, "[g]iven the large number of class members and the relatively small value of their individual claims, . . . class members clearly have an interest in avoiding separate litigation of the claims and little to no interest in individually controlling their prosecution." *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 33 (E.D.N.Y. 2006). Lastly, the Court is not aware of any other lawsuit proceeding on behalf of the members of the Settlement Class, *see* Fed. R. Civ. P. 23(b)(3)(B), and because class certification is requested for purposes of settlement only, consideration of the "likely difficulties in managing a class action," *id.* 23(b)(3)(D), is unnecessary, *see Amchem Prod., Inc.*, 521

U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." (citation omitted)); *Reade-Alvarez*, 237 F.R.D. at 33 ("[T]he fourth factor is irrelevant here, because the plaintiffs seek certification solely for the purposes of settlement.").

Therefore, because the requirements of Rule 23(a) and (b) are satisfied, the Court certifies the Settlement Class for purposes of settlement and the issuance of its final approval order.

## II.    Adequacy of the Class Notice

"Pursuant to Fed.R.Civ.P. 23, courts must also ensure that members of a settlement class have received reasonably adequate notice of the case and proposed settlement thereof." *Hall*, 2016 WL 1555128, at *4. "The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 113 (2d Cir. 2005); *see Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179, 191 (S.D.N.Y. 2012) ("There are no rigid rules for determining whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements. . . ."), *aff'd sub nom. Charron v. Wiener*, 731 F.3d 241 (2d Cir. 2013). "Due process requires that the notice to class members 'fairly apprise the . . . members of the class of the terms of the proposed settlement and of the options that are open to them in connection with [the] proceedings.'" *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1995) (quoting *Weinberger v. Kendrick*, 698 F.2d 61, 70 (2d Cir. 1982)).

"Federal Rule of Civil Procedure 23(c) describes the notice to class members when a court certifies a class. In contrast, Rule 23(e) describes the notice to class members when a court is asked to approve a class-action settlement." *Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. at 448. "Where, as here, the parties seek simultaneously to certify a settlement class and to settle a class action, the elements of Rule 23(c) notice . . . are combined with the elements of Rule 23(e) notice. . . ." *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 185 (S.D.N.Y. 2012) (quoting *Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. at 448). "As Rule 23(e)'s notice requirements are less specific than that of Rule 23(c)'s, the Court will focus on Rule 23(c)'s requirements." *Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. at 448.

"Federal Rule of Civil Procedure 23(c)(2)(B) provides the notice that is required to be given to members of a class when it is certified pursuant to Federal Rule of Civil Procedure 23(b)(3), which is the case here." *IMAX Sec. Litig.*, 283 F.R.D. at 185. "Pursuant to Rule 23(c)(2)(B), when a class is certified under Rule 23(b)(3), the Court must direct to the class members 'the best notice practicable under the circumstances, including individual notice to all members, who can be identified through reasonable effort.'" *Passafiume v. NRA Grp., LLC*, 274 F.R.D. 424, 431 (E.D.N.Y. 2010) (quoting Fed. R. Civ. P. 23(c)(3)(B)); *see Ayzelman v. Statewide Credit Servs. Corp.*, 242 F.R.D. 23, 29 (E.D.N.Y. 2007) ("The Supreme Court has held that individual notice, as opposed to general published notice, is required by Rule 23(c)(2) for class members who are identifiable through reasonable effort." (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-74 (1974))).

On May 21, 2018, the Court issued its preliminary approval order, which approved the form, substance, and method of delivery of the proposed class notice. (Dkt. 232). The class notice described the nature of the action, identified the class, described the proposed settlement terms, and noted that any member of the class could exclude themselves from the settlement and the class. The notice further apprised the class members of the date, time, and location of the final fairness hearing, and indicated that the recipient of the notice had the right to object to the proposed settlement or any portion thereof. Lastly, the settlement agreement required the class notice to be delivered by first class mailing to each class member.

The Class Administrator averred that the class notice was mailed to all 270 class members by first class mail. (Dkt. 236-12 at ¶ 7). Thirty-nine of those notices were returned as undeliverable with no forwarding address, and one notice was returned with a new address and then resent using that information. (*Id.* at ¶¶ 9-10). Of those 39 notices, the Class Administrator was able to locate 20 new addresses using the "LexisNexis Accurint locate service," and new class notices were then sent to those addresses. (*Id.* at ¶ 11). Four of the 20 new class notices were again returned as undeliverable. (*Id.*). As a result, only 23 notices were returned as undeliverable without any forwarding address or further information from the United States Postal Service. (*Id.* at ¶ 12).

The foregoing demonstrates that adequate notice was provided to the members of the Settlement Class. In terms of substance, "[t]he [n]otice sufficiently explained the settlement and informed potential class members of their available options." *Hernandez v. Immortal Rise, Inc.*, 306 F.R.D. 91, 99 (E.D.N.Y. 2015); *see Hall*, 2016 WL 1555128, at

*5 (finding the notice sufficient where "[t]he Notice and Claim Form described essential and relevant information in plain terms, including, among other things, relevant background information, the terms of the Settlement Agreement, the allocation methods applicable to the respective subclasses, and the various rights of potential class members, such as the right to opt out of the Settlement Class or object to the instant Final Approval Motion"); *Torres v. Gristede's Operating Corp.*, No. 04-CV-3316 (PAC), 2010 WL 2572937, at *3 (S.D.N.Y. June 1, 2010) ("The Notice is appropriate because it describes the terms of the settlement, and provides specific information regarding the date, time, and place of the final approval hearing."). Furthermore, class counsel "took reasonably sufficient steps to ensure that potential class members" received the notice by utilizing software programs to verify the initial mailing addresses as well as to secure additional locational data after several class notices were returned as undeliverable. *See Hall*, 2016 WL 1555128, at *5 ("If the Notice and Claim Form was returned as undeliverable without a forwarding address, Class and Collective Counsel performed an advanced address 'skip trace' search, and, if necessary, contacted the Named Plaintiffs in an effort [to] locate the potential claimant's current mailing address."); *O'Connor v. AR Res., Inc.*, No. 3:08CV1703 (VLB), 2012 WL 12743, at *3 (D. Conn. Jan. 4, 2012) (finding that "the notice to the class was reasonable and sufficient to satisfy Rule 23's requirements" where class counsel made "further attempts to contact the class members through forwarding addresses and the use of Accurint, an on-line person tracking service").

Therefore, the "Court confirms its prior approval of the Notice. The Notice was fair and adequate in both form and content to apprise possible class members of the settlement

and to satisfy the requirements of the federal rules and of due process." *Hernandez*, 306 F.R.D. at 99; *see Clark v. Ecolab Inc.*, No. 04Civ.4488 (PAC), 2010 WL 1948198, at *7 (S.D.N.Y. May 11, 2010) (finding that the "Class Members were provided the best notice practicable under the circumstances" where the class notices "fairly and adequately advised Class Members of the terms of the settlement, as well as the right of Class Members to opt out of the class, to object to the settlement, and to appear at the fairness hearing").

III. **Final Approval of the Settlement**

"Federal Rule of Civil Procedure 23(e) requires court approval of any settlement that effects the dismissal of a class action. Before such a settlement may be approved, the district court must determine that a class action settlement is fair, adequate, and reasonable, and not a product of collusion." *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000). "Settlements are strongly favored as a matter of policy, because, '[b]y lessening docket congestion, settlements make it possible for the judicial system to operate more efficiently and more fairly while affording plaintiffs an opportunity to obtain relief at an earlier time.'" *Babcock v. C. Tech Collections, Inc.*, No. 1:14-CV-3124 (MDG), 2017 WL 1155767, at *4 (E.D.N.Y. Mar. 27, 2017) (quoting *Evans v. Jeff D.*, 475 U.S. 717, 761 n.15 (1986)); *see Flores v. Mamma Lombardi's of Holbrook, Inc.*, 104 F. Supp. 3d 290, 298 (E.D.N.Y. 2015) ("In exercising its discretion, a court should be mindful of the 'strong judicial policy in favor of settlements, particularly in the class action context.'" (quoting *Wal-Mart Stores, Inc.*, 396 F.3d at 116)). "A court determines a settlement's fairness by looking at both the settlement's terms and the negotiating process leading to settlement." *Wal-Mart Stores, Inc.*, 396 F.3d at 116. "In other words, the court should consider both the substantive and

the procedural fairness of the settlement." *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 176 (W.D.N.Y. 2011) (citing *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803-04 (2d Cir. 2009)). "Ultimately, the decision of whether to approve a class action settlement is a matter of discretion for the trial court." *Hall*, 2016 WL 1555128, at *4.

## A.     Procedural Fairness

In reviewing a proposed settlement for procedural fairness, a district court "must pay close attention to the negotiating process, to ensure that the settlement resulted from arm's-length negotiations and that plaintiffs' counsel . . . possessed the [necessary] experience and ability, and have engaged in the discovery, necessary to effective representation of the class's interests." *McReynolds*, 588 F.3d at 804 (quoting *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001)). "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores, Inc.*, 396 F.3d at 116 (quotation marks and citation omitted). "Recommendations of experienced counsel are entitled to great weight in evaluating a proposed settlement in a class action because such counsel are most closely acquainted with the facts of the underlying litigation." *Charron*, 874 F. Supp. 2d at 195.

The instant matter has been ongoing for over seven years. During this time, the parties engaged in several years of highly-contested discovery and motion practice. As a result, "[t]hrough discovery and motion practice, counsel were well-informed of the merits of the claims by the time the Settlement was reached." *In re AOL Time Warner ERISA Litig.*, No. 02 CIV. 8853 SWK, 2006 WL 2789862, at *5 (S.D.N.Y. Sept. 27, 2006).

Furthermore, both parties have also benefited from experienced counsel, who have demonstrated great skill and poise. *See In re Sinus Buster Prod. Consumer Litig.*, No. 12-CV-2429 (ADS)(AKT), 2014 WL 5819921, at \*8 (E.D.N.Y. Nov. 10, 2014) (considering, among other things, that counsel "have considerable experience in complex litigation and consumer class actions" in finding the proposed settlement procedurally fair); *In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 133 (S.D.N.Y. 2008) ("In sum, counsel with wide experience and demonstrated skill in the field of class action securities litigation represented both sides in reaching the Stipulation after protracted negotiations. There is nothing in the record of this litigation to rebut the presumption of procedural fairness in the negotiation process."). Finally, the settlement was negotiated at arm's-length between professionals in the field of FDCPA and class litigation and was facilitated by an experienced mediator. *See Athale v. Sinotech Energy Ltd.*, No. 11 CIV. 05831 (AJN), 2013 WL 11310686, at \*3 (S.D.N.Y. Sept. 4, 2013) ("If, as here, a mediator is involved in the settlement negotiations between the parties, such involvement weighs heavily in favor of a finding of procedural fairness." (citing *Wal-Mart Stores, Inc.*, 396 F.3d at 116)); *Aponte v. Comprehensive Health Mgmt., Inc.*, No. 10 Civ. 4825 (JLC), 2013 WL 1364147, at \*3 (S.D.N.Y. Apr. 2, 2013) ("Arm's-length negotiations involving counsel and a mediator raise a presumption that the settlement achieved meets the requirements of due process."); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 618 (S.D.N.Y. 2012) ("The involvement of Ruth D. Raisfeld, Esq., an experienced and well-known employment and class action mediator, is also a strong indicator of procedural fairness.").

Therefore, the proposed settlement is procedurally fair considering the years of extensive and meaningful discovery that took place between experienced and capable counsel, who reached a settlement through arm's-length negotiations facilitated by an experienced mediator. *See, e.g.*, *Hall*, 2016 WL 1555128, at *5 ("Because the settlement was reached as a result of arm's-length negotiations between experienced, capable counsel after the meaningful exchange of information and discovery, the Court concludes that the Settlement Agreement is procedurally fair, and is therefore entitled to a presumption of reasonableness."); *Athale*, 2013 WL 11310686, at *3 ("The presumption that the settlement is fair, reasonable, and adequate, applies to this case where the Settlement was reached after two years of litigation and extensive investigation, involved the use of an experienced mediator (Judge Weinstein) in negotiating settlement, and all parties were represented throughout by experienced counsel."); *In re Wachovia Equity Sec. Litig.*, No. 08 CIV. 6171 (RJS), 2012 WL 2774969, at *3 (S.D.N.Y. June 12, 2012) ("Here, there is sufficient procedural fairness. The parties reached the settlement after arms'-length negotiations by experienced and competent counsel, with the involvement of a mediator, retired Judge Daniel Weinstein."); *see also In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 746 (S.D.N.Y. 1985) (finding that the "process resulted in a very fair settlement" and stating that "[i]t is not for this Court to substitute its judgment as to a proper settlement for that of such competent counsel in view of the fairness of the settlement to the class members"), *aff'd*, 798 F.2d 35 (2d Cir. 1986). Accordingly, the proposed settlement is entitled to a presumption of reasonableness.

## B. Substantive Fairness

In reviewing a proposed settlement for substantive fairness, courts in this Circuit

apply the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d

Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d

43 (2d Cir. 2000). *See McReynolds*, 588 F.3d at 804 (stating that the *Grinnell* factors are

used to determine substantive fairness). Those nine factors include the following

considerations:

> (1) the complexity, expense and likely duration of the litigation; (2) the
> reaction of the class to the settlement; (3) the stage of the proceedings and
> the amount of discovery completed; (4) the risks of establishing liability; (5)
> the risks of establishing damages; (6) the risks of maintaining the class action
> through the trial; (7) the ability of the defendants to withstand a greater
> judgment; (8) the range of reasonableness of the settlement fund in light of
> the best possible recovery; (9) the range of reasonableness of the settlement
> fund to a possible recovery in light of all the attendant risks of litigation.

*Id.* (quoting *Grinnell Corp.*, 495 F.2d at 463). "In applying these factors, the Court may

neither substitute its judgment for that of the parties who negotiated the settlement nor

conduct a mini-trial of the merits of the action." *Babcock*, 2017 WL 1155767, at *6; *see*

*Davis*, 827 F. Supp. 2d at 176 ("In deciding whether a settlement should be approved, the

court must also keep in mind that its role is circumscribed."). "The court's task, then, is

simply to decide whether the settlement agreement *as written* is fair, reasonable, and

adequate, not whether the parties or the court could conceivably have come up with a

'better' agreement." *Davis*, 827 F. Supp. 2d at 177; *see Babcock*, 2017 WL 1155767, at

*6 ("[T]he Court must determine whether the settlement is within a range that reasonable

and experienced attorneys could accept considering all relevant risks, facts and circumstances.").

## 1.    Complexity, Expense, and Likely Duration of Litigation

"Settlement is favored if settlement results in 'substantial and tangible present recovery, without the attendant risk and delay of trial.'" *Sykes v. Harris*, No. 09 CIV. 8486 (DC), 2016 WL 3030156, at *12 (S.D.N.Y. May 24, 2016) (quoting *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 425 (S.D.N.Y. 2001)).  Significantly, the Court has certified the Settlement Class only for purposes of this settlement.  If the Court was to disapprove the settlement, Plaintiff would likely move for class certification and Defendants would likely oppose Plaintiff's motion.  Indeed, at the time Plaintiff filed his first motion to certify the class, Defendants filed papers in opposition to his motion.  (Dkt. 34); *see Gilliam*, 2008 WL 782596, at *4 ("Prolonging litigation would be costly and burdensome.  Plaintiffs would move for class certification, which Defendants might oppose, and the attendant motion practice and appeals would inevitably delay resolution."). It is equally likely that Defendants may seek summary judgment, as it appears that LVNV failed to pursue an amended motion for summary judgment only due to ongoing discovery concerns. (*See* Dkt. 217); *McLaughlin v. IDT Energy*, No. 14 CV 4107 (ENV) (RML), 2018 WL 3642627, at *10 (E.D.N.Y. July 30, 2018) (finding the first *Grinnell* factor as weighing in favor of settlement approval where "the parties would likely need to brief motions for class certification, summary judgment, and potentially proceed to trial").

"Even assuming that plaintiffs were successful in defeating any pretrial motions filed by defendants, and were able to establish defendants' liability at trial, there is always

the potential for an appeal, which would inevitably produce delay." *Ayzelman*, 242 F.R.D. at 27. Furthermore, this case is over seven years old, and thus, any added delay in reaching a resolution would only further undermine the value of any potential recovery. *See Aramburu v. Healthcare Fin. Servs., Inc.*, No. 02-CV-6535MDG, 2009 WL 1086938, at *3 (E.D.N.Y. Apr. 22, 2009) ("The litigation has already lasted seven years and even if there was a prompt trial on damages, there could be further delay should there be post-trial motions and an appeal. . . . [T]he settlement provides certain compensation to the class members now rather than awaiting an eventual resolution that would result in further expense without any definite benefit."); *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002) ("Delay, not just at the trial stage but through post-trial motions and the appellate process, would cause Class Members to wait years for any recovery, further reducing its value."); *see also Garland v. Cohen & Krassner*, No. 08-CV-4626 (KAM) (RLM), 2011 WL 6010211, at *7 (E.D.N.Y. Nov. 29, 2011) (noting that while "[t]he factual and legal issues in this case are not complex . . .[, g]iven the complexity of any class action lawsuit . . . it is reasonable to assume that absent the instant Settlement, continued litigation would have required extensive time and expense"). Accordingly, the first *Grinnell* factor weighs in favor of settlement approval.

## 2. The Reaction of the Class to Settlement

"Courts have found this factor to weigh in favor of approval where the majority of class members have not objected to or opted out of a settlement." *Sinus Buster Prod. Consumer Litig.*, 2014 WL 5819921, at *9; *see Wal-Mart Stores, Inc.*, 396 F.3d at 118 ("[T]he absence of substantial opposition is indicative of class approval. . . ."); *Meredith*

*Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 663 (S.D.N.Y. 2015) ("A positive reaction of the class to the proposed settlement favors its approval by the Court."). Indeed, "[i]t is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *Maley*, 186 F. Supp. 2d at 362.

Here, the parties successfully mailed the class notice to 247 of the approximately 270 total individuals within the Settlement Class. (Dkt. 236-12 at 2). No class member decided to opt out of the Settlement Class or to file any objections to the settlement agreement prior to or during the Final Fairness Hearing held on September 25, 2018. (*Id.*). Therefore, this factor weighs "heavily in favor of the substantive fairness of the settlement." *Sinus Buster Prod. Consumer Litig.*, 2014 WL 5819921, at *9; *see Gilliam*, 2008 WL 782596, at *4 (finding that "[t]he reaction of the class to the settlement was positive, which favors approval of the settlement," where none of the 245 individuals "opted out of or objected to the proposed settlement," and where "none of the class members attended the January 17, 2008 fairness hearing").

### 3. The Stage of the Proceedings and the Amount of Discovery Completed

"Under this factor the relevant inquiry . . . 'is whether the plaintiffs have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement.'" *Sinus Buster Prod. Consumer Litig.*, 2014 WL 5819921, at *9 (quoting *In re AOL Time Warner, Inc.*, No. 02 CIV. 5575 (SWK), 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006)). "To approve a proposed settlement, the Court need not find that the parties have engaged in extensive discovery. Instead, it is

enough for the parties to have engaged in sufficient investigation of the facts to enable the Court to 'intelligently make . . . an appraisal' of the Settlement." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000) (quoting *Plummer v. Chem. Bank*, 668 F.2d 654, 660 (2d Cir. 1982)) (citation omitted), *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001). "[T]he pretrial negotiations and discovery must be sufficiently adversarial that they are not 'designed to justify a settlement . . . [, but] an aggressive effort to ferret out facts helpful to prosecution of the suit.'" *Martens v. Smith Barney, Inc.*, 181 F.R.D. 243, 263 (S.D.N.Y. 1998) (quoting *Saylor v. Lindsley*, 456 F.2d 896, 899 (2d Cir. 1972)).

Here, the parties engaged in several years of discovery, which included motion practice, the exchange of numerous correspondence, and the occurrence of several conferences relating to the parties' respective positions. (Dkt. 236 at 17-18); *see McLaughlin*, 2018 WL 3642627, at *12 (stating that "there has been ample time for investigation of the strengths and weaknesses of plaintiffs' claims and the adequacy of settlement" where "the parties engaged in extensive discovery and motion practice" between 2014 and 2017); *Gilliam*, 2008 WL 782596, at *4 ("Plaintiffs have conducted adequate discovery over three years to permit them to enter responsibly into this settlement. They are well situated to assess its fairness and reasonableness."). An examination of the docket reveals the parties' discovery period as robust and punctuated by various disputes. Furthermore, discovery was scheduled to conclude near the time the parties reached a settlement. *See Reade-Alvarez v. Eltman, Eltman, & Cooper, P.C.*, No. CV-04-2195 CPS, 2006 WL 3681138, at *6 (E.D.N.Y. Dec. 11, 2006) ("Because the parties engaged in

extensive discovery and because discovery was near completion when the parties reached a settlement, this factor weighs in favor of approving the settlement."). Accordingly, the third *Grinnell* factor also weighs in favor of approving the settlement.

### 4. Risks Related to Establishing Liability and Damages, and of Maintaining the Class Action Through the Trial

"Litigation inherently involves risks." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y.), *aff'd sub nom. In re PaineWebber Inc. Ltd. P'ships Litig.*, 117 F.3d 721 (2d Cir. 1997). "Indeed, the primary purpose of settlement is to avoid the uncertainty of a trial on the merits." *Siler v. Landry's Seafood House – N.C., Inc.*, No. 13-CV-587 (RLE), 2014 WL 2945796, at *6 (S.D.N.Y. June 30, 2014). "In analyzing the parties' risks of establishing liability, the Court does not '[need to] decide the merits of the case or resolve unsettled legal questions.'" *Cinelli v. MCS Claim Servs., Inc.*, 236 F.R.D. 118, 121-22 (E.D.N.Y. 2006) (quoting *Marisol A. ex rel. Forbes v. Giuliani*, 185 F.R.D. 152, 164 (S.D.N.Y. 1999), *aff'd sub nom. Joel A. v. Giuliani*, 218 F.3d 132 (2d Cir. 2000)). "Rather, 'the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement.'" *AOL Time Warner, Inc.*, 2006 WL 903236, at *11 (quoting *Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. at 459).

As Plaintiff points out, Defendants have vehemently denied any wrongdoing in this action and have raised several affirmative defenses by which they seek to avoid liability. (*See* Dkt. 236 at 18; *see also* Dkt. 9 at 8-10); *see Ayzelman*, 242 F.R.D. at 27 (stating that "[t]he risk of establishing liability also weighs in favor of approving the settlement" where "the defendants have presented several affirmative defenses through which they may avoid

liability"). Furthermore, should the Court disapprove this settlement, LVNV may very well file another motion for summary judgment. *See also Garland v. Cohen & Krassner*, No. 08-CV-4626 (KAM) (RLM), 2011 WL 6010211, at *7 (E.D.N.Y. Nov. 29, 2011) (noting that "before the parties reached a settlement, defendant sought to file a motion to dismiss, arguing that plaintiff's Complaint lacked merit" and stating that "[i]f defendant w[as] to prevail in its motion, plaintiff would receive nothing").

However, even if Plaintiff established liability against Defendants, there is no guarantee that the statutory damages award would be equivalent to the settlement fund proposed by the instant agreement. *See Savino v. Comput. Credit, Inc.*, 164 F.3d 81, 86 (2d Cir. 1998) ("The decision whether to award statutory damages under the FDCPA and the size of the award are matters committed to the sound discretion of the district court."); *see also Ayzelman*, 242 F.R.D. at 28 ("In determining the amount of statutory damages to impose on a debt collector found liable under the statute in a class action, courts are required to consider 'the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, the resources of the debt collector, the number of persons adversely affected, and the extent to which the debt collector's noncompliance was intentional.'" (quoting 15 U.S.C. § 1692k(b)(2))). Indeed, further complicating Plaintiff's risk of recovery is the fact that Eltman has apparently "folded," and is presently considered to be out of business. (*See* Dkt. 236 at 18).

As noted above, "[t]he parties stipulated to class certification for settlement purposes only. If the class action were litigated, however, it is likely that defendants would oppose certification." *Reade-Alvarez*, 2006 WL 3681138, at *6. Under those

circumstances, Defendants' opposition would create an "appreciable risk to the class members' potential for recovery," and "even if plaintiffs could obtain class certification, there could be a risk of decertification at a later stage." *Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. at 460; *see In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 476-77 (S.D.N.Y. 1998) (noting that "there is no guarantee that this class would not be decertified before or during trial" and stating that "if the Class were to be decertified at trial, or if class certification were to be reversed on appeal, the class members (other than a few dozen plaintiffs) would recover nothing at all"). Considering the favorability, immediacy, and certainty of the proposed class recovery, factors four, five, and six of the *Grinnell* analysis weigh in favor of approving the settlement. *See Garland*, 2011 WL 6010211, at *7 ("[G]iven the small amount of damages available in cases brought pursuant [to] the FDCPA, the benefits of immediate recovery outweigh the risks associated with ongoing litigation."); *Gilliam*, 2008 WL 782596, at *4 ("Plaintiffs cannot be certain that they will establish the full extent of class-wide damages at trial, and may therefore prefer the certainty of settlement."); *Cinelli*, 236 F.R.D. at 122 ("The Court finds that even assuming plaintiffs had a strong chance of success at trial with respect to liability, the relief granted to the plaintiffs by the Settlement Agreement is sufficiently favorable to weigh in favor of the approval of the Settlement Agreement.").

### 5. The Ability of Defendants to Withstand a Greater Judgment

"Courts have recognized that the defendant's ability to pay is much less important than other factors, especially where 'the other *Grinnell* factors weigh heavily in favor of settlement approval.'" *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 339

(E.D.N.Y. 2010) (quoting *Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. at 460); *see Shapiro v. JPMorgan Chase & Co.*, No. 11 Civ. 7961 (CM), 2014 WL 1224666, at *11 (S.D.N.Y. Mar. 24, 2014) ("JP Morgan's financial circumstances do not ameliorate the force of the other *Grinnell* factors, which lead to the conclusion that the settlement is fair, reasonable and adequate."); *AOL Time Warner, Inc.*, 2006 WL 903236, at *12 ("Neither party contends that Defendants are incapable of withstanding a greater judgment. However, the mere ability to withstand a greater judgment does not suggest that the Settlement is unfair."); *see also Sinus Buster Prod. Consumer Litig.*, 2014 WL 5819921, at *11 ("[T]here is no evidence in the record related to the Defendant Hi-Tech's ability to withstand a judgment. Even if there were, the Court would not find the factor to be significant given that the other *Grinnell* factors weigh in favor of approving the settlement.").

Here, although Eltman appears to be insolvent, Plaintiff does not offer any evidence demonstrating that LVNV could not withstand a greater judgment than that proposed by the settlement in this case. (*See* Dkt. 236 (stating that "while LVNV is one of the largest debt-buyers in the country, there is no guarantee that it could survive a recession," and noting that "there is always some urgency nowadays when litigating against a debt-buyer")). Nonetheless, considering that the other *Grinnell* factors weigh heavily in favor of approving the settlement, whether LVNV might be able to withstand a greater judgment than that which will be levied against them is inconsequential under the circumstances.

### 6. Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and in Light of All Attendant Risks of Litigation

"Determining whether a settlement is reasonable is not susceptible of a mathematical equation yielding a particularized sum." *Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178 (internal quotation and citation omitted). "Instead, 'there is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). In considering the reasonableness of the settlement fund, a court must compare "the terms of the compromise with the likely rewards of litigation." *In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 384 (S.D.N.Y. 2013) (quoting *Weinberger*, 698 F.2d at 73).

The Court's approval of the Settlement Agreement would result in a $688 payment to each of the 247 available class members, with the remaining funds to be distributed to the Western New York Law Center as a *Cy Pres* award. (Dkt. 236 at 20). The FDCPA sets a $1,000.00 cap on individual awards for statutory damages. *See* 15 U.S.C. § 1692k(a)(2)(A). Accordingly, each $688 payment represents approximately 69% of the maximum recovery that any one of those class members could have secured as an individual. This settlement payout "is well within the range of reasonableness when comparing the best possible recovery to the risks of continued litigation." *Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d at 384; *see, e.g.*, *O'Connor v. AR Res., Inc.*, No. 3:08CV1703

- 30 -

(VLB), 2012 WL 12743, at *6 (D. Conn. Jan. 4, 2012) (finding the FDCPA settlement to be within the range of reasonableness where the class members would be paid $192.30 each); *Aramburu*, 2009 WL 1086938, at *5 (finding the FDCPA settlement to be "well within the range of reasonableness, particularly in light of the value of obtaining certain compensation quickly," where each member of the class would receive $75.00); *Ayzelman*, 242 F.R.D. at 28 (finding that "the value of the [FDCPA] settlement fund justifies settling this case," where "those class members who did not opt out of the class will each receive $15.09. . . ." (footnote omitted)); *Gross v. Washington Mut. Bank, F.A.*, No. 02 CV 4135 (RML), 2006 WL 318814, at *5 (E.D.N.Y. Feb. 9, 2006) (finding that "the proposed [FDCPA] settlement is well within the range of reasonableness" where each class member would receive $325).

As the above cases illustrate, the recovery in this action is robust. Considering the risks of establishing liability and damages discussed above, Plaintiff and the other members of the Settlement Class "cannot be certain that they will induce a jury to award the best possible recovery." *Gilliam*, 2008 WL 782596, at *5. This "settlement assures immediate payment of substantial amounts to class members, even if it means sacrificing 'speculative payment of a hypothetically larger amount years down the road.'" *Id.* (quoting *Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*, No. 01-CV-11814(MP), 2004 WL 1087261, at *5 (S.D.N.Y. May 14, 2004)); *see also In re Agent Orange Prod. Liab. Litig.*, 611 F. Supp. 1396, 1405 (E.D.N.Y. 1985) ("[M]uch of the value of a settlement lies in the ability to make funds available promptly."), *aff'd in part and rev'd in part on other grounds*, 818

F.2d 179 (2d Cir. 1987). Therefore, the final two *Grinnell* factors also weigh in favor of settlement approval.

For the foregoing reasons, the Court finds the proposed settlement agreement to be substantively fair.

## IV. The *Cy Pres* and Incentive Awards

### A. *Cy Pres Award*

"Cy Pres means 'as near as possible,' and '[c]ourts have utilized Cy Pres distributions where class members are difficult to identify, or where they change constantly, or where there are unclaimed funds.'" *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 436 (2d Cir. 2007) (citation omitted); *Pierre Seel v. Comm'r (In re Holocaust Victim Assets Litig.)*, 424 F.3d 132, 141 n.10 (2d Cir. 2005) ("In the class action context, it may be appropriate for a court to use *cy pres* principles to distribute unclaimed funds."). "Under the *cy pres* doctrine, the best application of unused settlement funds is to donate them to an organization whose purpose is closely related to the purpose of the lawsuit." *Reyes v. Buddha-Bar NYC*, No. 08 CIV. 02494 (DF), 2010 WL 2545859, at *1 (S.D.N.Y. June 18, 2010); *see In re Holocaust Victim Assets Litig.*, 424 F.3d at 141 n.10 ("[T]he unclaimed funds should be distributed for a purpose as near as possible to the legitimate objectives underlying the lawsuit, the interests of class members, and the interests of those similarly situated."). "Courts routinely approve *cy pres* designations where the purpose of the organization is related to the purpose of the lawsuit." *Sewell v. Bovis Lend Lease, Inc.*, No. 09-CV-6548 (SHS) (RLE), 2013 WL 1316015, at *2 (S.D.N.Y. Mar. 29, 2013).

According to Class Counsel, all unclaimed settlement funds will be distributed to the Western New York Legal Services ("WNYLS") as the *cy pres* designee. (Dkt. 236 at 21). At the Final Fairness Hearing, Class Counsel explained that although WNYLS traditionally focused on litigating foreclosure and landlord/tenant defense cases, the organization has started to expand the number of its cases involving low-income clients embroiled in consumer litigation in state court. Through both defensive and affirmative advocacy, WNYLS endeavors to improve the circumstances of low-income consumers in the Buffalo area. As such, any unclaimed funds provided to WNYLS as a result of the Settlement Agreement will be "distributed for a purpose as near as possible to the legitimate objectives underlying the lawsuit, the interests of class members, and the interests of those similarly situated." *In re Holocaust Victim Assets Litig.*, 424 F.3d at 141 n.10.

Furthermore, "[c]ourts should defer to the *cy pres* selection of plaintiffs and their counsel unless there is good cause not to defer." *Sewell*, 2013 WL 1316015, at *3; *see Plotz v. NYAT Maint. Corp.*, No. 98 CIV. 8860(RLE), 2006 WL 298427, at *2 (S.D.N.Y. Feb. 6, 2006) ("The distribution preference of class counsel should be entitled to deference when it is the only entity with a meaningful and equitable interest in the remaining funds, especially where the designated recipient is a legitimate and appropriate organization."). Indeed, "Class Counsel is in the best position to determine the purpose of the lawsuit and to select organizations whose purposes are consistent with it." *Reyes*, 2010 WL 2545859, at *1; *see Stefaniak v. HSBC Bank USA, N.A.*, No. 05-CV-720S, 2011 WL 7051093, at *1 (W.D.N.Y. Dec. 15, 2011) ("A plaintiff's selection of a *cy pres* recipient is entitled to

deference because only the plaintiffs and their counsel can determine the objectives of their own lawsuit [and] what is in the interest of the class they represent."). No such good cause warranting divergence from Class Counsel's selection is present here.

Therefore, the Court agrees that WNYLS is an appropriate *cy pres* designee for purposes of this FDCPA class action settlement.

## B.    The Class Representative Incentive Award

"Incentive awards are not uncommon in class action cases and are within the discretion of the court." *Frank*, 228 F.R.D. at 187. "Incentive award[s] may be justified under 'special circumstances. . . .'" *Charron*, 874 F. Supp. 2d at 207-08 (quoting *In re AOL Time Warner ERISA Litig.*, No. 02 CV. 8853 (SWK), 2007 WL 3145111, at *2 (S.D.N.Y. Oct. 26, 2007) ("Courts look for the existence of 'special circumstances' when determining whether an award is justified and, if so, in what amount.")). Relevant "special circumstances" include:

> the personal risk (if any) incurred by the plaintiff-applicant in becoming and continuing as a litigant, the time and effort expended by that plaintiff in assisting in the prosecution of the litigation or in bringing to bear added value (e.g., factual expertise), any other burdens sustained by that plaintiff in lending himself or herself to the prosecution of the claim, and, of course, the ultimate recovery.

*Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 200 (S.D.N.Y. 1997).

The parties have agreed to distribute a $10,000 incentive award to Mr. Christopher Godson as the class representative. Special circumstances in this case justify this award. For example, Mr. Godson "has been actively involved in the litigation of this case since its inception and has provided counsel with assistance, which eventually led to a favorable

settlement for the entire class." *Frank*, 228 F.R.D. at 187. According to Class Counsel, Mr. Godson has been steadfast in his commitment towards the prosecution of this action over its seven-year lifespan. During that time, Mr. Godson cooperated with Class Counsel, was deposed during discovery, and engaged in settlement negotiations that ultimately resulted in a favorable disposition for the Settlement Class. (Dkt. 236 at 20-21); *see Jermyn v. Best Buy Stores, L.P.*, No. 08 CIV. 214 CM, 2012 WL 2505644, at *8 (S.D.N.Y. June 27, 2012) (finding the incentive award to be justified because the class representative "participated in discovery," was deposed, and, "[t]hroughout the long progress of this case, he stayed in contact with Class Counsel"); *Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 245 (E.D.N.Y. 2010) (finding the incentive award to be justified where the class representative had "discussed with class counsel the pleadings, discovery demands, discovery responses, and memoranda of law on class certification[,] . . . was deposed, . . . [and] conferred with class counsel during the settlement negotiations"); *Norflet ex rel. Norflet v. John Hancock Life Ins. Co.*, 658 F. Supp. 2d 350, 354 (D. Conn. 2009) (finding the class representative deserving of an incentive award after considering "the time she spent in deposition, responding to discovery, and/or otherwise working with Class Counsel to prosecute and resolve this case"). Considering Mr. Godson's continued involvement throughout the duration of this litigation and his participation in the settlement negotiations—which resulted in a significant recovery to his fellow class members—the Court finds the $10,000 incentive award appropriate under the circumstances.

## V.    Reasonableness of the Attorneys' Fees and Costs

"Pursuant to 15 U.S.C. § 1692k(a)(3), counsel for a prevailing party in an FDCPA action is entitled to 'the costs of the action, together with a reasonable attorneys' fee as determined by the court.'" *Gonzalez v. Healthcare Recovery Mgmt. Inc.*, No. 13-CV-1002, 2013 WL 4851709, at *3 (E.D.N.Y. Sept. 10, 2013). "Courts may award attorneys' fees . . . under either the 'lodestar' method or the 'percentage of the fund' method. The lodestar method multiplies hours reasonably expended against a reasonable hourly rate." *Wal-Mart Stores, Inc.*, 396 F.3d at 121 (citation omitted).

"In awarding attorneys' fees, especially in the context of a class action, a court must 'ensure that the interests of the class members are not subordinated to the interests of . . . class counsel.'" *Dial Corp. v. News Corp.*, 317 F.R.D. 426, 433 (S.D.N.Y. 2016) (quoting *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1078 (2d Cir. 1995)). The Second Circuit has emphasized "the importance of the district court's duty 'to act as a fiduciary who must serve as a guardian of the rights of absent class members.'" *McDaniel v. County of Schenectady*, 595 F.3d 411, 419 (2d Cir. 2010) (quoting *Grinnell Corp.*, 560 F.2d at 1099); *see Goldberger*, 209 F.3d at 52 (stating that a court should perform a "searching assessment" of requested attorneys' fees in each case).

### A.    Reasonable Hourly Rate

"A reasonable hourly rate is 'the rate a paying client would be willing to pay,' 'bear[ing] in mind that a reasonable paying client wishes to spend the minimum necessary to litigate the case effectively.'" *McLaughlin*, 2018 WL 3642627, at *16 (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany Cty. Bd. of*

*Elections*, 522 F.3d 182, 190 (2d Cir. 2008)). "To determine reasonable hourly rates, the Court considers this Circuit's adherence to the forum rule, which states that a district court should generally use the prevailing hourly rates in the district where it sits." *Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. D & A Bus Co.*, 270 F. Supp. 3d 593, 617-18 (E.D.N.Y. 2017) (citing *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 175-76 (2d Cir. 2009)); *see Carbin v. N. Resolution Grp., LLC*, No. 12-CV-1108JTC, 2013 WL 4779231, at *3 (W.D.N.Y. Sept. 5, 2013) ("There is a presumption in favor of the hourly rates employed in the district in which the case is litigated.").

However, courts need not strictly adhere to the forum rule in all cases. Instead, reasonable attorney fee rates may vary "depending on the type of case, the nature of the litigation, the size of the firm, and the expertise of its attorneys." *Kindle v. Dejana*, 308 F. Supp. 3d 698, 704 (E.D.N.Y. 2018) (quotation marks omitted); *see Carbin*, 2013 WL 4779231, at *3 ("In determining a reasonable fee, district courts should set a reasonable hourly rate, bearing in mind case-specific variables. . . .").

Class Counsel requests a total fee and costs award of $350,000.00. (Dkt. 236 at 21). This total is comprised of a proposed $301,760.00 in attorneys' fees owed and $14,955.17 in costs owed, multiplied by a lodestar modifier of 1.11. (*See* Dkt. 236-1 at ¶¶ 51-52). In deriving that figure, Class Counsel applies certain hourly fee rates that are greater than those usually applied by courts in this District when determining the reasonableness of a fee award in an FDCPA case. For example, Mr. Brian L. Bromberg, Esq., of the Bromberg Law Office, P.C., requests that this Court apply a $550 per hour rate to his billable hours. (*Id.* at ¶ 34). In addition, Mr. Bromberg requests that the Court apply a $400 per hour rate

to the billable hours accrued by Mr. Michael N. Litrownik, Esq., and Mr. Jonathan R. Miller, Esq., while they worked on this case as associate attorneys with his law office. (*Id.* at ¶¶ 38-39).

Mr. Miller has also submitted a separate set of contemporaneous time records associated with his work on this matter after leaving Mr. Bromberg's law office in 2017, to start his own practice at the Law Office of Jonathan R. Miller, PLLC d/b/a Salem Community Law Office, in Winston-Salem, North Carolina. (Dkt. 236-3 at ¶¶ 11-12, 34; *see* Dkt. 236-1 at ¶ 39 ("Mr. Miller is also submitting a separate declaration and records for the time he worked on this case after he left my office.")). Mr. Miller requests that the Court apply a $400 per hour rate to the billable hours accumulated after his departure from Mr. Bromberg's law practice. (Dkt. 236-3 at ¶ 19).

Lastly, Mr. Kenneth R. Hiller, Esq., of the Law Offices of Kenneth Hiller, has acknowledged that he "generally charge[s] $350.00 per hour in cases [he] handle[s] in consumer cases or other litigation where a Court does not determine [his] fee," and that "[c]ourts in this district have awarded [him] $215.00 per hour in attorneys fees in routine FDCPA cases in which the [d]efendant has defaulted." (Dkt. 236-7 at ¶¶ 23-24). However, Mr. Hiller states that "[t]his case is much more complex, involving the FDCPA, Bankruptcy Law, and Class Action law," and was "fiercely opposed by capable counsel." (*Id.* at ¶ 25). As such, Mr. Hiller requests that the Court apply a $450 per hour rate for his billable hours in this case. (*Id.* at ¶ 28). Mr. Hiller also requests that the Court apply a $300 per hour rate to the billable hours accrued by his associate, Mr. Seth J. Andrews, Esq. (*Id.* at ¶ 34).

A review of recent FDCPA cases decided in this District suggests that a reasonable hourly rate for attorneys' fees ranges from about $200 to $300 per hour. *See Warman v. Law Off. of Daniel M. Slane*, No. 14-CV-700(LJV), 2017 WL 971196, at *4 (W.D.N.Y. Mar. 13, 2017) (finding the hourly rates of $275, $225, and $200 to be reasonable for the respective attorneys in an FDCPA default judgment action "in light of such considerations as the level of skill required to perform the legal services in this case, the amount involved and the results obtained, and the experience and ability of the attorneys"); *Langhorne v. Takhar Grp. Collection Servs., Ltd.*, No. 13-CV-231C, 2016 WL 1177980, at *2 (W.D.N.Y. Mar. 28, 2016) ("The court finds the number of hours and the hourly rates ($300 per hour for experienced attorney and $50 per hour for paralegal) to be reasonable, given the prevailing market rates in this district for FDCPA cases in the recent past."); *Stinson v. LHR, Inc.*, No. 14-CV-999-JTC, 2015 WL 5546443, at *3 (W.D.N.Y. Sept. 18, 2015) ("Based upon its review of . . . FDCPA cases litigated in the Western District of New York, the court finds that the prevailing local hourly rate of $250 for experienced attorneys provides a reasonable basis for calculation of the award of fees in this case."); *Carbin*, 2013 WL 4779231, at *3 ("A review of FDCPA cases in the Western District of New York indicates that the hourly rate for an experienced attorney ranges from $215 to $250. . . ."); *Hance v. Premier Recovery Grp., Inc.*, No. 12-CV-028S, 2013 WL 85068, at *2 (W.D.N.Y. Jan. 7, 2013) (noting a senior partner's "experience in consumer-related litigation" and finding that a fee rate of $225 per hour was reasonable). However, a large number of FDCPA cases involving attorneys' fee issues in this District have taken place in the context of a motion for default judgment. *See, e.g., Fetcho v. Takhar Grp. Collection Servs., Ltd.*,

No. 13-CV-232C, 2016 WL 1177982, at *2 (W.D.N.Y. Mar. 28, 2016); *Ortez v. First Asset Recovery Grp., LLC*, No. 13-CV-671-JTC, 2014 WL 1338835, at *3 (W.D.N.Y. Apr. 2, 2014); *Carbin*, 2013 WL 4779231, at *3; *Hance*, 2013 WL 85068, at *2; *Mostiller v. Chase Asset Recovery Corp.*, No. 09-CV-218A, 2010 WL 335023, at *5 (W.D.N.Y. Jan. 22, 2010). Indeed, it appears that FDCPA class actions, let alone ones involving complex issues, are a comparatively uncommon occurrence in this District.

In addition, the Court notes that Magistrate Judge Pohorelsky of the Eastern District of New York has recently had the opportunity to assess Mr. Bromberg's work in the context of an FDCPA class action settlement. *See Torres v. Toback, Bernstein & Reiss LLP*, No. 11-CV-1368 (VVP), 2017 WL 281878, at *2 (E.D.N.Y. Jan. 23, 2017). Judge Pohorelsky determined that the rates of $400 per hour and $200 per hour for Mr. Bromberg and Mr. Litrownik, respectively, were reasonable even though Mr. Bromberg's hourly rate was "slightly higher than those ordinarily awarded in FDCPA cases" in the Eastern District. *Id.* The higher award was warranted in *Torres* because of the unique difficulties presented in litigating the questions at issue in that case. *See id.*

The Court agrees that this case is far more complex than the FDCPA default judgment actions commonly addressed by courts in this District. Furthermore, the Court recognizes that Mr. Bromberg and Mr. Hiller have extensive experience handling consumer protection litigation, and that Mr. Miller, while perhaps not as seasoned a veteran in this field, is certainly accomplished in his own right. Even still, several of the hourly rates proposed by Class Counsel are almost double the prevailing rates for FDCPA actions in this District. In other words, these proposed rates are significantly higher than those

generally accepted by courts in this forum. Nonetheless, considering the complex nature of this case, the fact that Defendants not only appeared, but vigorously opposed Plaintiff's action, and the tremendous skill brought to bear by all attorneys involved, the Court finds that for the unique work performed in connection with this case, Mr. Bromberg should be granted a fee award at a rate of $375 per hour, Mr. Hiller should granted a fee award at a rate of $350 per hour, Mr. Miller should be granted a fee award at a rate of $300 per hour, and Mr. Litrownik and Mr. Andrews—neither of whom have submitted attorney declarations—should be granted fee awards at a rate of $250 per hour.

### B. Reasonable Hours Billed

"The second step of the lodestar analysis is the determination of the 'reasonable number of hours required by the case.'" *Wat Bey v. City of New York*, No. 01 CIV. 09406 (AJN), 2013 WL 12082743, at *34 (S.D.N.Y. Sept. 4, 2013) (quoting *Millea v. Metro-N. R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011)), *aff'd sub nom. Rivera v. City of New York*, 594 F. App'x 2 (2d Cir. 2014). "[A]ny attorney . . . who applies for court-ordered compensation in this Circuit . . . must document the application with contemporaneous time records." *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983). "To determine the reasonableness of the hours spent on the litigation, the court must make 'a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended.'" *McLaughlin*, 2018 WL 3642627, at *18 (quoting *Maldonado v. La Nueva Rampa, Inc.*, No. 10 Civ. 8195 (LLS) (JLC), 2012 WL 1669341, at *1 (S.D.N.Y. May 14, 2012)). "The critical inquiry is 'whether, at the time the work was performed, a reasonable attorney would have engaged

in similar time expenditures.'" *Reiter v. Metro. Transp. Auth. of State of N.Y.*, No. 01CIV2762 (GWG), 2007 WL 2775144, at *9 (S.D.N.Y. Sept. 25, 2007) (quoting *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992)).

The time records filed along with Class Counsel's final submission to this Court "are both contemporaneous and provide sufficient detail." *McLaughlin*, 2018 WL 3642627, at *18. The records reveal that Class Counsel have performed appropriate legal services over the course of this litigation and have not "represented work beyond the normal quantity of hours that would be required in a consumer class action stretching over multiple years." *Id.* Class Counsel request that the Court recognize 674.6[2] recoverable hours of what appears to be over 925 total timekeeper hours. (*See* Dkt. 236-1 at ¶¶ 40-42; Dkt. 236-2; Dkt. 236-3 at ¶ 35; Dkt. 236-6; Dkt. 236-7 at ¶¶ 33-34; Dkt. 236-8; Dkt. 236-9). Class Counsel's request is in line with other cases in this Circuit that have found recoveries of hundreds of billable hours to be reasonable in complex cases lasting several years. *See, e.g.*, *Liberty Mut. Ins. Co. v. Conmas, Inc.*, No. 10-CV-717 (MAD/DEP), 2012 WL 913312, at *3 (N.D.N.Y. Mar. 16, 2012) (321.9 hours was not unreasonable for litigation taking place over nearly two years); *Jin v. Pac. Buffet House, Inc.*, No. 06-CV-579 (VVP), 2010 WL 2653334, at *4 (E.D.N.Y. June 25, 2010) (379.5 hours was

---

[2]    Mr. Miller requests that the Court calculate an attorney's fee award using "approximately 113" timekeeper hours accumulated during his work on this case after leaving Mr. Bromberg's law practice. (Dkt. 236-3 at ¶ 35). However, his supporting contemporaneous time records report 112.80 timekeeper hours. (Dkt. 236-4 at 8). While Mr. Miller has, in fact, accrued "approximately 113" timekeeper hours since departing Mr. Bromberg's law office, the Court adheres to Mr. Miller's contemporaneous time records and uses 112.80 timekeeper hours in calculating Class Counsel's attorneys' fee award.

reasonable in a case that lasted almost two years and culminated in a six-day trial and post-trial briefing); *Morris v. Eversley*, 343 F. Supp. 2d 234, 248 (S.D.N.Y. 2004) (712 hours was not excessive in a case that lasted two years and ended in a trial); *Elliott v. Bd. of Educ. of Rochester City Sch. Dist.*, 295 F. Supp. 2d 282, 286 (W.D.N.Y. 2003) (approximately 135 hours was not unreasonable in a case that lasted for about one year and ended in a settlement); *Clarke v. One Source, Inc.*, No. 99 Civ.2323 (RPP), 2002 WL 31458238, at *6 (S.D.N.Y. Nov. 1, 2002) (finding 333 hours reasonable for litigation taking place over three years, and including "a number of depositions" as well as "participation in and attendance at the eight day trial"); *cf. Seong Soo Ham v. Sushi Maru Express Corp.*, No. 15-CV-6138 (FB) (JO), 2017 WL 9482112, at *3 (E.D.N.Y. Aug. 18, 2017) (449 attorney hours was excessive "for a two-plaintiff case that settled within a year, with no motion practice and limited discovery that lasted only a few months"), *report and recommendation adopted*, No. 1:15-CV-06138 (FB) (JO), 2017 WL 4023131 (E.D.N.Y. Sept. 13, 2017), *aff'd*, 736 F. App'x 19 (2d Cir. 2018).

While this case never reached the trial stage unlike several of the cases cited above, contentious discovery continued over several years, including motion practice and numerous conferences and correspondence. (Dkt. 236 at 17-18). Class Counsel litigated class action issues, engaged in settlement discussions, and sparred with highly qualified defense counsel over a period of seven years. Accordingly, Class Counsel's requested billable hours are reasonable under these circumstances.

Based upon the rates discussed above and the attorney hours requested by Class Counsel, the adjusted lodestar calculations result in the following attorneys' fee award:

| (A) | Brian L. Bromberg – | $79,462.50 |
| (B) | Kenneth R. Hiller – | $37,940.00 |
| (C) | Jonathan R. Miller – | $89,160.00 |
| (D) | Michael N. Litrownik – | $2,375.00 |
| (E) | Seth J. Andrews – | $11,900.00 |
| Total: | | $220,837.50 |

## C. A Modest Multiplier is Appropriate Under the Circumstances

"While 'there is a "strong presumption" that the lodestar figure is reasonable,' it may be adjusted by a multiplier when it 'does not adequately take into account a factor that may properly be considered in determining a reasonable fee.'" *Lizondro-Garcia v. Kefi LLC*, No. 12 CIV. 1906 HBP, 2015 WL 4006896, at *3 (S.D.N.Y. July 1, 2015) (quoting *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 542 (2010)). "Courts in their discretion may increase the lodestar by applying a multiplier based on factors such as the riskiness of the litigation and the quality of the attorneys." *Wal-Mart Stores, Inc.*, 396 F.3d at 121; *see Gross v. Washington Mut. Bank, F.A.*, No. 02 CV 4135 (RML), 2006 WL 318814, at *6 (E.D.N.Y. Feb. 9, 2006) ("The lodestar multiplier aims to account for the contingent nature or risk involved in a particular case and the quality of the attorneys' work."). The lodestar multiplier is determined "by dividing the proposed fee award by the lodestar calculation." *Davis*, 827 F. Supp. 2d at 184 (quotation marks omitted).

Here, in dividing the proposed fee award of $350,000.00 by the adjusted lodestar calculation of $220,837.50, the resulting lodestar multiplier is approximately 1.58. Cases in this Circuit have approved much greater lodestar multipliers in FDCPA actions. *See, e.g., Sykes*, 2016 WL 3030156, at *16 (finding a multiplier of 3.3 to be reasonable in an FDCPA class settlement action); *Gross*, 2006 WL 318814, at *6 (approving a lodestar

multiplier of "more than one hundred percent," in part, because "[t]he type of litigation undertaken by class counsel here, which addresses important consumer concerns that would likely be ignored without such class action lawsuits, must be encouraged"); *see also In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 590 (S.D.N.Y. 2008) ("In contingent litigation, lodestar multiples of over 4 are routinely awarded by courts. . . . Accordingly, a 1.6x multiplier is well within the range of reasonableness."). The risks associated with this litigation and the quality of the attorneys involved, as noted above, more than adequately support a modest lodestar multiplier of 1.58 in this contingent litigation. *See generally In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226, 236 (2d Cir. 1987) ("A court, therefore, in adjudging whether to award a risk multiplier, should examine closely the nature of the action in order to determine whether, as a matter of public policy, it is the type of case worthy of judicial encouragement.").

### D.    Reasonableness Under the *Goldberger* Factors

"The final step in this analysis is to determine whether the fee award calculated above is reasonable under the *Goldberger* factors." *McLaughlin*, 2018 WL 3642627, at *20. "Those factors are (1) the time and labor expended by counsel, (2) the magnitude and complexities of the litigation, (3) the risk of the litigation, (4) the quality of the representation, (5) the requested fee in relation to the settlement, and (6) public policy considerations." *Siddiky v. Union Square Hosp. Grp., LLC*, No. 15 CIV. 9705 (JCF), 2017 WL 2198158, at *9 (S.D.N.Y. May 17, 2017) (citing *Goldberger*, 209 F.3d at 50).

### 1. Time and Labor Expended by Counsel

Class Counsel and their staff have dedicated hundreds of hours to the success of the instant class action. (*See* Dkt. 236-2; Dkt. 236-6; Dkt. 236-8; Dkt. 236-9). Over the course of this matter's seven-year lifespan, Class Counsel engaged in several years of discovery and related motion practice, including various conferences and court appearances, and participated in other court proceedings, such as mediation sessions, settlement negotiations, and motion hearings. (*See* Dkt. 236 at 17-18); *see Semon v. Swenson*, No. 5:10-CV-00143-CR, 2013 WL 1182224, at *6 (D. Vt. Mar. 21, 2013) ("Plaintiffs' counsel expended significant time, resources, and effort in litigating the Action. The case has been pending for nearly three years, during which the parties engaged in extensive motion practice and discovery—litigating virtually every aspect of the case."). Accordingly, the first *Goldberger* factor weighs in favor of approving the attorneys' fee award.

### 2. Magnitude and Complexities of the Litigation

"In evaluating the second *Goldberger* factor, '[t]he size and difficulty of the issues in a case are significant factors to be considered. . . .'" *Hall*, 2016 WL 1555128, at *15 (quoting *Sukhnandan v. Royal Health Care of Long Island LLC*, No. 12 Civ. 4216, 2014 WL 3778173, at *10 (S.D.N.Y. July 31, 2014)). In addition, "it is also worth noting that in a class action suit, as here, the large number of plaintiffs increase the complexity of the litigation." *Jemine v. Dennis*, 901 F. Supp. 2d 365, 392 (E.D.N.Y. 2012). The instant litigation was more complex than other more routine FDCPA actions, in part, because it also involved issues under Bankruptcy Law. (*See* Dkt. 236-7 at ¶ 25). In addition, the case presented novel issues and involved a large class of approximately 270 class members.

(*See* Dkt. 236 at 36-37). In light of these considerations, the second *Goldberger* factor weighs in favor of approving the attorneys' fee award.

### 3. The Risk of the Litigation

"Risk should be considered 'as of when the case is filed.'" *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 351 (S.D.N.Y. 2014) (quoting *Goldberger*, 209 F.3d at 55). "Specifically with respect to contingency fee cases, like this one, '[n]o one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success.'" *Vaccaro v. New Source Energy Partners L.P.*, No. 15 CV 8954 (KMW), 2017 WL 6398636, at *7 (S.D.N.Y. Dec. 14, 2017) (quoting *Grinnell*, 495 F.2d at 470).

"As discussed above in connection with approval of the Settlement [Agreement], this action involved risk with respect to proving both liability and damages." *Siddiky*, 2017 WL 2198158, at *11. Class Counsel also bore the risk that this matter would not be certified as a class action. The above-described "risks could have meant the end of the litigation with no recovery for class members and no fee for counsel." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 441 (E.D.N.Y. 2014). Accordingly, "the attorneys' willingness to endure for many years the risk that their extraordinary efforts would go uncompensated," should be rewarded now that a substantial settlement has been reached on behalf of the Settlement Class. *Id.* Therefore, the third *Goldberger* factor weighs in favor of approving the attorneys' fee award.

### 4. The Quality of the Representation

"Courts have consistently recognized that the result achieved is a major factor to be considered in making a fee award and in assessing the quality of the representation." *Fleisher v. Phoenix Life Ins. Co.*, No. 11-CV-8405 (CM), 2015 WL 10847814, at *21 (S.D.N.Y. Sept. 9, 2015); *see In re Marsh & McLennan Cos., Inc. Sec. Litig.*, No. 04 CIV. 8144 (CM), 2009 WL 5178546, at *19 (S.D.N.Y. Dec. 23, 2009) ("To evaluate the quality of representation, courts in the Second Circuit 'review the recovery obtained and the backgrounds of the lawyers involved in the lawsuit.'" (quoting *Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. at 141)).

As discussed above, Class Counsel are eminently qualified and experienced to handle the type of litigation at issue in this case. Mr. Bromberg has accumulated many years of experience litigating consumer class actions, including matters involving the FDCPA. (Dkt. 236-1 at ¶¶ 19-20, 36). In addition, Mr. Hiller's law firm "has handled approximately 800 cases on behalf [of] consumers in the Western District of New York" since 2005, many of which include the FDCPA. (Dkt. 236-7 at ¶ 16). Mr. Hiller has "personally handled the litigation in a large number of these matters." (*Id.*). Mr. Miller has likewise accrued significant experience in litigating consumer protection actions and advising clients on related issues. (*See* Dkt. 236-3 at ¶¶ 15, 17).

The docket reflects that Class Counsel and defense counsel zealously advocated on behalf of their respective clients over a period of seven years in what was a vigorously contested action. Considering the favorable result reached on behalf of the Settlement Class, it is obvious that the members of the Settlement Class benefited from counsel

proficient in consumer protection litigation. *See Sykes*, 2016 WL 3030156, at *17 ("Class Counsel effectively and efficiently litigated this Action from its inception, during more than six years of contentious litigation against more than able defense counsel."); *Carlson v. Xerox Corp.*, 596 F. Supp. 2d 400, 412 (D. Conn.) ("The court agrees . . . that the Class received high quality legal representation and obtained a very large settlement in the face of vigorous opposition by highly experienced and skilled defense counsel."), *aff'd*, 355 F. App'x 523 (2d Cir. 2009); *see also In re Marsh ERISA Litig.*, 265 F.R.D. 128, 148 (S.D.N.Y. 2010) ("The high quality of defense counsel opposing Plaintiffs' efforts further proves the caliber of representation that was necessary to achieve the Settlement."); *see generally Goldberger*, 209 F.3d at 55 (stating that "the quality of representation is best measured by results"). Accordingly, the fourth *Goldberger* factor weighs in favor of approving the attorneys' fee award.

### 5. The Requested Fee in Relation to the Settlement

Although the requested fee award is about twice as large as the settlement fund, the fee award does not influence the amount the Settlement Class is set to receive as a result of the settlement. In other words, the Settlement Class would not receive a greater recovery if the fee award was reduced.

Moreover, the Second Circuit has affirmed a district court's approval of a class action settlement where the attorneys' fee award almost equated the recovery set aside in a multi-million-dollar settlement fund. *See Torres v. Gristede's Operating Corp.*, 519 F. App'x 1, 5 (2d Cir. 2013) ("The proportionality of the $3.42 million fee award is not to be judged, as Gristede's urges, against the dollar value of the $3.53 million settlement."). To

this point, the Second Circuit rejected the argument "that an award of costs and attorney's fees that equals or exceeds the pecuniary value of a significant cash settlement contravenes the goals of fee shifting." *Id.* In fact, "[t]he whole purpose of fee-shifting statutes is to generate attorneys' fees that are *disproportionate* to the plaintiff's recovery." *Millea*, 658 F.3d at 169; *see also Barbour v. City of White Plains*, 700 F.3d 631, 635 (2d Cir. 2012) ("[W]e have repeatedly rejected the notion that a fee may be reduced merely because the fee would be disproportionate to the financial interest at stake in the litigation." (quotation marks and citation omitted)); *Barrella v. Vill. of Freeport*, 43 F. Supp. 3d 136, 192 (E.D.N.Y.) ("[T]here is no requirement that the amount of an award of attorneys' fees be proportional to the amount of damages."), *stay granted, order supplemented*, 56 F. Supp. 3d 169 (E.D.N.Y. 2014), *aff'd*, 814 F.3d 594 (2d Cir. 2016).

Therefore, while the fifth *Goldberger* factor does not supply much, if any, support for the approval of the attorneys' fee award, this factor is not dispositive where the other *Goldberger* factors weigh in favor of approving the fee award. *See Raniere v. Citigroup Inc.*, 310 F.R.D. 211, 222 (S.D.N.Y. 2015) ("[W]hile the fifth *Goldberger* factor weighs against approval, it is not dispositive.").

### 6. Public Policy Considerations

"Finally, '[w]hen determining whether a fee award is reasonable, courts consider the social and economic value of the class action, and the need to encourage experienced and able counsel to undertake such litigation.'" *Lizondro-Garcia*, 2015 WL 4006896, at *12 (quoting *Siler*, 2014 WL 2945796, at *11). The FDCPA is a remedial statute designed "to eliminate abusive debt collection practices by debt collectors, to insure that those debt

- 50 -

collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e); *see Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP*, 875 F.3d 128, 134 (2d Cir. 2017) ("The Senate report accompanying the legislation noted that debt collection abuse, including the 'misrepresentation of a consumer's legal rights,' by third-party debt collectors 'is a widespread and serious national problem.'" (quoting S. Rep. No. 95-382, at 2 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695, 1696)). The FDCPA's remedial purposes "require adequate compensation for attorneys who protect those rights." *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 481 (S.D.N.Y. 2013) (involving the Fair Labor Standards Act and the New York Labor Law); *see also Seekamp v. It's Huge, Inc.*, No. 1:09-CV-0018 (LEK/CFH), 2014 WL 7272960, at *2 (N.D.N.Y. Dec. 18, 2014) ("[P]ublic policy militates in favor of the fee in light of the role that consumer protection class actions play in regulating the marketplace."). As such, the public interest in deterring abusive debt collection practices is furthered by the approval of the proposed fee award. Accordingly, the sixth *Goldberger* factor weighs in favor of approving the attorneys' fee award. Since at least five of the six *Goldberger* factors weigh in favor of approval, the fee award is approved.

### E. Reasonable Costs

"In addition to reasonable attorney's fees, counsel for a prevailing party in an FDCPA action is entitled to an award of the costs of the action." *Nicaisse v. Stephens & Michaels Assocs., Inc.*, No. CV 14-1570 (JS)(GRB), 2016 WL 4367222, at *9 (E.D.N.Y. June 9, 2016), *report and recommendation adopted*, No. 14-CV-1570(JS)(GRB), 2016 WL

4275687 (E.D.N.Y. Aug. 12, 2016). "[A] court will generally award 'those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients.'" *Pennacchio v. Powers*, No. 05 CV 985 (RRM) (RML), 2011 WL 2945825, at *2 (E.D.N.Y. July 21, 2011) (quoting *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998)).

Class Counsel seeks a total of $14,955.17 in costs incurred. (Dkt. 236 at 33). These costs include expenditures dealing with postage, expert fees, service of subpoenas, deposition transcripts, travel, lodging, court filing fees and service of process costs, and research expenses through litigation support services, such as the Court's Public Access to Court Electronic Records ("PACER") system. (Dkt. 236-2 at 13-14; Dkt. 236-6 at 8-10; Dkt. 236-8 at 9); *see Bhungalia Family, LLC v. Agarwal*, 317 F. Supp. 3d 727, 745 (S.D.N.Y. 2018) (finding "costs for shipping, court fees, service of process, and litigation support services" to be recoverable); *Plus Enters. LLC v. Sun Trading Int'l, LLC*, No. 16 Civ. 8987 (VB) (FED), 2017 WL 6492117, at *10 (S.D.N.Y. Nov. 29, 2017) (finding expenditures relating to the "filing fee, printing, postage, service fees, and duplication costs" to be recoverable), *report and recommendation adopted*, No. 16 CV 8987 (VB), 2017 WL 6496541 (S.D.N.Y. Dec. 15, 2017); *Decastro v. City of New York*, No. 16-CV-3850 (RA), 2017 WL 4386372, at *10 (S.D.N.Y. Sept. 30, 2017) (finding PACER expenses, filing fees, and costs of service to be "reasonable, out-of-pocket expenses ordinarily charged to clients"); *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695(CM), 2007 WL 4115808, at *10 (S.D.N.Y. Nov. 7, 2007) (finding costs incurred from "consultant and expert fees, photocopying of documents, mediation fees, court filing fees, deposition transcripts, fees for service of subpoenas to witnesses, on-line research,

creation of a document database, messenger service, postage and next day delivery, long distance and facsimile expenses, transportation, [and] travel" to be recoverable); *Lewis v. Triborough Bridge & Tunnel Auth.*, No. 97 CIV. 0607 (PKL), 2001 WL 1898318, at *10 (S.D.N.Y. Aug. 6, 2001) (finding "hotel and meal" costs to be recoverable). Class Counsel has provided contemporaneous billing records for these fees. *See Bhungalia Family, LLC*, 317 F. Supp. 3d at 745 ("Although BFL has not substantiated the amount of these costs by providing invoices or receipts, HBB did document its costs, with specificity, in its billing records, and Ziluck has attested to them."); *Plus Enters. LLC*, 2017 WL 6492117, at *10 ("Plaintiff provided contemporaneous billing records of these costs."); *see also Hernandez v. JRPAC Inc.*, No. 14cv4176 (PAE), 2017 WL 66325, at *2 (S.D.N.Y. Jan. 6, 2017) (expenditures outlined in the attorney declaration were sufficiently documented). Accordingly, because these expenses are those ordinarily charged to clients, the Court approves Class Counsel's request for $14,955.17 in costs.

## CONCLUSION

For the reasons set forth above, the Court finds the Settlement Agreement to be fair, reasonable, and adequate in all respects. Therefore, the Court grants final approval of the Settlement Agreement. It is hereby ordered as follows:

1. The Court certifies the following settlement class for settlement purposes:

All consumers who, according to Defendant's records, had a New York address and: (a) within one year prior to the filing of this action; (b) were sent collection letters bearing Eltman's letterhead in a form materially identical or substantially similar to the letter sent to the Plaintiff and attached to the Complaint as Exhibit A; and (c) which were not returned by the postal service as undelivered.

2.    Pursuant to the Court's Preliminary Approval Order, the approved Notices were mailed to the Class members. The form and method for notifying the Class Members of the settlement and its terms and conditions was in conformity with the Court's Preliminary Approval Order, satisfied the requirements of Rule 23(c)(2)(B) and due process, and constituted the best notice practicable under the circumstances. The Court further finds that the Notices were clearly designed to advise the Class Members of their rights.

3.    The Court finds that the settlement of the Action, on the terms and conditions set forth in the Settlement Agreement, is in all respects fair, reasonable, adequate, and in the best interest of the Settlement Class members, especially in light of: the benefits to the Settlement Class members; the strength of Plaintiff's case; the complexity, expense, and probable duration of further litigation; the risk and delay inherent in possible appeals; the risk of collecting any judgment obtained on behalf of the class; and the limited amount of any potential total recovery for Settlement Class members if litigation continued.

4.    The proposed settlement and Settlement Agreement, which is filed with the Court (Dkt. 224-3), shall be deemed incorporated herein, is finally approved and shall be consummated in accordance with the terms and provisions thereof, except as amended by any order issued by this Court. The parties are hereby directed to perform the terms of the Settlement Agreement.

5.    Each Class Member will receive $688.

6. This Final Order and Judgment is binding on all Class members.

7. Plaintiff, the Class members, and their successors and assigns are permanently barred and enjoined from instituting or prosecuting, either individually or as a class, or in any other capacity, any of the "Released Claims" against the "Released Parties," as set forth in the Settlement Agreement. (Dkt. 224-3 at ¶ 15). Under the Settlement Agreement, the Released Claims are compromised, settled, released, discharged and dismissed with prejudice by virtue of these proceedings and this Final Order and Judgment. Nothing contained herein shall impair or limit any right or cause of action by any Class member to dispute the underlying debt or amount allegedly owed by them.

8. This Final Order and Judgment is not, and shall not be construed as, an admission by Defendants of any liability or wrongdoing in this or in any other proceeding.

9. The Court hereby retains continuing and exclusive jurisdiction over the parties and all matters relating to the Action and/or Settlement Agreement, including the administration, interpretation, construction, effectuation, enforcement, and consummation of the Settlement Agreement and this Final Order and Judgment.

10. The Court awards to Class Counsel, attorneys' fees, costs, and expenses in the amount of $350,000.00, after reviewing Class Counsel's declarations for fees submitted to the Court. Defendants are ordered to pay this award to Class

Counsel, by payment to the "Bromberg Law Office, P.C., as attorney," within 30 days of the date of this Order.

11. First Class, Inc., the Settlement Administrator, is ordered to distribute checks to all Class members within 30 days of the date of this Order. Within 120 days of the date of Order, the Settlement Administrator is directed to file a notice apprising the Court that the terms of the Agreement have been complied with and providing the Court with an accounting of how all settlement moneys were distributed.

12. This Final Order and Judgment hereby dismisses the Action, in its entirety. Ten days after the filing of the notice and accounting this dismissal shall become with prejudice and without costs, absent a timely motion by any party.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated: October 23, 2018
Rochester, New York